UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

SPEEDFIT LLC and AUREL A. ASTILEAN, : 2013 Civ. 01276 (KAM) (AKT)

                           Plaintiffs, : FIRST AMENDED COMPLAINT

   - against - :

                                                     (JURY TRIAL DEMANDED)

WOODWAY USA, INC. and DOUGLAS :
G. BAYERLEIN,
                          Defendants. :

---------------------------------------------------------x

      Plaintiffs Speedfit LLC and Aurel A. Astilean (collectively, the "Plaintiffs"), by and through their attorneys Danzig Fishman & Decea, as and for their first amended complaint allege as follows:

## NATURE OF THE CASE

      1.    This is an action arising under the patent laws of the United Stats, 35 U.S.C § 1, et seq., for infringement by Woodway USA, Inc. and Douglas G. Bayerlein, of certain patents owned by plaintiff Aurel A. Astilean ("Astilean").

      2.    Defendants have misappropriated the unique concept of a non-motorized treadmill invented by Plaintiffs, wrongfully filed a patent seeking to take credit for, and assert legal right to, the invention and marketed and sold the product as if it were their own. The conduct of defendants caused and continues to cause to Plaintiffs substantial injury and damage while defendants reap the benefit from the sale of Plaintiffs' product. Upon information and belief, defendants' acts were willful, deliberate and calculated to inflict substantial damage to Plaintiffs, while providing financial benefit to defendants. This action seeks relief and redress related to defendants' wrongful conduct.

THE PARTIES

3. Plaintiff Speedfit LLC ("Speedfit") is a New York limited liability company formed and existing pursuant to the laws of the State of New York with its principal place of business at 79 Newtown Lane, East Hampton, New York 11937. Speedfit is in the business of fitness including developing programs and machines to facilitate achieving an individual's fitness goals.

4. Plaintiff Astilean, a member of Speedfit, resides in East Hampton, New York. Astilean is a former world class athlete who founded Speedfit. Astilean, among other things, uses his patented fitness program that emphasizes speed training over long distance exercise. Astilean also invented a "fitness matrix" that allows individuals to determine their fitness level and therefore tailor their individual workouts. Astilean, a native Romanian who was once ranked seventh in the world in the decathlon, teaches a low-impact, injury-free, high-energy approach to fitness, making his programs available to the general public irrespective of their fitness level. Astilean and Speedfit developed the leg-powered, non-motorized treadmill which is the subject of this action and which was converted by defendants.

5. Defendant Woodway USA, Inc. ("Woodway"), is a Wisconsin corporation which, among other things, manufactures exercise products, including treadmills, and maintains its corporate headquarters at W229 N591 Foster Court, Waukesha, Wisconsin 53186. Woodway sells various motorized treadmills, and as a result of the acts which are the subject of this action, now illegally sells Plaintiffs' non-motorized leg powered treadmills, which it converted from Plaintiffs, to fitness facilities, athletes, professional sports organizations, armed forces and government facilities, colleges and universities, and for home and office fitness uses. Woodway sells its products directly and through a network of distributors in the United States and

internationally. In addition to its domestic facility in Waukesha, Wisconsin, Woodway has design and manufacturing facilities in Germany and Japan. Woodway originally operated as a subsidiary of Woodway GmbH; upon information and belief, Woodway acquired its parent Woodway GmbH as a part of a marketing strategy for the Speedfit Curve (as hereinafter defined).

6. Defendant Douglas G. Bayerlein ("Bayerlein"), sued in his official capacity as Woodway's President, upon information and belief, conspired with Woodway to commit the wrongs complained of herein.

## US PATENT NOS. 8,308,619 AND 8,343,016

7. Astilean is the owner of all right, title, and interest in and to United States Patent No. 8,308,619 ("619 Patent") filed on or about October 29, 2010, including his right to sue for past damages. Accordingly, Astilean has standing to bring this patent infringement action. The 619 Patent was duly and legally issued by the United States Patent and Trademark Office on November 13, 2012, is active and is entitled "Leg Powered Treadmill." A copy of the 619 Patent is annexed hereto as Exhibit A.

8. Astilean is also the owner of all right, title, and interest in and to United States Patent No. 8,343,016 ("016 Patent"), which is a second patent filed by Astilean on or about November 1, 2010. Accordingly, Astilean has standing to bring this patent infringement action. The 016 Patent was duly and legally issued by the United States Patent and Trademark Office which issued on January 1, 2013, is active and is entitled "Leg Powered Treadmill." A copy of the 016 Patent is annexed hereto as Exhibit B.

