UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X

SPEEDFIT LLC and AUREL A. ASTILEAN,

                 Plaintiffs,

    -against-

WOODWAY USA, INC. and DOUGLAS G.
BAYERLEIN,

                 Defendants.

--------------------------------------- X

**MEMORANDUM AND ORDER**
13-CV-1276(KAM)(AKT)

**MATSUMOTO, United States District Judge:**

On March 11, 2013, plaintiffs Speedfit LLC
("Speedfit") and Aurel A. Astilean (together, "plaintiffs")
filed an action for, *inter alia*, declaratory judgment
invalidating defendants Woodway USA, Inc. ("Woodway") and
Douglas G. Bayerlein's (together, "defendants") patent for a
manually-powered treadmill. (*See generally* ECF No. 1,
Complaint.) Plaintiffs amended their complaint against
defendants on June 17, 2013 to abandon their declaratory
judgment claim and instead allege infringement of plaintiffs'
own patents for components of a manually-powered treadmill.
(*See generally* ECF No. 18, Amended Complaint ("Am. Compl.").)
Presently before the court is defendant Woodway's motion,

presumably pursuant to Fed. R. Civ. P. 12(b)(6),[1] to dismiss plaintiffs' patent infringement claims in favor of Woodway's pending declaratory judgment action against plaintiffs, currently before the Eastern District of Wisconsin, and to dismiss plaintiffs' state law claims for failure to state a claim upon which relief can be granted.  Woodway moves this court, in the alternative, for transfer of this case to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a). For the reasons discussed below, Woodway's motion to dismiss and motion to transfer are denied except as to plaintiffs' breach of fiduciary duty claim, which is dismissed for failure to state a claim.

## BACKGROUND

### I.  Factual Allegations in the Amended Complaint

The allegations in the Amended Complaint are taken to be true for purposes of deciding a motion pursuant to Fed. R. Civ. P. 12(b)(6), and concern the inventorship and development of a manually-powered treadmill, currently marketed by Woodway as the "Curve" treadmill.  Plaintiff Speedfit, founded by plaintiff Astilean, is a New York-based company that develops fitness programs and equipment.  (Am. Compl. ¶¶ 3-4.)  Together,

---

[1] In violation of Local Civil Rule 7.1(a)(1), Woodway's Notice of Motion to Dismiss fails to identify the procedural rule or statute pursuant to which defendant seeks to dismiss the Amended Complaint.  Woodway further fails to serve any notice of their motion to transfer this action to the Eastern District of Wisconsin.

Astilean, a former world-class athlete and resident of the Eastern District of New York, and Speedfit have developed a patented fitness program to promote speed training and "the leg-powered, non-motorized treadmill" at the center of this litigation. (*Id.* ¶ 4.)  Defendant Woodway is a Wisconsin-based corporation that manufactures and sells treadmills, including motorized models and the manually-operated Curve treadmill, both domestically and internationally. (*Id.* ¶ 5.)  Defendant Bayerlein is the president of Woodway. (*Id.* ¶ 6.)

Astilean owns two active patents relating to a manually-powered treadmill: Nos. 8,308,619 (the "'619 Patent"), filed on October 29, 2010 and granted by the United States Patent and Trademark Office ("PTO") on November 13, 2013, and 8,343,016 (the "'016 Patent"), filed on November 1, 2010 and granted by the PTO on January 1, 2013). (*Id.* ¶¶ 7-8; *see also* Am. Compl. Exs. A, B.)  Both the '619 and '016 Patents "relate generally to a motorless leg powered curved treadmill that allows the rider to walk, jog, run or sprint without making any adjustments to the treadmill other than shifting the user's center of gravity forward or backwards." (*Id.* ¶ 9.)

The events surrounding the development of the treadmill at issue are summarized below, based on the allegations of the Amended Complaint, which the court accepts as true for purposes of the instant motion.  Astilean and Bayerlein

3

first met at a fitness equipment trade show in San Francisco, California in the spring of 2002 and began discussing Speedfit's exercise programs and equipment. (*Id.* ¶ 14.) Astilean and Bayerlein met in New York City on May 1, 2003, at which time they executed a non-disclosure/circumvention agreement. (*Id.* ¶ 15.) After signing the agreement, they discussed Speedfit's idea for a non-motorized treadmill. (*Id.*) Astilean provided the specifications for his treadmill design to Woodway in 2004, and Woodway agreed to build a prototype at no cost to Speedfit or Astilean. (*Id.* ¶ 16.) Astilean and another business partner, Tami Mack, visited Woodway's offices in May 2005 and signed a second non-disclosure/circumvention agreement with Woodway. (*Id.* ¶ 17.) The agreement included the following terms:

> 1. Woodway has signed a non-disclosure agreement (the "NDA") related to any designs and other information supplied by Speedfit. The NDA continues to be applicable to all disclosures made by Speedfit and all actions taken by Woodway as a result of said disclosures, including, without limitation, the construction of prototypes of personal exercise equipment based on Speedfit's design.
>
> [...]
>
> 5. Speedfit owns every right of every kind in and to its designs and any other information supplied to Woodway, and to any prototypes that Woodway builds as a result thereof....

(*Id.*) Woodway completed the prototype by August 15, 2005. (*Id.* ¶ 18.) Speedfit requested extra operative parts from Woodway

(chassis with belts) so that it could continue to refine the treadmill design. (*Id.*) On August 18, 2005, Woodway provided Speedfit with a memorandum acknowledging Speedfit's invention of the treadmill and corresponding intellectual property rights, as well as proposed agreements for partnerships between the two companies in the eventual sale of the product. (*Id.* ¶ 19.) The proposed agreements provided for some amount of money to be paid from Woodway to Speedfit. (*Id.*) Speedfit did not accept Woodway's proposals. (*Id.*)

In December 2006, Astilean visited Woodway to supervise the ongoing construction of the latest version of the non-motorized treadmill, named the "Speedboard" by Speedfit. (*Id.* ¶ 20.) Speedfit and Woodway debuted the Speedboard at an industry show in the spring of 2007, with logos for both companies on the treadmill itself. (*Id.*) Plaintiffs allege upon information and belief that Woodway began selling the Speedboard to the public after the Spring 2007 trade show, without Speedfit's consent. (*Id.* ¶ 22.) Woodway did not remit any of its profits from sale of the treadmill to Speedfit. (*See id.*)

