UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

SPEEDFIT LLC and AUREL A. ASTILEAN,

Plaintiffs,

- against -

WOODWAY USA, INC

Defendant.

-----------------------------------------------------x

2013 Civ. 01276 (KAM) (AKT)

THIRD AMENDED COMPLAINT

(JURY TRIAL DEMANDED)

Plaintiffs, Speedfit LLC ("Speedfit") and Aurel A. Astilean ("Astilean") (collectively, the "Plaintiffs"), by and through their attorneys Fishman & Decea and John F. Vodopia, P.C., as and for their Third Amended Complaint allege as follows:

## NATURE OF THE CASE

1. This is an action arising under the patent laws of the United States, 35 U.S.C § 1, et seq., for infringement by Woodway USA, Inc. ("Woodway" or "Defendant"), of certain patents owned by Plaintiffs.

2. Defendant, Woodway, has misappropriated the unique concept, design and know-how for constructing a non-motorized treadmill invented by Astilean and a non-party, Dan Bostan ("Bostan"). To wit, Woodway wrongfully filed a U.S. provisional patent application, which has issued in multiple U.S. Patents, seeking to take credit for – and assert legal right to – the patent rights associated with inventive non-motorized treadmill as if the patent rights were its own, and marketed and wrongfully sold the product embodying the inventive non-motorized treadmill (the "Product") as if it were its own, infringing Plaintiffs' patents. The conduct of Defendant caused and continues to cause to Plaintiffs substantial injury and damage while Defendant reaps the benefit from the sale of Plaintiffs' product. Upon information and belief,

Defendant's acts were willful, deliberate and calculated to inflict substantial damage to Plaintiffs, while providing financial benefit to itself. This action seeks relief and redress related to Defendant's wrongful conduct.

THE PARTIES

3. Speedfit is a New York limited liability company formed and existing pursuant to the laws of the State of New York with its principal place of business at 79 Newtown Lane, East Hampton, New York 11937. Speedfit is in the business of fitness, including developing programs and machines, to facilitate achieving an individual's fitness goals.

4. Astilean, a member of Speedfit, resides in East Hampton, New York. Astilean is a former world class athlete who founded Speedfit. Astilean, among other things, uses his patented fitness program that emphasizes speed training over long distance exercise. Astilean also invented a "fitness matrix" that allows individuals to determine their fitness level and therefore tailor their individual workouts. Astilean, a native Romanian who was once ranked seventh in the world in the decathlon, teaches a low-impact, injury-free, high-energy approach to fitness, making his programs available to the general public irrespective of their fitness level. Astilean and Speedfit developed the leg-powered, non-motorized treadmill which is the subject of this action and which was converted by Defendant.

5. Woodway is a Wisconsin corporation which, among other things, manufactures exercise products, including treadmills, and maintains its corporate headquarters at W229 N591 Foster Court, Waukesha, Wisconsin 53186. Woodway sells various motorized treadmills, and as a result of the acts which are the subject of this action, now illegally sells Plaintiffs' non-motorized leg powered treadmills, which it converted from Plaintiffs' design, to fitness facilities, athletes, professional sports organizations, armed forces and government

facilities, colleges and universities, and for home and office fitness use. Woodway sells its products directly and through a network of distributors in the United States and internationally. In addition to its domestic facility in Waukesha, Wisconsin, Woodway has design and manufacturing facilities in Germany and Japan.

U.S. PROVISIONAL APPLICATION No. 61/280,265,
U.S. PATENT NOS. 8,308,619 AND 8,343,016

6. Speedfit owns all right, title, and interest in and to United States Provisional Application Serial No. 61/280,265, filed on November 2, 2009 (the "'265 Provisional Application") and in United States Patent No. 8,308,619 (the "'619 Patent") filed on or about October 29, 2010, including the right to sue for past damages. Accordingly, Speedfit has standing to bring this action and claim for patent infringement. The '619 Patent derives its priority under 35 USC § 119(e) from the '265 Provisional Application. The '619 Patent was duly and legally issued by the United States Patent and Trademark Office on November 13, 2012, is active and is entitled "Leg Powered Treadmill." A copy of the '265 Provisional Application is annexed hereto as Exhibit A. A copy of the '619 Patent is annexed hereto as Exhibit B.

7. Speedfit owns all right, title, and interest in and to United States Patent No. 8,343,016 (the "'016 Patent"), which is a second patent filed by Astilean on or about November 1, 2010. Accordingly, Astilean and/or Speedfit has/have standing to bring this action and claim for patent infringement. The '016 Patent derives its priority under 35 U.S.C. § 119(e) from the '265 Provisional Application. The '016 Patent was duly and legally issued by the United States Patent and Trademark Office on January 1, 2013, is active and is entitled "Leg Powered Treadmill." A copy of the '016 Patent is annexed hereto as Exhibit C.

8. The '265 Provisional Application, the '619 Patent and the '016 Patent

(together the "Patents-in-Suit") relate generally to a non-motorized, leg powered curved treadmill with a curved running surface that allows the rider to walk, jog, run or sprint without making any adjustments to the treadmill other than shifting the user's center of gravity forward or backwards. The non-motorized leg powered curved treadmills disclosed and described in the Patents-in-Suit require a means for slackening the upper curved surface of the treadmills' running belts to effect and maintain the curvature.

U.S. PROVISIONAL APPLICATION No. 61/161,027,
U.S. PATENT NOS. 8,864,627,8,986,169, 9,039,580 AND 9,114,276

9. Woodway is the identified owner of United States Patent No. 8,864,627 (the "'627 Patent"), filed on or about September 16, 2011. The '627 Patent derives priority under 35 U.S.C. § 119(e) from U.S. Provisional Patent Application No. 61/161,027, filed in the name of inventor Nicholas Oblamski on March 17, 2009 (the "Oblamski Provisional Application"). The '627 Patent was duly and legally issued by the United States Patent and Trademark Office on October 21, 2013, is active and is entitled "Power Generating Manually Operated Treadmill." A copy of the Oblamski Provisional Application is attached hereto as Exhibit D. A copy of the '627 Patent is annexed hereto as Exhibit E.