9. The 619 Patent and the 016 Patent (the "Patents") relate generally to a motor-less leg powered curved treadmill that allows the rider to walk, jog, run or sprint without making

any adjustments to the treadmill other than shifting the user's center of gravity forward or backwards.

### JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and § 1498(a). This complaint seeks the recovery of Plaintiff's reasonable and entire compensation for the use by defendants, without license, of the Patents and invention described in and covered by the Patents. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

11. This Court has personal jurisdiction over defendants. Defendants Woodway and Bayerlein (collectively, the "Defendants") purposely availed themselves of this judicial district by, among other things: (i) attending trade shows and distributing products throughout New York State; (ii) a substantial part of the events or omissions giving rise to this case occurred in New York, including meetings between the representatives of Plaintiffs and Defendants; (iii) Woodway attended meetings with Plaintiffs in New York; (iv) Woodway sent product samples for inspection and modification to Plaintiffs in New York; and (v) Woodway phoned and e-mailed Plaintiffs at their New York residences regarding the treadmill and the venture.

12. Furthermore, as demonstrated on Woodway's website www.woodway.com: (i) the treadmills are available for purchase by New York consumers directly on the website; (ii) Woodway travels to New York to promote sales of the treadmill; and (iii) Woodway has contracted to sell treadmills, including the Curve (as defined below) to various New York athletic teams including the New York Yankees, Mets and Jets, and to the U.S. Military Academy at West Point, amongst many other New York residents.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1400 and 28 U.S.C. § 1391 and the Local Rules for the Southern and Eastern Districts of New York in that this is the district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C.A. §1400 (b).

## FACTS COMMON TO ALL CLAIMS

14. Astilean first met Bayerlein in 2002 at the Spring fitness equipment show in San Francisco, California. During that meeting Astilean discussed with Bayerlein Speedfit's innovative concepts in both exercise programs and exercise equipment. Bayerlein liked his ideas.

15. On or about May 1, 2003, after a meeting between Astilean and Bayerlein at the Hilton Hotel located in New York City, the parties duly executed a non-disclosure/circumvention agreement. After the due execution of the non-disclosure/circumvention agreement, the parties discussed Speedfit's novel idea of a non-motorized treadmill.

16. In 2004, Astilean formally introduced to Woodway his invention of a non-motorized treadmill. Astilean provided to Woodway his specifications for the motorless treadmill and Woodway agreed to build a prototype. It was agreed that the prototype would be built at no cost to Speedfit or Astilean.

17. In May 2005, during a visit by Astilean and his former business partner, Tami Mack, to Woodway's offices, the parties signed a second non–disclosure/circumvention agreement. The agreement provided in pertinent part:

> 1. Woodway has signed a non-disclosure agreement (the "NDA") related to any designs and other information supplied by Speedfit. The NDA continues to be applicable to all disclosures made by Speedfit and all actions taken by Woodway

5

as a result of said disclosures, including, without limitation, the construction of prototypes of personal exercise equipment based on Speedfit's design.

*     *     *

5. Speedfit owns every right of every kind in and to its designs and any other information supplied to Woodway, and to any prototypes that Woodway builds as a result thereof… .

18. By August 15, 2005, the prototype was developed. Speedfit, however, was not yet satisfied with the treadmill and, at its request, Woodway sent to Speedfit two chassis with belts (the working parts of the treadmill which eliminates the need for a motor) so that it could continue to modify and perfect the design of the treadmill for end users.

19. Approximately three days later, apparently eager to participate in Speedfit's invention, on August 18, 2005, Woodway delivered to Speedfit a memorandum pursuant to which it acknowledged Speedfit's invention of the motorless treadmill and the intellectual property rights ancillary to it, along with proposals to which the parties might pursue together on a partnership or joint venture basis. The proposed agreement provided several options for Speedfit and Woodway to partner together in the sale of the product. Each and every option provided a component of payment to go to Speedfit from Woodway. The proposals, however, were not accepted by Speedfit and the NDA remained in full force and effect.

20. In or about December 2006 Astilean visited Woodway to supervise the construction of his latest version of the treadmill which Speedfit named the "Speedboard". The Speedboard was completed in time for an industry show to be held in the Spring of 2007 and it was prominently displayed at that show; the logos of both Woodway and Speedfit were affixed to the Speedboard.

21. The Speedboard was a great success at the show; Speedfit, however, was not completely satisfied with the design and continued to work on perfecting it. In particular, the Speedboard contained a motorized mechanism to raise and lower the incline of the treadmill. Since Speedfit's invention was fundamentally based upon the concept of a non-motorized treadmill, Speedfit wanted to develop a non-motorized mechanism by which a user raised or lowered the incline on the Speedboard, so that it would be easier to use and more versatile.