After the trade show, Speedfit continued to work on the Speedboard design in efforts to render it totally manually-operated, as it still contained a motorized mechanism to adjust the treadmill's incline. (*Id.* ¶ 21.) By May 2008, Speedfit had

become frustrated with Woodway's inability to meet Speedfit's specifications for the prototype and undertook a re-design on its own. (*Id.* ¶ 23.) Speedfit completed a curved, wooden, fully non-motorized treadmill by August 2008. (*Id.* ¶ 24.) The new curved design (the "Curve") allowed users to move to different sections of the treadmill in order to experience a greater incline, obviating the need for the industry-standard manual, motorized incline mechanism. (*Id.*)

Astilean filed a provisional patent application (No. 61/193,239) on November 7, 2008, before presenting the Curve to Woodway in order to build a model for public sale. (*Id.* ¶ 25.) Speedfit then sent Woodway the specifications for the Curve, along with the wooden version, for Woodway to duplicate in metal. (*Id.* ¶ 25.) Around this time, Bayerlein confirmed to Astilean that Woodway was still bound to the terms of the non-disclosure agreement. (*Id.*)

In January 2009, before Woodway's metal prototype of the Curve was ready, Speedfit introduced the wooden version of the Curve at a Discovery Channel program. (*Id.* ¶ 26.) The metal version was completed in February 2009 and was named "'SpeedFit Speedboard' by Woodway, SpeedFit Trade name." (*Id.* ¶ 27.) Woodway would later rename the product as the "Woodway Curve," though the "Curve," "SpeedFit Speedboard," and "Woodway Curve" all refer to the same product design. (*Id.*)

6

The SpeedFit Speedboard by Woodway was showcased at a March 2009 fitness show and enjoyed immediate success, including being featured in many print and online magazines and catalogs. (*Id.* ¶ 28.)  In May 2009, Woodway provided Speedfit with a "strategic evaluation agreement" ("SEA"), which acknowledged Speedfit's development of the Curve and entitlement to patent the design, in an effort to secure a commercial interest in the product.  (*Id.* ¶ 29.)  Speedfit refused to sign the agreement, finding it unfair, but plaintiffs continued to discuss its terms with Woodway in an effort to resolve the disagreement.  (*Id.* ¶ 30.)  As recently as August 2009, Bayerlein wrote to Astilean that the purpose of the agreement was to protect Astilean and his invention.  (*Id.* ¶ 32.)

On March 17, 2009, and without Speedfit's knowledge, Bayerlein and other Woodway employees filed patent application number 13/235,065 (the "'065 Application") with the PTO for a leg-powered treadmill.  (*Id.* ¶ 31.)  The '065 Application describes a "virtually identical leg powered treadmill." (*Id.* ¶ 39; *see* Am. Compl. Ex. C.)  Plaintiffs allege on information and belief that the '065 Application "was assigned to Woodway by the purported inventors." (*Id.* ¶ 33.)  Plaintiffs further allege that Woodway began manufacturing and selling the Curve without the Speedfit logo in December 2010 and continues to manufacture and sell the treadmill as its own product.  (*Id.* ¶ 34.)  Woodway

has not provided plaintiffs with any profits derived from the sale of its non-motorized treadmills.  (*Id.*)

## II.  Procedural History

Plaintiffs Speedfit and Astilean commenced this action on March 11, 2013 against defendants Woodway and its president, Bayerlein, seeking a declaratory judgment invalidating Woodway's '065 Application or, alternatively, adding Astilean as an inventor on the pending application.  The complaint also included New York state law claims for breach of contract, unjust enrichment, constructive trust, breach of fiduciary duty, and conversion.  On May 13, 2013, defendants filed a pre-motion conference letter in anticipation of filing a motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. (ECF No. 10, Letter re: Motion to Dismiss for Lack of Jurisdiction.)  On May 16, 2013, plaintiffs responded to defendants' letter and indicated that they intended to amend their complaint; subsequently, this court ordered plaintiffs to file an amended complaint by June 15, 2013.  On May 17, 2013, counsel for plaintiffs represented to counsel for Woodway that plaintiffs planned to amend their complaint to claim that Woodway's treadmill infringes the '619 and '016 Patents.

On June 13, 2013, and before plaintiffs filed their amended complaint in this case, Woodway commenced a declaratory judgment action against Astilean in the United States District

Court for the Eastern District of Wisconsin, Case No. 13-cv-681, (the "Wisconsin Action"), seeking a declaration that plaintiffs' '619 and '016 Patents are invalid or, in the alternative, a correction of the '619 and '016 Patents to name the relevant Woodway employees as co-inventors.[2]  Astilean and Speedfit filed their amended complaint in this action on June 17, 2013, which added allegations that Woodway infringed the '619 and '016 patents and dropped the claim for declaratory judgment relating to the '065 Application.  Woodway served the instant motion on plaintiffs on September 27, 2013, seeking (1) dismissal of plaintiffs' patent infringement claims in favor of what Woodway claims is the earlier-filed Wisconsin Action, or, in the alternative, transfer to the Eastern District of Wisconsin pursuant to the first-to-file rule and 28 U.S.C. § 1404(a), and (2) dismissal of plaintiffs' New York common law claims for failure to state a claim.  (ECF No. 34-2, Mem. of Law in Support

---

[2] Astilean moved to dismiss the Wisconsin Action (or, in the alternative, transfer the Wisconsin Action to the Eastern District of New York) on September 24, 2013.  On December 18, 2013, Magistrate Judge William E. Callahan, Jr. issued a decision denying Astilean's motion to dismiss and transfer and ordering that the Wisconsin Action be stayed pending this court's determination of which case should proceed.  (*See* Decision and Order Deny. Def.'s Mot. to Dismiss or to Transfer, ECF No. 13, *Woodway USA, Inc. v. Astilean*, Case No. 12-cv-681 (E.D. Wis. Dec. 18, 2013).)  Counsel for plaintiffs notified the court of Magistrate Judge Callahan's December 18 decision by letter filed on December 23, 2013, and counsel for defendants responded to plaintiffs' letter on December 24, 2013.  (*See* ECF Nos. 37-38.)

of Woodway's Mot. to Dismiss ("Mem.").)[3]  The fully-briefed motion was filed on November 9 and November 11, 2013.