10. Woodway also is identified as the owner of United States Patent No. 8,986,169 ("'169 Patent"), filed on or about April 2, 2014. The '169 Patent derives priority under 35 U.S.C. § 120 from U.S. Patent Appln. Ser. No. 13/235,065, filed on September 16, 2011 and intentionally abandoned on April 30, 2015 (the "'065 Application"), and priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application. The '169 Patent was duly and legally issued by the United States Patent and Trademark Office on March 24, 2015, is active and is entitled "Manual Treadmill and Methods of Operating the Same." A copy of the '169 Patent is annexed hereto as Exhibit F.

11.     Woodway also is identified as the owner of United States Patent No. 9,039,580 ("'580 Patent"), filed on or about March 13, 2015.  The '580 Patent derives priority under 35 U.S.C. § 120 from both the '169 Patent and the '065 Application.  The '580 Patent also derives priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application. The '580 Patent was duly and legally issued by the United States Patent and Trademark Office on May 26, 2015, is active and is entitled "Manual Treadmill and Methods of Operating the Same." A copy of the '580 Patent is annexed hereto as Exhibit G.

12.     Woodway also is identified as the owner of United States Patent No. 9,114,276 ("'276 Patent"), filed on or about November 11, 2013.  The '276 Patent derives priority under 35 U.S.C. § 120 from the '065 Application, and priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application. The '276 Patent was duly and legally issued by the United States Patent and Trademark Office on August 25, 2015, is active and is entitled "Manual Treadmill and Methods of Operating the Same." A copy of the '276 Patent is annexed hereto as Exhibit H.

13.     The Oblamski Provisional Application, the '065 Application, the '627 Patent, the '169 Patent, the '580 Patent and the '276 Patent relate generally to a non-motorized leg powered curved treadmill that allows the rider to walk, jog, run or sprint without making any adjustments to the treadmill other than shifting the user's center of gravity forward or backwards. The Oblamski Provisional Application in particular discloses means that allow the upper running surface of the running belt to follow a top curve of the curved non-motorized treadmill rather than "float" straight across the top of the curved treadmill.

14.     The subject matter of the Oblamski Provisional Application was first disclosed to Woodway by Astilean on December 10, 2008, when Astilean played a video of him, his wife

and one of his children walking and running on a Wooden Prototype of the inventive non-motorized treadmill built by Astilean's co-inventor, Dan Bostan ("Woodway Prototype").  The video was recorded sometime in August 2008 in Bostan's home in Canada.  During the disclosure to Woodway by Astilean on December 10, 2008, Astilean also explained to Douglas Bayerlein the need for the non-motorized treadmill to include a means for slackening the upper running surface of the treadmill running belt to prevent the upper portion from floating up and losing the curved shape, which is crucial to the design.  The *means for slackening* is the solution to the problem of the curved running surface comprising the upper part of the belt floating up off its bearing surface and losing its curved shape due to the lower part of the running belt sagging due to its weight.

15.    After reviewing Speedfit's Wooden Prototype on December 10, 2008, Woodway (i.e., Mr. Bayerlein) agreed to build a production version of the Wooden Prototype that it would market and sell as the Speedfit Speedboard on Speedfit's and Astilean's behalf. Bayerlein directed Mr. Oblamski to build the production version of the Wooden Prototype. Between approximately, December 12, 2008 through February 24, 2008, Oblamski worked under Astilean's direction to realize a production model of the Speedfit design, as evidence by numerous email exchanges. Astilean provided Oblamski with access to videos of the Wooden Prototype and a modified version of the Wooden Prototype broadcast by the Discovery Channel in January 2009.  Astilean sent Oblamski the side rails of the Wooden Prototype so that he could measure and duplicate the curvature of the Wooden Prototype in the production model, which was proven to work.  Astilean spoke on the phone to Oblamski during this period of construction numerous times, and Oblamski verified that the production model of the Wooden Prototype was operational finally in late February or early March 2009.  The production model was shown and

offered for sale by Woodway as the Speedfit Speedboard on or about March 19, 2009 at the IHRSA tradeshow in San Francisco. The production model is referred to as Speedboard 2.

16. The production model is just one embodiment of Speedfit's invention and conceived and reduced to practice by Astilean and Bostan between March 2008 and August 2008. As Oblamski built Speedboard 2 at Astilean's direction, and the Wooden Prototype by way of example, Oblamski is not an inventor but merely Speedfit's agent in having made the Speedboard 2. Astilean and Bostan are the true and only inventors of the motorless treadmill with the curved running surface with the means for slackening. Speedfit is the true owner of the Oblamski Provisional Application, which discloses what Astilean taught Oblamski and Woodway to build on Speedfit's behalf, and the owner of the '627, the '169, the '580 and the '276 Patents, which derive directly from and incorporate by reference the entire subject matter of the Oblamski Provisional Application.

JURISDICTION AND VENUE

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 1338(a) and § 1498(a). This complaint seeks the recovery of Plaintiffs' reasonable and entire compensation for the use by Defendant, without license, of the Patents-in-Suit and invention described in and covered by the Patents-in-Suit. There is diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and Plaintiffs do not share a state of citizenship with Defendant. Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

18. This Court has personal jurisdiction over Defendant Woodway, as Woodway purposely availed itself of this judicial district by, among other things: (i) having its directors, agents, assignees, and employees attending trade shows and distributing products throughout

New York State; (ii) a substantial part of the events or omissions giving rise to this case occurred in New York, including meetings between the representatives of Plaintiffs and Defendant's directors, agents, assignees, and employees; (iii) Woodway's directors, agents, assignees, and employees attended meetings with Plaintiffs in New York; (iv) Woodway sent product samples for inspection and modification to Plaintiffs in New York; and (v) Woodway's directors, agents, assignees, and employees phoned and e-mailed Plaintiffs at their New York residences regarding the treadmill and the venture.