22. Upon information and belief, after the Spring 2007 show, Woodway started to sell the Speedboard and to retain all of the revenue generated from the sales. Speedfit did not consent to the sales nor consent to the fact that the proceeds were kept solely by Woodway.

23. By May, 2008, frustrated with the inability of Woodway to build a fully non-motorized prototype up to industry and consumer standards, Speedfit undertook itself to design and build the Speedboard to its specifications.

24. By August 2008, Speedfit had built a wooden version of a fully non-motorized treadmill with a curved design that allows people to walk, jog, run and sprint without making any adjustments to the treadmill other than shifting the user's center of gravity forward and backward. Speedfit had now also resolved its concern about how to maneuver the inclines on a treadmill which it had identified on the previous design, with an altogether new design innovation of a curved treadmill. Instead of the traditional manual incline found universally on treadmills, the new invention (which became known as the "Speedfit Curve" or the "Curve"), allows a user to simply move to the front or back of the Curve for a larger incline, or to the middle for no incline.

25. On November 7, 2008, before the Curve was presented to Woodway to build a marketable unit, Astilean filed a provisional patent application to protect his invention under

7

Patent Number 61/193,239. Speedfit then sent the wooden version of the Curve and the specifications to Woodway so that Woodway could duplicate the wooden prototype in metal. In connection with Woodway's production of a metal version of the Curve, Bayerlein expressly confirmed to Astilean that Woodway was bound by the NDA.

26. The first introduction of the Curve was by Speedfit at the Discovery Channel, Wreckreation Nation in January 2009; the wooden model that Speedfit created was featured because the final metal prototype had not yet been completed.

27. In or about February, 2009, Woodway converted the wood design to metal and the Curve was ready for market. At that time, the name of the product continued as with previous models to be "SpeedFit Speedboard" by Woodway, a SpeedFit Trade name. Woodway later unilaterally changed the name to "Woodway Curve." Collectively, the SpeedFit Speedboard, Woodway Curve and Curve are all the same design and product and refer to the Curve.

28. The first time SpeedFit Speedboard by Woodway was displayed was at a fitness show in March 2009 at IHRSA USA and 2009 FiBO Germany; it was an instant success. After the show, the Curve was in every fitness catalog and hundreds of articles were on the internet. The new treadmill was featured in Style Magazine, which endorsed the concept of the product and many magazines articles and news articles about the new invention were written and published.

29. On or about May, 2009, again eager to secure a commercial interest in the Curve, Woodway provided to Speedfit what it denominated as a strategic evaluation agreement ("SEA"), which among other things, acknowledged that Speedfit developed the Curve and was entitled to patent it.

30. Speedfit refused to sign the SEA which it believed to be inherently inequitable. Instead, between May 2009 and August 2009, Plaintiffs attempted unsuccessfully to discuss the SEA with Woodway and work on a fair and just agreement, given that Plaintiffs had invented the product and the NDA was in full force and effect. Woodway was unresponsive to these overtures by Plaintiffs.

31. Unbeknownst to Speedfit, in or about March 17 2009, Bayerlein and certain employees of Woodway filed patent application number 13235065 with the U.S. Patent and Trademark Office for a leg powered treadmill ("Defendant Patent App."). Upon information and belief, the information used by Bayerlein for the Defendant Patent App. was taken directly from Plaintiffs' design and invention of the Curve. The Defendant Patent App. improperly failed to identify Astilean as the inventor of the machine.

32. As late as August, 2009, Bayerlein affirmed to Astilean in writing that the purpose of the SEA was to protect Astilean and his invention.

33. Upon information and belief, in or about September 15, 2011, the Defendant Patent App., was assigned to Woodway by the purported inventors.

34. Upon information and belief, in or about December, 2010, Woodway began to manufacture the Curve and sell it without the Speedfit logo. Defendant Woodway continues to manufacture and sell the Curve as its own product, to the exclusion of Speedfit. Moreover, Woodway has not tendered any royalties or other remuneration to Plaintiffs from the sales of the Curve.