## DISCUSSION

### I.  Motion to Dismiss in Favor of the Wisconsin Action

#### A.  Legal Standard

Federal Circuit law governs the application of the first-to-file rule in patent cases.  *See Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) (internal citations omitted).  The "first-to-file" rule counsels that, absent special circumstances, only the first-filed action should proceed when multiple lawsuits involving the same parties and issues are pending in different jurisdictions.[4]  *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993) (applying the rule to patent cases) *abrogated on other grounds, Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995);

---

[3] Defendant Bayerlein has not moved to dismiss plaintiffs' Amended Complaint at this time, pending plaintiffs potentially dismissing him voluntarily. He reserves his right to move for dismissal for, *inter alia*, lack of personal jurisdiction and improper venue.  (*See* Mem. at 1 n.1.)

[4] The threshold issue of which court should decide whether the first-to-file rule should apply was thoroughly analyzed in Magistrate Judge Callahan's decision in the Wisconsin Action.  "Leaving the decision of the 'first to file' dispute to the court in which the first case was filed makes good sense, as it establishes a 'bright line rule', which is as easy to apply as it is to understand." *Kimberly-Clark Corp. v. McNeil-PPC, Inc.*, 260 F. Supp. 2d 738, 740 (E.D. Wis. 2003) (quoting *Daimler-Chrysler Corp. v. General Motors Corp.*, 133 F. Supp. 2d 1041, 1044 (N.D. Ohio 2001)); *see also Silver Line Bldg. Prods. LLC v. J-Channel Indus. Corp.*, -- F. Supp. 2d --, No. 13-CV-6561, 2014 WL 1221338, at *6 (E.D.N.Y. Mar. 24, 2014) (noting that the first-filed court should determine not only which forum is appropriate, but which forum should determine the appropriate forum).  Because plaintiffs in this case filed their action first, this court will decide whether the first-to-file rule applies.

*see also Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (applying the rule in a non-patent case).  The cases need not be identical for the first-to file rule to apply, but they must have substantial overlap.  *See Futurewei Techs.*, 737 F.3d at 708 (citing *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012)).  The date that complaint was filed is the relevant filing date, and it is in the discretion of the district court to stay, transfer, or dismiss the later-filed action.  *See Merial*, 681 F.3d at 1299.

The purpose of the first-to-file rule is to "avoid conflicting decisions and promote judicial efficiency," while respecting principles of federal comity.  *See Merial Ltd.*, 681 F.3d at 1299.  The rule is not absolute, however, and its application is a matter within the district court's discretion. *Futurewei Techs.*, 737 F.3d at 708.

The parties do not dispute that the pending actions sufficiently overlap to warrant application of the first-to-file rule.  Rather, as discussed below, defendants contend that only the Amended Complaint in this action substantially overlaps with the Wisconsin Action, and, therefore, the Wisconsin Action is first-filed because it predates the Amended Complaint.  (*See* Mem. at 13; Reply at 6 ("The cases only became substantially similar once Plaintiffs amended their claims to add infringement of the ['619 and '016 Patents], which was after Woodway filed

11

its declaratory action in the Eastern District of Wisconsin on these same patents.").)   In response, plaintiffs assert that the original complaint in this case was filed before the complaint in the Wisconsin Action and, therefore, the present case is the first-filed action; further, plaintiffs argue that the Amended Complaint relates back to the original complaint in this action under Federal Rule of Civil Procedure 15(c)(1)(b).   (ECF No. 35, Mem. of Law of Pls. in Opp. to Pre-Answer Mot. to Dismiss ("Opp.") at 8.)   Thus, the court turns to the question of which action was first-filed under the applicable doctrine.

In deciding which case was first-filed, this court must determine whether the operative date in this case is the date on which the initial complaint, including claims related to Woodway's '065 Patent Application, or the Amended Complaint, including claims related to Astilean's '619 and '016 Patents, was filed.   The Second Circuit's decision in *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 424 (2d Cir. 1965), is instructive.[5]   In that case, the Second Circuit applied the

---

[5] Woodway asserts that Second Circuit law does not apply to this analysis, claiming that "Federal Circuit law governs whether a court should accept (or decline) jurisdiction in an action for declaration of patent rights in view of a later-filed suit for patent infringement."   (Mem. at 5 n.1 (citing *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005).)   As noted above, Federal Circuit law generally governs application of the first-to-file rule in patent cases; however, the court is not aware of any Federal Circuit case addressing application of the rule to an amended pleading with related but not identical claims, nor has Woodway cited any such case.   Under such circumstances, "district courts look to understandings of the doctrine as developed generally in the federal courts."   *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 408 (E.D. Pa. 2008).

first-filed rule in favor of a plaintiff that had amended its complaint to include issues that the defendant had raised in a later-filed suit in another district. *Id.* In so ruling, the court noted that the first-filed action was the one that brought both parties into court and "made possible the presentation of all the issues," even though the trademarks and patents alleged to have been infringed in the second-filed action were not at issue in the first-filed action until the amendment of the complaint. *Id.* The court concluded:

> The fact that these issues were not all spelled out in the New Jersey action until Marx had amended its complaint is immaterial. Marx amended its complaint as of right as allowed by Rule 15, Federal Rules of Civil Procedure. Thus, the New Jersey suit was the first suit which made possible the presentation of all the issues and which, by amendment of the complaint did raise all the substantial issues between the parties.

*Id.*

District courts applying the first-to-file rule to disputes, where the competing cases involve claims that are not identical or "mirror images" (i.e., a patent infringement claim and declaration of invalidity claim concerning the same patent) prior to amendment of the first-filed complaint, have taken an approach similar to the *Mattel* court's in both patent and non-patent cases. *See, e.g.*, *GlycoBioSciences, Inc. v. Nycomed US, Inc.*, No. 11-CV-1280, 2012 WL 540928, at *3 (E.D.N.Y. Feb. 15, 2012) (internal citation omitted) (patent case); *AU Optronics*

*Corp. v. LG.Philips LCD Co.*, No. 07-C-137-S, 2007 WL 5613513, at
*3 (W.D. Wis. May 30, 2007) (patent case); *GT Plus, Ltd. v. Ja-
Ru, Inc.*, 41 F. Supp. 2d 421, 424 (S.D.N.Y. 1998) (contract and
unfair competition case); *see also Versus Tech., Inc. v.
Hillenbrand Indus., Inc.*, No. 04-CV-168, 2004 WL 3457629, at *7-
8 (W.D. Mich. Nov. 23, 2004) (finding that first-to-file rule
should apply to two cases involving different patents that
involved similar technology).