19. Furthermore, as demonstrated on Woodway's website www.woodway.com: (i) the treadmills are available for purchase by New York consumers directly on the website; (ii) Woodway travels to New York to promote sales of the treadmill; and (iii) Woodway has contracted to sell treadmills, including the Curve (as defined below) to various New York athletic teams including the New York Yankees, Mets and Jets, and to the U.S. Military Academy at West Point, amongst many other New York residents.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1400 and 28 U.S.C. § 1391 and the Local Rules for the Southern and Eastern Districts of New York in that this is the district "where the Defendant resides, or where the Defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400 (b).

## FACTS COMMON TO ALL CLAIMS

21. Astilean first met Douglas G. Bayerlein ("Bayerlein"), president of Woodway, in 2002 at the Spring fitness equipment show in San Francisco, California. During that meeting Astilean discussed with Bayerlein Speedfit's innovative concepts in both exercise programs and exercise equipment. Bayerlein liked his ideas.

22. On or about May 1, 2003, after a meeting between Astilean and Bayerlein at the Hilton Hotel in New York City, the parties entered into a non-disclosure/circumvention agreement and duly executed a writing embodying the terms of the non-disclosure/circumvention agreement. After the execution of the non-disclosure/circumvention agreement, the parties discussed Speedfit's novel idea of a non-motorized treadmill.

23. In 2004, Astilean formally introduced to Woodway his invention of a non-motorized treadmill. Astilean provided to Woodway his specifications for the non-motorized treadmill and Woodway agreed to build a prototype. It was agreed that the prototype would be built at no cost to Speedfit or Astilean.

24. In May 2005, during a visit to Woodway's Wisconsin headquarters by Astilean and his former business partner, Tami Mack, the parties entered into a second non-disclosure/circumvention agreement and signed a writing embodying the terms of the second non–disclosure/circumvention agreement which were orally conveyed to Plaintiffs. The second agreement referred back to the first agreement. This was memorialized in the second non-disclosure/circumvention agreement, which provided in pertinent part:

> 1. Woodway has signed a non-disclosure agreement (the "NDA") related to any designs and other information supplied by Speedfit. The NDA continues to be applicable to all disclosures made by Speedfit and all actions taken by Woodway as a result of said disclosures, including, without limitation, the construction of prototypes of personal exercise equipment based on Speedfit's design.
>
> * * *
>
> 5. Speedfit owns every right of every kind in and to its designs and any other information supplied to Woodway, and to any prototypes that Woodway builds as a result thereof…

25. By August 15, 2005, the prototype was developed. Speedfit, however, was not yet satisfied with the treadmill and, at its request, Woodway sent to Speedfit two chassis with

belts (the working parts of the treadmill which eliminates the need for a motor) so that it could continue to modify and perfect the design of the treadmill for end users.

26.     Approximately three days later, apparently eager to participate in Speedfit's invention, on August 18, 2005, Woodway delivered to Speedfit a memorandum pursuant to which it acknowledged Speedfit's invention of the non-motorized treadmill and the intellectual property rights ancillary to it, along with proposals which the parties might pursue together on a partnership or joint venture basis.  The proposed agreement provided several options for Speedfit and Woodway to partner together in the sale of the product. Each and every option provided a component of payment to go to Speedfit from Woodway. The proposals, however, were not accepted by Speedfit and the NDAs and oral agreement of confidentiality remained in full force and effect.

27.     In or about December 2006 Astilean visited Woodway to supervise the construction of his latest version of the treadmill which Speedfit named the "Speedboard." The Speedboard was completed in time for an industry show to be held in the Spring 2007 and it was prominently displayed at that show; the logos of both Woodway and Speedfit were affixed to the Speedboard at the show.

28.     The Speedboard was a great success at the show; Speedfit, however, was not completely satisfied with the design and continued to work on perfecting it.  In particular, the Speedboard contained a motorized mechanism to raise and lower the incline of the treadmill. Since Speedfit's invention was fundamentally based upon the concept of a non-motorized treadmill, Speedfit wanted to develop a non-motorized mechanism by which a user raised or lowered the incline on the Speedboard, so that it would be easier to use and more versatile.

29.     Upon information and belief, after the Spring 2007 show, Woodway started to sell the Speedboard and to retain all of the revenue generated from the sales.  Speedfit did not consent to the sales nor consent to the fact that the proceeds were kept solely by Woodway.

30.     By early 2008, frustrated with the inability of Woodway to build a fully non-motorized prototype up to industry and consumer standards, Speedfit undertook to design and build the Speedboard to its specifications.

31.     In early 2008, Astilean sought the help of Bostan, to support his efforts in improving an incline adjustment mechanism and a speed control mechanism of a flat, motorless treadmill that Astilean had been developing.  During their efforts, Astilean and Bostan invented and developed a treadmill with a curved running surface that would enable a user to vary the amount of exerted effort, not by adjusting the incline, but by positioning his/her feet on different locations along the curved surface ("the New Design").

32.     On March 30, 2008, Astilean and Bostan agreed to collaborate on a working embodiment of a motorless treadmill with a slightly concave, curved running surface (i.e., the New Design), pursuant to certain terms.  They agreed to "cooperation," by which Bostan would participate in developing a working model or prototype for the New Design and Astilean would participate by securing patent protection for the New Design, producing experimental models, producing, marketing and selling a production model of the treadmill based on the New Design.

33.     Over the next few months, the two worked together towards the ends of their respective allotted tasks.  Bostan's efforts included constructing a number of prototypes in an effort to prove out the New Design. By experimenting with the various prototypes, Astilean and Bostan realized that there was an inherent problem with the slightly concave curved surface of the New Design. That is, as the belt revolved around the pulleys, the weight of the lower part of

the closed loop running belt caused same to droop, the drooping of the lower portion caused a tautening of the upper part of the belt between the pulleys, which resulted in a floating up of the curved part off the bearings such that the curved portion between the pulleys more or less disappeared.

34. While Bostan and Astilean could have added a means for holding the belt edges at the bearings, such solutions would have added an unacceptable amount of friction. Around midsummer 2008, however, they found a solution: embodying a means for slackening the upper running surface of the closed loop treadmill belt, so that the belt would not go taut and float up off the bearings at the belt edges, losing the curved shaped and rendering the treadmill unusable.