## FIRST CLAIM FOR RELIEF
(INFRINGEMENT OF THE PATENTS)

35. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

9

36. Plaintiff Astilean is the owner of the Patents. (Exhibits A-B).

37. Astilean owned the Patents throughout the period of the Defendants' infringement and still owns the Patents.

38. The Patents consists of:

1. A motor-less, leg-powered treadmill comprising:

a treadmill frame;

a set of respective front and rear pulley end rollers for rotation, said front and rear pulleys supporting a closed loop treadmill belt;

said closed loop treadmill belt comprising a plurality of parallel slats oriented perpendicular to an axis of rotation of said belt, said parallel slats attached to each other in a resilient fashion;

said closed loop treadmill belt being of such length as compared to the distance between the end rollers to permit it to assume a required concave upper contour;

a means for slackening an upper concave portion of said closed loop treadmill belt while simultaneously keeping a lower portion of said closed loop treadmill belt taut, preventing said lower portion from drooping down during rotation and exertion of walking or miming force upon said upper concave portion of said closed loop treadmill belt, said means for slackening the upper portion while simultaneously keeping the lower portion taut, preventing said lower portion from drooping down during rotation and exertion of walking or running force upon said upper concave portion of said closed loop treadmill belt comprises a timing belt having respective timing belt pulleys attached to said front and rear pulley rollers for said closed loop treadmill belt, wherein timing belt idlers are used to configure said timing belt geometrically to fit within constraints of said contours of said treadmill, wherein if said closed loop treadmill belt is prevented from slipping relative to said end rollers by high friction coefficient, once configured, said timing belt will not permit drooping down of said lower taut portion of said closed loop treadmill belt because all respective motion is synchronous.

39. Similarly, Defendant Patent App., a copy of which is annexed hereto as Exhibit C, describes and pictures a virtually identical leg powered treadmill:

[0006]One embodiment of the disclosure relates to a manually operated treadmill comprising a treadmill frame having a front end and a rear end opposite the front end, a front shaft rotatably coupled to the treadmill frame at the front end, a rear shaft rotatably coupled to the treadmill frame at the rear end, and a running belt including a

curved running surface upon which a user of the treadmill may run. The running belt is disposed about the front and rear shafts such that force generated by the user causes rotation of the front shaft and the rear shaft and also causes the running surface of the running belt to move from the front shaft toward the rear shaft. The treadmill is configured to control the speed of the running belt to facilitate the maintenance of the contour of the curved running surface.

[0007]Another embodiment of the disclosure relates to a manually operated treadmill comprising a treadmill frame, a front support member rotatably coupled to the treadmill frame, a rear support member rotatably coupled to the treadmill frame, a running belt including a curved running surface upon which a user of the treadmill may run, wherein the running belt is supported by the front support member and the rear support member, and a synchronizing system configured to cause the front support member and the rear support member to rotate at substantially the same speeds. The force generated by the user causes rotation of the front support member and the rear support member and also causes the running belt to rotate relative to the treadmill frame.

[0008]Another embodiment of the disclosure relates to a manually operated treadmill comprising a treadmill frame, a front shaft rotatably coupled to the treadmill frame, a rear shaft rotatably coupled to the treadmill frame, a running belt including a contoured running surface upon which a user of the treadmill may run, wherein the running belt is disposed about the front and rear shafts such that force generated by the user causes rotation of the front shaft and the rear shaft and also causes the running belt to rotate about the front shaft and the rear shaft without the rotation of the running belt being generated by a motor, and a one-way bearing assembly configured to prevent rotation of the running surface of the running belt in one direction.

[0009]Another embodiment of the disclosure relates to manually operated treadmill comprising a treadmill frame, a running belt including a running surface upon which a user of the treadmill may run, a front support member rotatably coupled to the treadmill frame, the front support member comprising the forwardmost support for the running belt, a rear support member rotatably coupled to the treadmill frame, the rear support member comprising the rearward most support for the running belt. The running surface comprises at least in part a complex curve located intermediate the front support member and the rear support member and incorporating a minimum of two geometric configurations.

40. Defendants had actual or constructive knowledge of the Patents.

41. Defendants have infringed literally and/or under the doctrine of equivalents, and are still infringing on the Patents by making, selling, and using the Curve that embodies the patented invention of Astilean.

42. Upon information and belief, Defendants will continue in its willful and deliberate infringement of the Patents unless and until it is enjoined by this Court.

43. Plaintiff Astilean has been and continues to be damaged by the infringement by Defendants in an amount at present unknown, as Astilean has not been informed as to the full extent of such infringement and such extent cannot be ascertained except by discovery and special accounting.