Here, although the Wisconsin Action was the first to
assert a claim involving plaintiffs' '619 and '016 Patents, this
case was the first to bring the parties into court and allow for
the presentation of all claims relating to the inventorship of
the Curve treadmill.  Woodway does not dispute plainitffs'
assertion that it could have filed a counterclaim in the action
before this court, asserting the same claims as it did in its
Wisconsin Action.  Accordingly, the court disagrees with
Woodway's argument that the Wisconsin Action was first-filed
because the actions "only became substantially similar once
Plaintiffs amended their claim."  (Mem. at 6.)  This case, from
its commencement, involved Speedfit, Astilean, Woodway, the
joint development of the treadmill technology relating to both
Woodway's '065 Patent Application and Astilean's '619 and '016
Patents, and the parties' rights concerning that technology.
Application of the first-filed rule in favor of the present

action is therefore proper because the two cases sufficiently overlapped even prior to the amendment of the complaint in this action.[6]  *See GlycoBioSciences*, 2012 WL 540928, at *3 (applying the first-filed rule in favor of an amended complaint where the claims in the original and amended complaints involved identical parties and arose "out of the same allegedly infringing conduct").

Woodway cites to one decision from the Northern District of California in support of its position that this case should be deemed later-filed because the patent infringement claims appear in an amended pleading.  In its reply, Woodway argues that *Diablo Techs., Inc. v. Netlist, Inc.*, 13-CV-3901-YGR, 2013 WL 5609321 (N.D. Cal. Oct. 11, 2013), counsels dismissal of this action in favor of the Wisconsin Action.  In *Diablo*, a later-filed declaratory judgment before the district court was found to be first-filed in comparison to an amended complaint pending in the Central District of California.[7]  *Id.* at 3.  The court reasoned that the original complaint filed in the

---

[6] The fact that plaintiffs substituted their claim for correction of defendants' '065 Patent Application with their claims for infringement of plaintiffs' '619 and '016 Patents, instead of amending the complaint to include both sets of claims, as the *Mattel* defendant did, is immaterial; the court finds that the filing of this case was the operative action taken by plaintiffs to bring the parties and their disputes before this court.

[7] Although Woodway states that the *Diablo* court "concluded that the amended complaint did not relate back to the original complaint" (Reply at 6), the district court did not appear to rely on the relation back doctrine in reaching its decision.

Central District could not be considered "the 'first' complaint with respect to the issues and parties of concern" because (1) it did not include any allegations regarding the particular patents later at issue or any patent infringement claims, and (2) the plaintiff in the Northern District case was not a party to the original Central District complaint.[8]  *Id.*  The court finds that this case does not present sufficiently similar facts to warrant reliance on *Diablo*.  Here, all of the parties in the Wisconsin Action were parties to the original complaint in this case.  Furthermore, the original complaint in this case alleged facts involving the development and inventorship of the Curve and included claims regarding Woodway's patent application of related technology.  Thus, the court finds that this case was the first to bring the parties and issues into court and, thus,

---

[8] Although the original Central District complaint mentioned the patent at issue in the Northern District litigation, it included only antitrust, unfair competition and fraud claims and "did not bring any claims related to patent infringement or validity, did not name Diablo, and did not reference the accused ULLtraDIMM product."  *Id.* at 1.

is the first-filed action.[9]

Even if the claims in the originally-filed complaint in this action are not considered sufficiently similar to the claims in the Wisconsin Action, this case is the first-filed action because the Amended Complaint relates back to the original complaint under Federal Rule of Civil Procedure 15(c)(1)(B).  An amended pleading relates back to the date of the originally-filed pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014).  "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading

_____

[9] Defendant's contention in its reply brief that plaintiffs would gain a litigation advantage if the court finds this action to be first-filed because they would benefit from an earlier filing date by amending deficient claims in response to viable claims brought by Woodway in the Wisconsin Action is disingenuous.  As an initial matter, Woodway's assertion that the original complaint failed to establish subject matter jurisdiction is unsupported; at minimum, the original complaint asserted claims against diverse parties, and any ambiguity as to the diversity of citizenship was cured by the Amended Complaint.  *See* Compl. ¶¶ 2-5; Am. Compl. ¶¶ 3-6; *see also Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 329 (2d Cir. 2001) ("where the facts necessary to the establishment of diversity jurisdiction are subsequently determined to have obtained all along, a federal court may simply allow a complaint to be amended to assert those necessary facts and then treat diversity jurisdiction as having existed from the beginning").  Furthermore, as Woodway details in its motion, "Woodway believed in good faith that Mr. Astilean would sue Woodway for infringement of the '619 and '016 patents.  As a result, on June 13, 2013, Woodway filed a declaratory judgment action against Mr. Astilean in the United States District Court for the Eastern District of Wisconsin . . . ."  (Mem. at 5.)  Woodway candidly admits that it filed the declaratory judgment action in Wisconsin after this court granted plaintiffs leave to file an amended complaint by a specific date.  Thus, Woodway ostensibly hoped to gain a litigation advantage by bringing its anticipatory declaratory judgment action in its preferred venue to the exclusion of plaintiffs' earlier-filed action, as amended.

has been given to the opposing party . . . by the general fact situation alleged in the original pleading" for purposes of the statute of limitations or other provision. *See ASARCO*, 756 F.3d at 202.

Plaintiffs' initial declaratory judgment claims regarding the '065 Patent Application and patent infringement claims concerning the '619 and '016 Patents arise out of same allegedly infringing course of conduct by defendants. *See, e.g.*, *GlycoBioSciences*, 2012 WL 540928, at *3; *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 990-91 (N.D. Cal. 2011) (holding that an amended complaint with new invalidity and non-infringement claims related back because new patents named in the amended complaint involved similar technology and components as those named in the original complaint); *see also Nat'l Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, No. 97-3105, 1997 WL 700496, at *4-5 (E.D. Pa. Oct. 29, 1997) (finding that a subsequently-filed amendment related back to the original complaint in the first-filed case because the new claims raised similar issues to those initially presented). Furthermore, it is undisputed that Speedfit provided Woodway's counsel with notice of their intent to file an amended complaint that included patent infringement claims on the '619 and '016 Patents. Woodway offers no explanation or authority for its argument that plaintiffs' patent infringement claims do not

relate back to the originally-filed complaint; thus, the patent
infringement claims in the Amended Complaint are deemed to
relate back to the filing of the original complaint in this
action on March 11, 2013.