35. By August 2008, Speedfit – through Astilean and Bostan – had built a wooden version of a fully non-motorized treadmill, with a curved design that allows people to walk, jog, run and sprint without making any adjustments to the treadmill other than shifting the user's center of gravity forward and backward (the "Wooden Prototype"). Astilean and Bostan tested the Wooden Prototype in Montreal during August 2008 and video-recorded the operational Wooden Prototype at this time. The Wooden Prototype included the means for slackening the Woodway belt, as it maintained the upper part of the belt from floating up off the bearing surfaces reflecting the curved shape.

36. Speedfit had now also resolved its concern about how to maneuver the inclines on a treadmill which it had identified on the previous design, with an altogether new design innovation of a curved treadmill. Instead of the traditional manual incline found universally on treadmills, the new invention (which became known as the "Speedfit Speedboard" or "Speedboard 2" and then renamed by Defendant as the "Curve" sometime in 2010), allows a user

to simply move to the front or back of the Curve for a larger incline, or to the middle for no incline.

37.     On November 7, 2008, before the Speedboard 2 was presented to Woodway to build a marketable unit or production model, Astilean filed a provisional patent application to protect the invention, under Patent Number 61/193,239 ("First Provisional Application") disclosing the details of the inventive curved treadmill. including a broad solution to the problem of the upper running belt floating up, which First Provisional Application relied upon a marked-up photograph of the Wooden Prototype, (Speedfit ultimately re-filed the '265 Provisional Application on November 2, 2009, as a "Second Provisional Application").

38.     Thereafter, Speedfit disclosed the operational Wooden Prototype to Woodway, including showing a video of the operational Wooden Prototype to Woodway personnel, including Mr. Bayerlein and Michael Frank, on December 10, 2008.  Mr. Bayerlein testified that this was the first time he had seen such a treadmill and he acknowledged that Astilean had disclosed that the Wooden Prototype possessed a means for slackening on December 10, 2008. Bayerlein agreed that Woodway would build a metal production model of the inventive treadmill for Speedfit, then and there, i.e., at the meeting in which the video was played on December 10, 2008.

39.     Astilean took pictures of Bayerlein watching the video of the Wooden Prototype, to which Mr. Frank responded that there was no reason for Astilean to take photographs since Woodway was bound by the NDAs.

40.     In order to build the metal production model, Astilean then sent the side rails of the Wooden Prototype and the specifications to Woodway so that Woodway could duplicate it in metal as the production model. In connection with Woodway's production of the metal

version or production model of the Wooden Prototype (i.e., Speedboard 2), Bayerlein verbally (and expressly) confirmed to Astilean that Woodway remained bound by the NDAs, clearly evidencing Woodway's understanding that Astilean was the inventor of the non-motorized treadmill with curved running surface, i.e., Speedfit's Speedboard 2 (renamed by Woodway as the 'Curve' approximately one year later to effect conversion) and that Woodway and its employees were bound to maintain the details of the inventive design as well as the details of the construction of the wooden version and the details of the production model (i.e., Speedboard 2) in confidence and as Speedfit's proprietary subject matter.

41.     Woodway clearly understood that Astilean was the inventor of the non-motorized treadmill with curved running surface (i.e., Speedfit's Speedboard 2, eventually renamed by Woodway as the "Curve") and that a confidentiality agreement existed – both orally and as an executed NDA – binding Woodway's employees to maintain the details of the inventive design as well as the details of the construction of the wooden version  and the metal production model in confidence and as Plaintiff Speedfit's proprietary subject matter and know-how.

42.     The first introduction of what Woodway now sells as the Woodway Curve was disclosed by Speedfit on the Discovery Channel, Wreckreation Nation, in January 2009; the Wooden Prototype that Speedfit created was modified by Speedfit and featured in the Wreckreation video because the final metal prototype (i.e., the production model) had not yet been completed by Woodway (again, at Astilean's direction).

43.     By late February or early March 2009, Woodway had an operational production model of the Wooden Prototype ready for market. Woodway used a slightly modified version of the side panels Speedfit displayed in the January 2009 discovery channel disclosure.

At that time, the name of the product was "Speedfit Speedboard 2," a SpeedFit Trade name. Woodway, about one (1) year later, unilaterally changed the name to "Woodway Curve," to effect conversion. Collectively, the Speedfit Speedboard 2, Woodway Curve and Curve are all the same design and product covered by the Patents-in-Suit.

44.    The first time Speedfit Speedboard 2 was displayed was at a fitness show in March 2009 at IHRSA USA and 2009 FiBO Germany; it was an instant success. After the show, the Speedboard 2 was in just about every fitness catalog and hundreds of articles were on the Internet (displayed as "Speedfit Speedboard," while referred to internally as Speedboard 2). The new treadmill was featured in Style Magazine, which endorsed the concept of the product and many magazines articles and news articles about the new invention were written and published.

45.    Thus, prior to these public disclosures, Woodway – through its agents Mr. Bayerlein and Mr. Frank – viewed the operational Wooden Prototype in December 2008.

46.    In or about March 20, 2009 Woodway issued a press release attributing inventorship to Speedfit.

47.    On or about May 2009, again eager to secure a commercial interest in the Speedboard 2, Woodway provided to Speedfit what it denominated as a strategic evaluation agreement ("SEA"), which among other things, acknowledged that Speedfit developed the Speedboard 2 and therefore the Curve and was entitled to patent it.

48.    Speedfit refused to sign the SEA which it believed to be inherently inequitable. Instead, between May 2009 and August 2009, Plaintiffs attempted unsuccessfully to discuss the SEA with Woodway and work on a fair and just agreement, given that Plaintiffs had invented the product and the NDA was in full force and effect. Woodway was unresponsive to these overtures by Plaintiffs.

49. Unbeknownst to Speedfit, in or about March 17, 2009, certain employees of Woodway filed the Oblamski Provisional Application. Upon information and belief, the information used by Woodway for the Oblamski Provisional Application was taken directly from Speedfit's design and invention of the Wooden Prototype and the completed production model they displayed at IRHSA 2009 as the SpeedFit Speedboard (again, identified internally as Speedboard 2). The Oblamski Provisional Application improperly identified Oblamski as inventor of the subject matter found therein, failing to identify Astilean and Dan Bostan as the inventors of the Speedboard 2.