44. Plaintiff Astilean is entitled to compensation for use by Defendants of the Patents.

45. By reason of the foregoing, plaintiff Astilean requests judgment in his favor against Defendants for a sum of money representing his reasonable and entire compensation for the infringing use by or for Defendants of the Patents either literally or under the doctrine of equivalents, with interest, and for such other relief as this court may deem just and proper, including interest, attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
(BREACH OF CONTRACT)

46. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

47. Plaintiffs and Defendants entered into two separate non-disclosure agreements (paragraphs 15 and 17 above) in which Defendants agreed to assist Plaintiffs in the development of a prototype of Astilean's leg powered treadmill confidentially.

48. Defendants breached these agreements by selling the product to the market, filing the Defendant Patent App. and holding out to the world that they invented the Curve and are its owner.

49. By reason of the foregoing, Defendants are indebted to Plaintiffs for all amounts earned from the sale of the product to date, including but not limited to sales in the

United States and abroad, together with interest, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs.

### THIRD CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

50. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

51. Defendants have been unjustly enriched through the receipt of proceeds of the sale of the Curve in an amount to be determined at trial but presently believed to be in excess of $20,000,000.

52. By reason of the foregoing, Defendants are indebted to Plaintiffs in the amount of $20,000,000 together with interest thereon, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs.

### FOURTH CLAIM FOR RELIEF
### (CONTRUCTIVE TRUST)

53. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

54. Plaintiffs expended a significant amount of time and resources in developing the Curve with the understanding that once it was developed, Plaintiffs could bring the product to market using whatever manufacturer they chose.

55. Defendants improperly, without justification, stole the design of the Curve from Plaintiffs and have marketed it as their own product and design.

56. Defendants have failed and refused to remunerate Plaintiffs for the invention and development of the Curve or any of the other products which Plaintiffs brought to Defendants.

57. The conduct of Defendants, as aforesaid, was an abuse of the confidence and breach of the fiduciary relationship between Plaintiffs and Defendants.

58. Plaintiffs have no adequate remedy at law.

59. By reason of the foregoing, Plaintiffs should be awarded a constructive trust over the assets of Woodway.

### FIFTH CLAIM FOR RELIEF
### (BREACH OF FIDUCIARY DUTY AND CONVERSION)

60. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

61. Defendants owed fiduciary duties to Plaintiffs.

62. Defendants breached their fiduciary duties to Plaintiffs.

63. Defendants' actions harmed Plaintiffs.

64. By reason of the foregoing, Woodway and Bayerlein are indebted to Plaintiffs for an amount to be determined at trial, together with interest, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Speedfit LLC and Aurel A. Astilean, demand judgment against defendants Woodway USA, Inc. and Douglas G. Bayerlein, jointly and severally, as follows:

(a) On the first claim:

(i) awarding to Astilean an accounting to determine the amounts of his damages;

(ii) awarding to Astilean money damages in an amount sufficient to compensate him for Woodways's infringement of the Patents, but not less than a reasonable royalty;

(iii) awarding to Astilean prejudgment interest under 35 USC §284;

(iv) awarding to Astilean increased damages, pursuant to 35 USC §284, in an amount not less than three times the actual amount of damages awarded to Woodway, by reason of Woodway's willful and deliberate infringement of the Patents.

(v) restraining and enjoining defendants Woodway and Bayerlein, and Woodway's officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, and attorneys from directly or indirectly infringing on the Patents;

(vi) declaring the case exceptional under 35 USC §285 and awarding to Astilean his reasonable attorneys' fees, expenses and costs incurred in this action;

(b) On the second claim, awarding to Plaintiffs money damages against Defendants in an amount to be determined upon the trial of this action but presently believed to be in excess of Twenty Million Dollars ($20,000,000) together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

(d) On the third claim, awarding to Plaintiffs money damages against Defendants in an amount to be determined upon the trial of this action but presently believed to be in excess of Twenty Million Dollars ($20,000,000) together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

(e) On the fourth claim, awarding to Plaintiffs a constructive trust against the assets of Woodway, together with punitive damages, legal costs and attorneys' fees incurred by Plaintiffs;

(f) On the fifth claim, awarding to Plaintiffs money damages against Defendants in an amount to be determined upon the trial of this action but presently believed to be in excess of

Twenty Million Dollars ($20,000,000), together with interest, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs; and

   (g) Granting to Plaintiffs such other and further relief as to this Court may seem just and proper, including an award of punitive damages against all Defendants.

Dated: White Plains, New York
   June 17, 2013

          DANZIG FISHMAN & DECEA

          By: /s/
           THOMAS B. DECEA
           YENISEY RODRIGUEZ-MCCLOSKEY
          Members of the Firm
          One North Broadway, Suite 1202
          White Plains New York 10601
          (914) 285-1400