Applying the principles above, the court finds that
because this action was filed on March 11, 2013, the claims in
the Amended Complaint are first-filed in comparison to the
Wisconsin Action, filed on June 13, 2013.  Accordingly,
Woodway's motion to dismiss the patent infringement claims in
favor of the Wisconsin Action is denied.

## II.  Motion to Transfer

Having determined that this case is the first-filed
action, the court turns to whether it should transfer the case
to the Eastern District of Wisconsin pursuant to factors
outlined in 28 U.S.C. § 1404(a).[10]  Second Circuit law governs
this determination.  *See Audiovox Corp. v. S. China Enter.,
Inc.*, No. 11-CV-5142, 2012 WL 3061518, at *6 n.4 (E.D.N.Y. July
26, 2012) (citing *Children's Network, L.L.C. v. PixFusion
L.L.C.*, 722 F. Supp. 2d 404, 409 n.2 (S.D.N.Y. 2010)).

"For the convenience of parties and witnesses, in the

---

[10] Plaintiffs contend that a motion to transfer is not properly before the
court because Woodway did not include a motion to transfer in its pre-motion
conference letter.  As previously discussed, Woodway also failed to provide
any notice of motion regarding their request to transfer venue.  Nonetheless,
because courts deciding whether departure from the first-to-file rule is
warranted apply the convenience factors under 28 U.S.C § 1404(a), the court
finds it appropriate to decide whether to transfer this case to the Eastern
District of Wisconsin in connection with Woodway's motion to dismiss.

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Generally, plaintiff's forum choice "should not be disturbed unless the balance of factors tips decidedly in favor of a transfer." *Audiovox Corp.*, 2012 WL 3061518, at *8 (internal citations and quotation marks omitted).

Courts have broad discretion to transfer cases on an individualized, case-by-case basis. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)). In considering a motion to transfer venue, the court must determine: (1) whether the action could have been brought originally in the proposed transferee district, and (2) whether transfer is justified in the interest of justice and convenience of the parties. *Audiovox Corp.*, 2012 WL 3061518, at *8 (citing *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003)). The moving party bears the "burden of making out a strong case for transfer" by clear and convincing evidence. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010)).

In determining whether a motion to transfer venue should be granted, courts consider the following factors:

(1) the plaintiff's choice of forum, (2) the

> convenience of witnesses, (3) the location of relevant
> documents and relative ease of access to sources of
> proof, (4) the convenience of parties, (5) the locus
> of operative facts, (6) the availability of process to
> compel the attendance of unwilling witnesses, [and]
> (7) the relative means of the parties

*Audiovox Corp.*, 2012 WL 3061518, at *7 (citing *D.H. Blair & Co.*, 462 F.3d at 106-107).  Additionally, courts may consider trial efficiency, court congestion, relative familiarity of the courts with applicable law, and any local interest in having a controversy decided in a particular district.  *See Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 129 (S.D.N.Y. 2003) (internal citations omitted).

The parties do not dispute that this action could have been brought initially in the Eastern District of Wisconsin. (*See* Opp. at 12; Mem. at 15.)  The court therefore turns to the discretionary factors in assessing whether to transfer this case.

### A.   Plaintiffs' Choice of Forum

Plaintiffs chose to bring this action in the Eastern District of New York.  A plaintiff's choice of forum is "given great weight," *D.H. Blair & Co*, 462 F.3d at 107, but the weight given to plaintiff's choice is diminished where the operative facts are not meaningfully connected the chosen forum or where plaintiff does not reside in the chosen forum, *see EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348-49

(E.D.N.Y. 2012) (internal citations omitted).  Speedfit is a New York corporation (Am. Compl. ¶ 3), and its sole principal, Astilean, resides in East Hampton, New York (*Id.* ¶ 4).

Woodway cites to *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349 (S.D.N.Y. 2009), in support of its argument that the operative facts in this case did not occur in the Eastern District of New York.  While the court in *Capitol Records* gave less emphasis to the plaintiffs' choice of forum, the plaintiffs in that case were "major record companies and music publishers," three of which were California corporations, and two of which were already litigating other matters in the proposed transferee district.  *Id.* at 354, 367.  As discussed in greater detail below, however, courts in this district have held that the operative facts in a patent infringement case are materially related to the site where the patented technology was developed——in this case, Long Island, New York, as alleged by plaintiffs.[11]  *See EasyWeb Innovations*, 888 F. Supp. 2d at 350. Accordingly, plaintiffs' choice of forum is given great deference.  *See id*.

## B.   Convenience of the Witnesses

"The convenience of the witnesses is probably the single most important factor in the transfer analysis."  *Neil*

---

[11] "For purposes of ruling on a motion to transfer venue, the Court accepts all factual allegations of the complaint as true."  *Bossom v. Buena Cepa Wines, LCC*, 11 CV 6890 VB, 2011 WL 6182368, at *1 (S.D.N.Y. Dec. 12, 2011).

*Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006).  The party seeking transfer typically submits an affidavit listing "the potential principal witnesses expected to be called and . . . the substance of their testimony." *Pall Corp. v. PTI Techs., Inc.*, 992 F. Supp. 196, 198 (E.D.N.Y. 1998) (internal citations omitted).

At this stage of the litigation, the court finds this factor to be neutral.  In its reply memorandum, Woodway states that it expects "a number of witnesses, including third-party witnesses" to testify, all of whom reside in Wisconsin.  (Reply at 8.)  Woodway expects to call at minimum the seven inventors listed on the '065 Patent Application (*id.*), but has not submitted an actual witness list.  On the other hand, plaintiffs, as the non-moving party, have not identified principal witnesses, other than Mr. Astilean who resides in this district and would be inconvenienced by travel to Wisconsin.  *See EasyWeb Innovations*, 888 F. Supp. 2d at 351-52; *see also Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208–09 (S.D.N.Y. 1998) ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a).").