50. As late as August, 2009, Bayerlein affirmed to Astilean in writing that the purpose of the SEA was to protect Astilean and the invention.

51. Upon information and belief, in or about the late spring or early summer of 2010, Woodway began to sell the Speedboard 2 without the Speedfit logo, as the Curve, although Woodway previously sold the Speedboard 2 with the registered trademark "Speedboard." Woodway without Speedfit's permission removed its trademark from the Speedboard 2, identifying same with its trademark Curve since.

52. Woodway continues to manufacture and sell the Curve as its own product, to the exclusion of Speedfit. Moreover, Woodway has not tendered any royalties or other remuneration to Plaintiffs from the sales of the Curve.

53. Upon information and belief, in or about September 15, 2011, the Oblamski Provisional Application, the '627 Patent, the '169 Patent, the '580 Patent and the '276 Patent were assigned to Woodway by the purported inventors.

## FIRST CLAIM FOR RELIEF
## (INFRINGEMENT OF THE PATENTS)

54. Plaintiffs repeat and reallege all allegations contained in all the foregoing

paragraphs of this complaint as if they were fully stated herein.

55. Plaintiffs are the owners of the Patents-in-Suit. (Exhibits A-C).

56. Either Plaintiff Astilean or Plaintiff Speedfit owned the Patents-in-Suit throughout the period of the Defendant's infringement and still own/owns the Patents-in-Suit.

57. Claim 1 of the '619 Patent sets forth:

1. A motor-less, leg-powered treadmill comprising:

> a treadmill frame;
>
> a set of respective front and rear pulley end rollers for rotation, said front and rear pulleys supporting a closed loop treadmill belt;
>
> said closed loop treadmill belt comprising a plurality of parallel slats oriented perpendicular to an axis of rotation of said belt, said parallel slats attached to each other in a resilient fashion;
>
> said closed loop treadmill belt being of such length as compared to the distance between the end rollers to permit it to assume a required concave upper contour;
>
> a means for slackening an upper concave portion of said closed loop treadmill belt while simultaneously keeping a lower portion of said closed loop treadmill belt taut, preventing said lower portion from drooping down during rotation and exertion of walking or miming force upon said upper concave portion of said closed loop treadmill belt, said means for slackening the upper portion while simultaneously keeping the lower portion taut, preventing said lower portion from drooping down during rotation and exertion of walking or running force upon said upper concave portion of said closed loop treadmill belt comprises a timing belt having respective timing belt pulleys attached to said front and rear pulley rollers for said closed loop treadmill belt, wherein timing belt idlers are used to configure said timing belt geometrically to fit within constraints of said contours of said treadmill, wherein if said closed loop treadmill belt is prevented from slipping relative to said end rollers by high friction coefficient, once configured, said timing belt will not permit drooping down of said lower taut portion of said closed loop treadmill belt because all respective motion is synchronous.

Claim 1 of the '016 Patent sets forth:

> 1. A motor-less, leg-powered curved treadmill comprising: a treadmill frame; a set of respective front and rear pulley end rollers for rotation, said front and rear pulleys supporting a closed loop treadmill belt; said closed loop treadmill belt comprising a plurality of parallel slats oriented perpendicular to an axis of

> rotation of said belt, said parallel slats attached to each other in a resilient fashion; said closed loop treadmill belt being of such a length as compared to the distance between the end rollers to permit it to assume a required concave upper contour; a means for slackening an upper concave portion while simultaneously keeping a lower portion of the belt taut, preventing said lower portion from drooping down during rotation and exertion of walking or running force upon said upper concave portion of said closed loop treadmill belt; wherein each said slat is made of a material with sufficient resiliency and strength and weight to lie on and conform to a concave row of upper support peripheral ball bearings located at each peripheral side of said upper portion of said motor-less, leg-powered curved treadmill.

Similarly, the Oblamski Provisional Application (Exhibit D), describes and pictures a virtually identical leg powered treadmill:

> [0006]One embodiment of the disclosure relates to a manually operated treadmill comprising a treadmill frame having a front end and a rear end opposite the front end, a front shaft rotatably coupled to the treadmill frame at the front end, a rear shaft rotatably coupled to the treadmill frame at the rear end, and a running belt including a curved running surface upon which a user of the treadmill may run. The running belt is disposed about the front and rear shafts such that force generated by the user causes rotation of the front shaft and the rear shaft and also causes the running surface of the running belt to move from the front shaft toward the rear shaft. The treadmill is configured to control the speed of the running belt to facilitate the maintenance of the contour of the curved running surface.
>
> [0007]Another embodiment of the disclosure relates to a manually operated treadmill comprising a treadmill frame, a front support member rotatably coupled to the treadmill frame, a rear support member rotatably coupled to the treadmill frame, a running belt including a curved running surface upon which a user of the treadmill may run, wherein the running belt is supported by the front support member and the rear support member, and a synchronizing system configured to cause the front support member and the rear support member to rotate at substantially the same speeds. The force generated by the user causes rotation of the front support member and the rear support member and also causes the running belt to rotate relative to the treadmill frame.
>
> [0008]Another embodiment of the disclosure relates to a manually operated treadmill comprising a treadmill frame, a front shaft rotatably coupled to the treadmill frame, a rear shaft rotatably coupled to the treadmill frame, a running belt including a contoured running surface upon which a user of the treadmill may run, wherein the running belt is disposed about the front and rear shafts such that force generated by the user causes rotation of the front shaft and the rear shaft and also causes the running belt to rotate about the front shaft and the rear shaft without the rotation of the running belt being generated by a motor, and a one-way bearing

assembly configured to prevent rotation of the running surface of the running belt in one direction.

[0009]Another embodiment of the disclosure relates to manually operated treadmill comprising a treadmill frame, a running belt including a running surface upon which a user of the treadmill may run, a front support member rotatably coupled to the treadmill frame, the front support member comprising the forward most support for the running belt, a rear support member rotatably coupled to the treadmill frame, the rear support member comprising the rearward most support for the running belt. The running surface comprises at least in part a complex curve located intermediate the front support member and the rear support member and incorporating a minimum of two geometric configurations.