The court therefore concludes that this factor is

neutral.  Even if the court assumes, however, that this factor favors transfer given the number of Wisconsin witnesses Woodway intends to call, the court finds that the other factors, on balance, weigh against transfer.

### C.   Locus of Operative Facts

"[I]n patent cases, the locus of operative facts can include the district where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced." *EasyWeb Innovations*, 888 F. Supp. 2d at 354; *but see Whitehaus Collection v. Barclay Prods., Ltd.*, No. 11 Civ. 217, 2011 WL 4036097, at *2 (S.D.N.Y. Aug. 29, 2011) (quoting *Bristol-Myers Squibb Co. v. Andrx Pharms., LLC*, No. 03 Civ. 2503(SHS), 2003 WL 22888804, at *3 (S.D.N.Y. Dec. 5, 2003)) ("In a patent infringement action, the locus of operative facts is the jurisdiction where the design and development of the infringing patent occurred.").

Speedfit asserts that it designed and developed its leg-powered treadmill in the Eastern District of New York.  (*See* Opp. at 4-6, 13.)  Woodway states, meanwhile, that the allegedly infringing product was designed and developed in the Eastern District of Wisconsin.  Def. Mem. at 17.  Both districts are materially connected to the operative facts in this case; therefore, this factor is neutral.  *See EasyWeb Innovations*, 888 F. Supp. 2d at 353-54.

24

**D.   Location of Evidence**

Woodway contends that this factor supports transfer to the Eastern District of Wisconsin because "the majority of the documents and evidence" are located in that district.  (Mem at 16.)  With regard to documents, their physical location is of little consequence.  "[I]t has been repeatedly noted that '[i]n in an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.'"  *Mazuma Holding Corp. v. Bethke*, No. 13-CV-6458, 2014 WL 814960, at *20 (E.D.N.Y. Mar. 3, 2014) (quoting *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008)).

Woodway argues that the costs of shipping physical evidence (i.e., treadmills) from Wisconsin would be an unnecessary burden.  Although the presence of physical evidence in the Eastern District of Wisconsin may weigh slightly in favor of transfer, *see Int'l Commodities Exp. Corp. v. N. Pac. Lumber Co.*, 737 F. Supp. 242, 246 (S.D.N.Y. 1990), Woodway does not address the fact that it routinely sells and ships treadmills nationwide and internationally. (*See* Am. Compl. at ¶ 5.)  Absent a more detailed showing of Woodway's burden, this factor is neutral and given little weight.  *Cf. Mazuma Holding Corp.*, 2014 WL 814960, at *20.

### E.   Convenience of the Parties

Both plaintiffs and Woodway argue that they would be inconvenienced by having to appear in this action should it proceed outside of their home districts.  "While transfer is disfavored when it 'merely shift[s] the inconvenience from one party to the other,' . . . it 'may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the nonmoving party's inconvenience.'"  *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 399 (E.D.N.Y. 2013) (internal citations omitted).  Transfer to the Eastern District of Wisconsin might completely eliminate Woodway's burden (*see* Mem. at 15-16), but only by shifting that burden entirely to Speedfit and Astilean (*see* Opp. at 13).

### F.   Availability of Process to Compel the Attendance of Witnesses

Woodway argues that the availability of compulsory process supports transfer.  Without the identification a witness who would be unwilling to testify in the Eastern District of New York, however, this factor does not favor transfer.  *See JetBlue Airways Corp.*, 960 F. Supp. 2d at 400; *EasyWeb Innovations*, 888 F. Supp. 2d at 354.  Moreover, as often occurs with out-of-state witnesses located beyond the court's compulsory process, witness depositions could be used at trial if the witness is determined

to be unavailable.  Fed. R. Civ. P. 32(a)(4).

G.    **The Relative Means of the Parties**

Plaintiffs argue that this factor weighs against transfer, because Speedfit is "a small local business with one principal."  (Opp. at 13.)  A party opposing transfer because of inadequate means "'must offer documentation to show that transfer . . . would be unduly burdensome to his finances.'" *See Mazuma Holding Corp.*, 2014 WL 814960, at *21-22; *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 176 (S.D.N.Y. 2009).  Because plaintiffs have not supplied the court with any documentation showing that transfer would be financially burdensome, this factor is neutral.

H.    **Other Factors and the Interests of Justice**

The Eastern District of New York and the Eastern District of Wisconsin are equally familiar with the federal patent law underlying this dispute.  *See JetBlue Airways Corp.*, 960 F. Supp. 2d at 400 (citing *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574, 578 (S.D.N.Y. 1998)).  This factor is therefore neutral.  *Id.*  The court's exercise of supplemental jurisdiction over plaintiffs' New York common law claims is also neutral, given that the district court in Wisconsin is capable of applying New York law.

The median time from filing to disposition of civil cases is 8.7 months in the Eastern District of New York,

compared to 6.2 months in the Eastern District of Wisconsin. (*See* Mem. at 17 (citing Administrative Office of the United States Courts, *Judicial Business of the United States Courts*, *available at* http://www.uscourts.gov/uscourts/Statistics/ JudicialBusiness/2013/appendices/C05Sep13.pdf)).  This factor weighs in favor of transfer, but only minimally.  *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006) (holding that only "minimal weight" should be afforded to this factor given a difference in median disposition time of 2.7 months).  Furthermore, given that Judge Callahan has stayed the Wisconsin Action pending this court's determination "regarding which case should proceed," Woodway's argument that trial efficiency necessitates transfer (Mem. at 18) is inapposite.

On balance, the factors used to determine whether motions to transfer venue should be granted are generally neutral and do not strongly favor Woodway.  Therefore, the court gives deference to plaintiffs' choice of forum and respectfully declines to transfer this action to the Eastern District of Wisconsin.

**III. Motion to Dismiss Plaintiff's State Law Claims**

**A.    Standard of Review**

Pursuant to Rule 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice"; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 678-79.

**B.   Breach of Contract**

Woodway argues that plaintiffs have failed to meet the minimum pleading threshold for their breach of contract claim. To state a claim for breach of contract under New York law, plaintiffs must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (internal citations omitted).  "While these elements need not be separately pleaded, failure to allege them will result in dismissal." *James v. Countrywide Fin. Corp.,* No. 10 Civ. 4953,

2012 WL 359922, at *22 (E.D.N.Y. Feb. 22, 2012) (citation and internal quotation marks omitted).  "Courts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *Comfort Inn Oceanside v. Hertz Corp.,* No. 11-CV-1534, 2011 WL 5238658, at *7 (E.D.N.Y. Nov. 1, 2011).