58.     Defendant had actual or constructive knowledge of Speedfit's Patents-in-Suit and/or Speedfit's patented subject matter and know-how.

59.     Defendant has infringed the Patents-in-Suit literally and/or under the doctrine of equivalents, and are still infringing on the Patents-in-Suit by making, selling, and using the Curve that embodies the patented invention of Astilean.

60.     Upon information and belief, Defendant will continue in its willful and deliberate infringement of the Patents-in-Suit unless and until it is enjoined by this Court.

61.     Astilean and/or Plaintiffs has/have been and continues/continue to be damaged by the infringement by Defendant in an amount at present unknown, as Astilean and Speedfit have not been informed as to the full extent of such infringement and such extent cannot be ascertained except by discovery and special accounting.

62.     Astilean and/or Plaintiffs is/are entitled to compensation for use by Defendant Woodway of the Patents-in-Suit.

63.     By reason of the foregoing, Astilean and/or Plaintiffs request judgment in his/their favor against Defendant for a sum of money representing the reasonable and entire compensation for the infringing use by or for Defendant of the Patents-in-Suit either literally or under the doctrine of equivalents, with interest, and for such other relief as this court may deem

just and proper, including interest, attorneys' fees and costs.

SECOND CLAIM FOR RELIEF
(CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256 ON THE '627 PATENT)
(Astilean and Bostan as Inventors)

64. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

65. Astilean and Bostan are the true inventors of at least part of the subject matter of United States Patent No. 8,864,627 (the "'627 Patent"), which is assigned to Woodway and which derives its priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application.

66. With deceptive intent, Woodway identified Oblamski, not Astilean and Bostan, as the inventor on the Oblamski Provisional Application and therefore the '627 Patent; Oblamski is not an inventor of the subject matter of the Oblamski Provisional Application and, therefore, the '627 Patent.

67. The omission of Astilean and Bostan as inventor of the Oblamski Provisional Application and the '627 Patent, occurred with no deceptive intent on the part of Astilean, Dan Bostan and Speedfit.

68. By reason of the foregoing, Astilean and Bostan shall be named the true inventors on the '627 Patent and Oblamski shall be stricken as inventor.

THIRD CLAIM FOR RELIEF
(IN THE ALTERNATIVE, CORRECTION OF INVENTORSHIP
UNDER 35 U.S.C. § 256 ON THE '627 PATENT)
(Astilean and Bostan as Joint Inventors)

69. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

70. Astilean and Bostan are inventors of the subject matter of the ‘627 Patent, which is assigned to Woodway and which derives its priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application.

71. Woodway did not identify Astilean and Bostan as inventor of the Oblamski Provisional Application and, therefore, the ‘627 Patent; instead Woodway identified Oblamski as the sole inventor.

72. The omission of Astilean and Bostan as inventors on the Oblamski Provisional Application and the ‘627 Patent occurred with deceptive intent on the part of Woodway and/or Oblamski.

73. By reason of the foregoing, Astilean and Bostan shall be named joint inventors on the ‘627 Patent.

FOURTH CLAIM FOR RELIEF
(CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256 ON THE ‘169 PATENT)
(Astilean and Bostan as Inventors)

74. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

75. Astilean and Bostan are the inventors of subject matter of United States Patent No. 8,986,169 (“’169 Patent”), which is assigned to Woodway and which derives its priority under 35 USC § 119(e) from the Oblamski Provisional Application.

76. With deceptive intent, Woodway failed to identify Astilean and Bostan as inventors on the Oblamski Provisional Application and the ‘169 Patent; instead Woodway identified Oblamski as the sole inventor; Oblamski is not an inventor of the subject matter of the Oblamski Provisional Application and the ‘169 Patent.

77. The omission of Astilean and Bostan as the inventor on the ‘169 Patent occurred without deceptive intent on the part of Astilean, Bostan and Speedfit.

78. By reason of the foregoing, Astilean and Bostan shall be named inventors on the ‘169 Patent.

## FIFTH CLAIM FOR RELIEF
## (IN THE ALTERNATIVE, CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256 ON THE ‘169 PATENT)
## (Astilean and Bostan as Joint Inventors)

79. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

80. Astilean and Bostan are joint inventors of at least part of the subject matter of the ‘169 Patent, which is assigned to Woodway and which derives its priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application.

81. Woodway omitted Astilean and Dan Bostan and did not list them as inventors on the Oblamski Provisional Application and therefore the ‘169 Patent; instead Woodway identified Oblamski as the sole inventor.

82. The omission of Astilean and Bostan as inventors on the Oblamski Provisional Application and the ‘169 Patent occurred with intent to deceive Speedfit and Astilean on the part of Woodway.

83. By reason of the foregoing, Astilean and Bostan shall be named joint inventors on the ‘169 Patent.

## SIXTH CLAIM FOR RELIEF
## (CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256 ON THE ‘580 PATENT)
## (Astilean and Bostan as Inventors)

84. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

85. Astilean and Bostan are the inventors of subject matter of United States Patent No. 9,039,580 ("'580 Patent"), which is assigned to Woodway and which derives its priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application and under 35 U.S.C. § 120 from the abandoned '065 Application.

86. With deceptive intent, Woodway failed to identify Astilean and Bostan as inventors on the Oblamski Provisional Application and the '580 Patent; instead Woodway identified Oblamski as the sole inventor; Oblamski is not an inventor of the subject matter of the Oblamski Provisional Application and the '580 Patent.

87. The omission of Astilean and Bostan as the inventor on the '580 Patent occurred without deceptive intent on the part of Astilean, Bostan and Speedfit.

88. By reason of the foregoing, Astilean and Bostan shall be named inventors on the '169 Patent.

SEVENTH CLAIM FOR RELIEF
(IN THE ALTERNATIVE, CORRECTION OF INVENTORSHIP
UNDER 35 U.S.C. § 256 ON THE '580 PATENT)
(Astilean and Bostan as Joint Inventors)

89. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

90. Astilean and Bostan are joint inventors of at least part of the subject matter of the '580 Patent, which is assigned to Woodway and which derives its priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application and under 35 U.S.C. § 120 from the abandoned '065 Application.