Plaintiffs have adequately pled the existence of an agreement between plaintiffs and Woodway.  "In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based.  A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim," but "must at least set forth the terms of the agreement upon which liability is predicated by express reference."  *James,* 2012 WL 359922, at *22 (quoting *Howell v. Am. Airlines, Inc.,* No. 05 Civ. 3628, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006)). Plaintiffs have alleged that the second non-disclosure agreement signed by Speedfit and Woodway included terms providing for Speedfit's ownership of its designs and any prototypes Woodway was to build from those designs, as well as non-disclosure of any information provided to Woodway from Speedfit.  (*See* Am. Compl. ¶ 17.)  In addition, plaintiffs have pled facts concerning the circumstances under which the contracts were formed in 2003 and 2005.  (*See id.* ¶¶ 14-17, 25.)

The Amended Complaint also avers that plaintiffs performed under the alleged agreements by providing Woodway with treadmill designs and specifications (*see id*. ¶¶ 17-28) and that Woodway breached the agreement by selling the treadmill allegedly designed by Speedfit to the public as Woodway's own creation and applying to obtain a patent for its design (*Id.* ¶ 48).  Although defendant argues that the provisions plaintiffs identify did not prevent Woodway from "independently developing improvements and enhancements to the publicly known, basic concept of a manual treadmill, which is exactly what Woodway did" (Mot. at 9), the court's role at this stage of the litigation is to determine whether the allegations in the Amended Complaint state the essential elements for a breach of contract claim, not to look into the merits of plaintiffs' case. Finally, plaintiffs allege that they were damaged in the amount of Woodway's profit from its breach, or the sale of the Woodway Curve.  (*Id.* ¶ 49)  Thus, the court finds that plaintiffs' allegations in the Amended Complaint, taken as true, are sufficient to state a plausible claim for breach of contract, and defendant's motion to dismiss the breach of contract claim is denied.

## C.   Unjust Enrichment and Constructive Trust

Plaintiffs also bring claims for unjust enrichment and imposition of a constructive trust against Woodway.  To state a

claim for unjust enrichment under New York law, a plaintiff must allege (1) "that the defendant was enriched at the plaintiff's expense" and (2) "that equity and good conscience require the plaintiff to recover the enrichment from the defendant." *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (internal citations omitted). A cause of action for unjust enrichment sounds in quasi-contract and cannot lie where an enforceable contract governs the disputed matter. *See Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 530-31 (S.D.N.Y. 2007) (internal citations omitted). Where there is a bona fide dispute regarding the existence of a contract, however, both an unjust enrichment and a breach of contract claim may be pled. *Id*. (internal citations omitted).

   While plaintiffs' unjust enrichment claim is derived from the same set of facts as plaintiffs' breach of contract claim, plaintiffs may plead alternative theories of liability at this stage because Woodway disputes the existence of an

agreement.[12]  *See ESI, Inc. v. Coastal Power Prod. Co.*, 995 F.
Supp. 419, 436 (S.D.N.Y. 1998) (denying motion to dismiss unjust
enrichment claim where the defendant contested the validity and
enforceability of the contracts covering the dispute as issue);
*see also* Fed. R. Civ. P. 8(e)(2) (permitting alternative
pleading).  Woodway cites no authority for its argument that
plaintiffs must state in the Amended Complaint that their unjust
enrichment claim is pled in the alternative for the claim to be
sustained.  (*See* Reply at 3.)  Plaintiffs have alleged that
Woodway benefitted at the expense of Speedfit and Astilean
through Woodway's purported co-opting of plaintiffs' designs,
and the facts as alleged support an inference that equity and
good conscience necessitate that plaintiffs recover the alleged
benefit wrongly realized by Woodway.  Thus, plaintiffs' unjust
enrichment claim may proceed.

      The elements of a constructive trust claim are "(1) a
confidential or fiduciary relationship; (2) a promise, express

---

[12] The cases cited by Woodway in support of its argument that plaintiffs may
not bring claims for unjust enrichment or constructive trust alongside a
breach of contract claim each involved an uncontested operative contract
pertaining to the dispute at issue.  *See Sundahl v. State Farm Mut. Auto Ins.
Co.*, No. 08-cv-1342, 2009 U.S. Dist. LEXIS 68093, at *25-27 (E.D.N.Y. Mar.
31, 2009) (dismissing unjust enrichment claim "relat[ing] specifically to the
legal obligations created by the insurance policies with [defendant]");
*Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, No. 11-CV-4743, 2012
WL 3679319, at *6 (E.D.N.Y. Aug. 22, 2012) ("In this case, there appears to
be no genuine dispute that the Merchant Agreement is a binding contract that
governs the claims at issue in the present case."); *N. Shipping Funds I, LLC
v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 107 (S.D.N.Y. 2013) (dismissing
constructive trust claim because a valid agreement controlled the dispute at
issue and "there is no reason to believe that the legal remedy is inadequate
in this case").

or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *See Bankers Sec. Life Ins. Soc'y v. Shakerdge,* 49 N.Y.2d 939, 940 (1980).  The constructive trust doctrine is equitable in nature and should not be "rigidly limited" by the four elements. *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992).  At the motion to dismiss phase, the district court's focus is whether the defendant was unjustly enriched. *State Farm Mut. Auto. Ins. Co. v. Cohan*, No. 12-CV-1956, 2013 WL 4500730, at *5 (E.D.N.Y. Aug. 20, 2013) (citing *In re First Central Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004)).

Because plaintiffs have sufficiently pled unjust enrichment against Woodway, the court denies Woodway's motion to dismiss plaintiffs' constructive trust claim.  Plaintiffs allege that they were in a confidential relationship with Woodway under the non-disclosure agreements, which expressly or implicitly represented a promise by Woodway not to disclose or use plaintiffs' designs without their consent.  Plaintiffs also allege that they supplied proprietary information in reliance on their agreement with Woodway.  Thus, while plaintiffs have not traced a specific transfer of funds to Woodway, they have alleged facts sufficient to state a plausible claim that they are entitled to the proceeds from the sale of the Woodway Curve. *Cf. In re Koreag*, 961 F.2d at 353 ("the absence of any one

factor will not itself defeat the imposition of a constructive trust when otherwise required by equity"); *Cohan*, 2013 WL 4500730, at *5.  The court finds plaintiffs' allegations sufficient to state a claim for constructive trust.