91. Woodway omitted Astilean and Dan Bostan and did not list them as inventors on the Oblamski Provisional Application and therefore the '580 Patent; instead Woodway identified Oblamski as the sole inventor.

92. The omission of Astilean and Bostan as inventors on the Oblamski Provisional Application and the '580 Patent occurred with intent to deceive Speedfit and Astilean on the part of Woodway.

93. By reason of the foregoing, Astilean and Bostan shall be named joint inventors on the '580 Patent.

## EIGHTH CLAIM FOR RELIEF
## (CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256 ON THE '276 PATENT)
## (Astilean and Bostan as Inventors)

94. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

95. Astilean and Bostan are the inventors of subject matter of United States Patent No. 9,114,276 ("'276 Patent"), which is assigned to Woodway and which derives its priority under 35 USC § 119(e) from the Oblamski Provisional Application.

96. With deceptive intent, Woodway failed to identify Astilean and Bostan as inventors on the Oblamski Provisional Application and the '276 Patent; instead Woodway identified Oblamski as the sole inventor; Oblamski is not an inventor of the subject matter of the Oblamski Provisional Application and the '276 Patent.

97. The omission of Astilean and Bostan as the inventor on the '276 Patent occurred without deceptive intent on the part of Astilean, Bostan and Speedfit.

98. By reason of the foregoing, Astilean and Bostan shall be named inventors on the '276 Patent.

NINTH CLAIM FOR RELIEF
(IN THE ALTERNATIVE, CORRECTION OF INVENTORSHIP
UNDER 35 U.S.C. § 256 ON THE '276 PATENT)
(Astilean and Bostan as Joint Inventors)

99.    Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

100.   Astilean and Bostan are joint inventors of at least part of the subject matter of the '276 Patent, which is assigned to Woodway and which derives its priority under 35 U.S.C. § 119(e) from the Oblamski Provisional Application.

101.   Woodway omitted Astilean and Dan Bostan and did not list them as inventors on the Oblamski Provisional Application and therefore the '276 Patent; instead Woodway identified Oblamski as the sole inventor.

102.   The omission of Astilean and Bostan as inventors on the Oblamski Provisional Application and the '276 Patent occurred with intent to deceive Speedfit and Astilean on the part of Woodway.

103.   By reason of the foregoing, Astilean and Bostan shall be named joint inventors on the '276 Patent.

TENTH CLAIM FOR RELIEF
(DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201 AND 2202)

104.   Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

105.   Astilean and Bostan are the inventors or joint inventors of the Oblamski Provisional Application, the '627 Patent, the '169 Patent, the '580 Patent and the '276 Patent.

106. Astilean and Bostan are not identified as inventors or as joint inventors of the Oblamski Provisional Application, the ‘627 Patent, the ‘169 Patent, the ‘580 Patent and the ‘276 Patent.

107. Consequently, an actual, present, and justiciable controversy has arisen concerning the inventorship of the Oblamski Provisional Application, the ‘627 Patent, the ‘169 Patent, the ‘580 Patent and the ‘276 Patent.

108. Plaintiffs seek declaratory judgment from this Court that Astilean and Bostan are the true sole inventors or are joint inventors of the ‘627 Patent , the ‘169 Patent, the ‘580 Patent and ‘276 Patent, and any other patents owned or controlled by Defendant of which Astilean and Bostan are the inventors or joint inventors, based on the fact that Astilean and Bostan are the sole inventor or joint inventor of the Oblamski Provisional Application, the ‘627 Patent , the ‘169 Patent, the ‘580 Patent and the ‘276 Patent and, therefore, any injunctive relief necessary to enforce their rights under that declaratory judgment.

ELEVENTH CLAIM FOR RELIEF
(CONVERSION OF THE PATENTS)

109. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

110. Speedfit owns the rights of Astilean and Bostan to any patents or patent applications including subject matter relating motorless treadmills with a curved running surface with means for slackening to maintain the surface from floating up, including the Patents-in-Suit, the Oblamski Provisional Application, the ‘627 Patent, the ‘169 Patent, the ‘580 Patent and the ‘276 Patent. Defendant Woodway has wrongfully exercised dominion over the property of Plaintiffs by refusing to name Astilean and Bostan as either the inventors or joint inventors (with individuals at Woodway) of the Oblamski Provisional Application, the ‘627 Patent , the ‘169

Patent, the ‘580 Patent and the ‘276 Patent, and other patents and patent applications that incorporate the subject matter of the Oblamski Provisional Application, the ‘627 Patent, the ‘169 Patent, the ‘580 Patent and/or the ‘276 Patent.

111. As a direct and proximate result of Defendant’s conversion of Plaintiffs’ property, Plaintiffs have suffered, and will continue to suffer harm and substantial damages in the form of loss of value of the Patents-in-Suit and the revenues derived from licenses to that property.

TWELFTH CLAIM FOR RELIEF
(BREACH OF CONTRACT)

112. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

113. Plaintiffs and Defendant entered into two separate non-disclosure agreements (paragraphs 22 and 24 above) in which Defendant agreed to assist Plaintiffs in the development of a prototype of Astilean’s leg powered, non-motorized, treadmill confidentially, acknowledging Plaintiffs’ ownership rights in same.

114. An oral confidentiality agreement existed between Plaintiffs and Woodway, as Woodway’s directors, agents and employees orally confirmed to Astilean that Woodway was bound by the NDAs, clearly evidencing Woodway’s understanding that Astilean is the inventor of the non-motorized treadmill with curved running surface and that it and its employees were bound to maintain the details of the inventive design as well as the details of the construction of the wooden version in confidence and as Speedfit’s proprietary subject matter.

115. Defendant breached these agreements by selling the product to the market, filing the Oblamski Provision Application, identifying various employees of Defendant, as

inventors of Plaintiffs' non-motorized treadmill with curved running surface and holding out to the world that they invented the Curve and are its owner.