### D.   Breach of Fiduciary Duty and Conversion

Woodway argues that plaintiffs' final state law claim, breach of fiduciary duty and conversion, is barred by the applicable statute of limitations and fails to state a claim.[13] To state a cause of action for breach of fiduciary duty, plaintiffs must allege "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *N. Shipping Funds I*, 921 F. Supp. 2d at 101 (citing *Johnson v. Nextel Comms., Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (internal quotation marks omitted).  "'A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'"  *Id.* (quoting *Krys v. Butt,* 486 Fed. App'x 153, 154 (2d Cir. 2012)).  In most cases, an arm's-length commercial transaction will not give rise to a fiduciary relationship absent "a higher level of trust." *Id.*

---

[13] Although Woodway's motion states that plaintiffs' "claim for breach of fiduciary duty and conversion should be dismissed," Woodway argues only that the breach of fiduciary duty claim is untimely and insufficiently pled.  (*See* Mem. at 10-12.)  Accordingly, the court will not consider whether plaintiffs have stated a claim for conversion.

"A breach of fiduciary duty claim must be dismissed as duplicative of a breach of contract claim if the parties owe each other no duty independent of the contract itself." *Perkins v. Am. Transit Ins. Co.*, No. 10 CIV. 5655, 2013 WL 174426, at *10 (S.D.N.Y. Jan. 15, 2013) (internal citations omitted). In order to state a claim for breach of fiduciary duty independent of a claim for breach of contract, the complaint must include "allegations that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone." *N. Shipping Funds I*, 921 F. Supp. 2d at 105 (quoting *Balta v. Ayco Co.*, 626 F. Supp. 2d 347, 360-61 (W.D.N.Y. 2009)).

A claim for breach of fiduciary duty generally accrues at the time of breach. *Malmsteen v. Berdon LLP,* 369 Fed App'x 248, 249-50 (2d Cir. 2010) (citing *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 166 n.3 (N.Y. App. Div. 1st Dep't 2003)). Under New York law, a breach of fiduciary duty claim has a six-year statute of limitations if the relief sought is equitable, and a three-year statute of limitations if only money damages are sought. *Id.* at 249 (citing *Weiss v. T.D. Waterhouse*, 847 N.Y.S.2d 94, 95 (N.Y. App. Div. 2d Dep't 2007)). "However, New York law permits certain actions for damages to property or pecuniary interest to be brought under a tort or contract theory, and hence applies the longer of the two statutes of

limitations, as long as the asserted liability has its genesis in the contractual relationship of the parties." *Id.* at 250 (citations and some internal punctuation omitted).  The statute of limitations for a breach of fiduciary duty claim sounding in tort is three years when money damages are sought, but the statute of limitations for a breach of fiduciary duty claim sounding in contract is six years.  N.Y. C.P.L.R. § 213(2); *Malmsteen,* 369 Fed App'x at 250.

Woodway contends that plaintiffs' claim must be dismissed under a three-year statute of limitations because plaintiffs seek only money damages.  Plaintiffs argue that a six-year statute of limitations applies because the substantive remedy they seek is "breach of contract and/or unjust enrichment," and that their breach of fiduciary duty claim is timely under either limitations period.  (Opp. at 20-21.) Because the fiduciary duty alleged by plaintiffs arises from a contractual relationship, the six-year statute of limitations applies to plaintiffs' claim. *See Ironshore Ins. Ltd. v. W. Asset Mgmt. Co.*, No. 11 CIV. 5954, 2012 WL 1981477, at *4 (S.D.N.Y. May 30, 2012) (denying motion to dismiss breach of fiduciary duty claim as time-barred where plaintiff's claim "ha[d] its genesis in a contractual relationship").  As defendant recognizes, the earliest allegation of breach in the Amended Complaint is plaintiffs' allegation that Woodway began

selling the Speedboard, a treadmill purportedly based on
Speedfit's designs, after a trade show held in Spring 2007.
(*See* Opp. at 11; Am. Compl. ¶ 22.)  Plaintiff filed its original
complaint in the instant action on March 11, 2013; therefore,
any claim for breach of fiduciary duty would have had to accrue
by March 11, 2007.  Taking the facts alleged in the Amended
Complaint to be true, the court finds that plaintiffs' claim for
breach of fiduciary duty is timely under the six-year statute of
limitations.

Although the breach of fiduciary duty claim is timely,
however, the court finds that plaintiffs have failed to
sufficiently allege the existence of a fiduciary relationship
other than the parties' purported contractual obligations.  As
defendants note in their opposition brief, plaintiffs allege
only that "Defendants owed fiduciary duties to Plaintiffs."
(Am. Compl. ¶ 61.)   From the facts alleged in the complaint
relating to the non-disclosure agreements, it can be inferred
that Woodway owed plaintiffs a duty not to disclose or otherwise
exploit plaintiffs' treadmill designs.  Plaintiffs do not
allege, however, that the parties had a relationship of higher
trust independent of their obligations under the two non-
disclosure agreements upon which plaintiffs rely.  Thus, the
breach of fiduciary duty claim must be dismissed.  *Cf. N.
Shipping Funds I*, 921 F. Supp. 2d at 105 (dismissing fiduciary

duty claim where the complaint's allegations of a fiduciary relationship related solely to the contract between the parties).

## CONCLUSION

For the reasons stated above, defendant Woodway's motions to dismiss or transfer plaintiffs' patent infringement claims in favor of the pending Eastern District of Wisconsin action are denied.  Defendant's motion to dismiss plaintiffs' state law claims is denied as to the breach of contract, unjust enrichment, constructive trust and conversion claims, and granted as to the breach of fiduciary duty claim.  Defendants shall answer the Amended Complaint within the time specified by the Federal Rules.  Per Magistrate Judge Tomlinson's September 3, 2014 Minute Order, counsel shall contact Judge Tomlinson's chambers within three days to set the remaining discovery schedule.

**SO ORDERED.**

Dated:  October 10, 2014
        Brooklyn, New York


                        _____
                                /s/
                        Kiyo A. Matsumoto
                        United States District Judge