116. By reason of the foregoing, Defendant is indebted to Plaintiffs for all amounts earned from the sale of the product to date, including but not limited to sales in the United States and abroad, together with interest, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs, as well as an Order by the Court compelling Defendant to assign all right, title and interest in U.S. patent application serial no. 13/235,065 and U.S. Provisional application serial no. 61/161,027 to Plaintiffs.

## THIRTEENTH CLAIM FOR RELIEF
## (UNJUST ENRICHMENT)

117. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

118. Defendant has been unjustly enriched through the receipt of proceeds of the sale of the Curve in an amount to be determined at trial but presently believed to be in excess of $20,000,000.

119. By reason of the foregoing, Defendant is indebted to Plaintiffs in the amount of $20,000,000 together with interest thereon, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs.

## FOURTEENTH CLAIM FOR RELIEF
## (CONTRUCTIVE TRUST)

120. Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

121.   Plaintiffs expended a significant amount of time and resources in developing the Curve with the understanding that once it was developed, Plaintiffs could bring the product to market using whatever manufacturer they chose.

122.   Defendant improperly, without justification, stole the design of the Curve from Plaintiffs and has marketed it as its own product and design.

123.   Defendant has failed and refused to remunerate Plaintiffs for the invention and development of the Curve or any of the other products which Plaintiffs brought to Defendant.

124.   The conduct of Defendant, as aforesaid, was an abuse of the confidence and breach of the fiduciary relationship between Plaintiffs and Defendant.

125.   Plaintiffs have no adequate remedy at law.

126.   By reason of the foregoing, Plaintiffs should be awarded a constructive trust over the assets of Woodway.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Speedfit LLC and Aurel A. Astilean, demand judgment against Defendant, Woodway USA, Inc., as follows:

1) On the first claim:

   a) awarding to Astilean and/or Plaintiffs an accounting to determine the amounts of his damages;

   b) awarding to Astilean and/or Plaintiffs money damages in an amount sufficient to compensate him for Woodway's infringement of the Patents-in-Suit, but not less than a reasonable royalty;

   c) awarding to Astilean and/or Plaintiffs prejudgment interest under 35 U.S.C. § 284;

d) awarding to Astilean and/or Plaintiffs increased damages, pursuant to 35 U.S.C. § 284, in an amount not less than three times the actual amount of damages awarded to Woodway, by reason of Woodway's willful and deliberate infringement of the Patents-in-Suit.

e) restraining and enjoining Defendant Woodway, and Woodway's officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, and attorneys from directly or indirectly infringing on the Patents-in-Suit;

f) declaring the case exceptional under 35 U.S.C. § 285 and awarding to Astilean and/or Plaintiffs his/their reasonable attorneys' fees, expenses and costs incurred in this action;

2) On the Second Claim, issuing an order to the director of Patents to correct the '627 Patent to reflect that Astilean and Dan Bostan are the sole inventors of the subject matter of the '627 Patent that derives from the Oblamski Provisional Application.

3) On the Third Claim, issuing an order to the director of Patents to correct the '627 Patent to reflect that Astilean and Dan Bostan are co-inventors of the subject matter of the '627 Patent that derives from the Oblamski Provisional Application.

4) On the Fourth Claim, issuing an order to the director of Patents to correct the '169 Patent to reflect that Astilean and Dan Bostan are the sole inventors of the subject matter of the '169 Patent that derives from the Oblamski Provisional Application.

5) On the Fifth Claim, issuing an order to the director of Patents to correct the '169 Patent to reflect that Astilean and Dan Bostan are the coinventors of the subject matter of the '169 Patent that derives from the Oblamski Provisional Application.

6)      On the Sixth Claim, issuing an order to the director of Patents to correct the '580 Patent to reflect that Astilean and Dan Bostan are the sole inventors of the subject matter of the '580 Patent that derives from the Oblamski Provisional Application.

7)      On the Seventh Claim, issuing an order to the director of Patents to correct the '580 Patent to reflect that Astilean and Dan Bostan are co-inventors of the subject matter of the '580 Patent that derives from the Oblamski Provisional Application.

8)      On the Eighth Claim, issuing an order to the director of Patents to correct the '276 Patent to reflect that Astilean and Dan Bostan are the sole inventors of the subject matter of the '276 Patent that derives from the Oblamski Provisional Application.

9)      On the Ninth Claim, issuing an order to the director of Patents to correct the '276 Patent to reflect that Astilean and Dan Bostan are co-inventors of the subject matter of the '276 Patent that derives from the Oblamski Provisional Application.

10)     On the Tenth claim, declaring that Astilean and Dan Bostan are the sole inventor or are coinventors of the subject matter of the '627 Patent, the '169 Patent, the '580 Patent and the '276 Patent that derives from the Oblamski Provisional Application.

11)     On the Eleventh claim, declaring that Speedfit is an owner or a co-owner of the '627 Patent, the '169 Patent, the '580 Patent and the '276 Patent.

12)     On the Twelfth claim:

a)  awarding to Plaintiffs money damages against Defendant in an amount to be determined upon the trial of this action but presently believed to be in excess of Twenty Million Dollars ($20,000,000) together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

b) An Order by the Court compelling Defendant to assign all right, title and interest in U.S. patent application serial no. 13/235,065 and U.S. Provisional application serial no. 61/161,027 to Plaintiffs;

13) On the Thirteenth claim, awarding to Plaintiffs money damages against Defendant in an amount to be determined upon the trial of this action but presently believed to be in excess of Twenty Million Dollars ($20,000,000) together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

14) On the Fourteenth claim, awarding to Plaintiffs a constructive trust against the assets of Woodway, together with punitive damages, legal costs and attorneys' fees incurred by Plaintiffs;

15) Granting to Plaintiffs such other and further relief as to this Court may seem just and proper, including an award of punitive damages against Defendant.

Dated: Armonk, New York
October 23, 2015

FISHMAN & DECEA

By: *\/s/ Thomas B. Decea*
THOMAS B. DECEA
Member of the Firm
84 Business Park Drive Suite 200
Armonk, New York 10504
(914) 285-1400

JOHN F. VODOPIA, P.C.

By: */s/ John F. Vodopia*
JOHN F. VODOPIA
191 New York Avenue
Huntington, NY 11743
(631) 673-7555