UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SPEEDFIT LLC and AUREL A. ASTILEAN,

                          Plaintiffs,

    - against -

WOODWAY USA, INC

                  Defendant.

-------------------------------------------------------x

2013 Civ. 01276 (KAM) (AKT)

SUPPLEMENTAL COMPLAINT

(JURY TRIAL DEMANDED)

Plaintiffs, Speedfit LLC ("Speedfit") and Aurel A. Astilean ("Astilean") (collectively, the "Plaintiffs"), by and through their attorneys Fishman & Decea and John F. Vodopia, P.C., as and for their Supplemental Complaint, allege as follows:

NATURE OF THE CASE

1.      This is an action arising in part under the patent laws of the United States, 35 U.S.C § 1, et seq., for infringement by Woodway USA, Inc. ("Woodway" or "Defendant"), of certain patents owned by Plaintiff Speedfit, LLC, and in part for claims for relief under breach of contract, unjust enrichment and constructive trust, asserted by both Plaintiffs Speedfit, LLC and Aurel A. Astilean.

2.      Defendant, Woodway, has misappropriated the unique concept, design, know-how and patent rights thereto, for a non-motorized treadmill with curved running surface, which treadmill was invented by Astilean and Bostan in 2008. To wit, after Astilean brought the unique, non-motorized treadmill with curved running surface to Woodway, and taught Woodway how it works, how it must function and what it must look like. Woodway, at Astilean's direction, constructed a production model of the non-motorized treadmill with curved running surface. Woodway first identified, sold and marketed, the non-motorized treadmill with curved running

1

surface using the brand name: SPEEDBOARD, Speedfit's registered trademark.  The

identification was effected by placing labels, embossed on and covering substantially the entire

length of side covers fitted on both opposing sides of the base of the non-motorized treadmill

with the curved running surface.  The labels also identified Woodway as the manufacturer of the

SPEEDBOARD product.  On information and belief, during 2009, Woodway referred to the

SPPEDBOARD non-motorized treadmill with curved running surface as the "Speedboard 2."

     3.     As Woodway's sales of the Speedboard 2 began, during the spring and early

summer of 2009, Woodway cut off negotiations between Astilean and Woodway to finalize a

compensation package for Speedfit, Astilean and/or Bostan (hereinafter "Speedfit").  Plaintiff

expected that its compensation was to be a portion of the sales of the non-motorized treadmill

with curved running surface.  To this day, Woodway has not compensated any of Speedfit,

Astilean or Bostan for the value Woodway has realized from the non-motorized treadmill with

curved running surface, and Woodway's sales of same.  In early 2010, Woodway removed

Speedfit's brand name SPEEDBOARD from the side labels and markets the non-motorized

treadmill with curved running surface, or Speedboard 2, as the Woodway Curve.

     4.     On information and belief, Woodway decided that it would not remunerate

Speedfit for any of the value Woodway has realized from the Speedboard 2, including the sales

of the Speedboard 2, and the Curve treadmills thereafter, and nevertheless convert Plaintiff's

know-how and treadmill design, treating same as if developed instead by Woodway's design

efforts alone.  In support thereof, the record shows not only that Woodway has never provided

any payments to Speedfit, first sold the Speedboard 2 under Speedfit's brand name

SPEEDBOARD and then removed Speedfit's brand name as a product identifier (2010), but to

add insult to injury, Woodway filed a U.S. provisional patent application on the inventive subject

2

matter, surreptitiously, without identifying Astilean and/or Bostan inventor(s) or co-inventor(s). The US provisional application has since issued in multiple U.S. Patents, several of which are the certain US Patents that are the subject of this action.

5.     In greater detail, without informing Speedfit, and during the ongoing negotiations to define Speedfit's compensation for providing the valuable technology and know-how to Woodway, Woodway filed a patent application in the name of its engineer Nicholas Oblamski.  The record shows that Astilean directly taught Oblamski how to make and use the production model, i.e., the Speedboard 2, with reference to a wooden prototype built by Bostan and Astilean by August 2008, yet Woodway filed for patent rights to same as if it were its own.

6.     By filing the Oblamski provisional application, Woodway sought to take credit for – and assert patent rights to – Speedfit's non-motorized treadmill with curved running surface, the know-how and ornamental design associated therewith, as if these rights derived from Oblamski, Woodway's employee.  The conduct of Defendant, Woodway, caused and continues to cause to Plaintiff substantial injury and damage, while Defendant reaps the benefit from the sales of the Curve (formerly Speedboard 2).

7.     Upon information and belief, Defendant's acts were willful, deliberate and calculated to inflict substantial damage to Plaintiffs, while providing financial benefit to itself. This action seeks relief and redress related to Defendant's wrongful conduct. Woodway's acts were in breach of at least one contract between Plaintiffs and Woodway, resulted in Woodway's unjust enrichment and monetary income because of its sales of the Woodway Curve that should be segregated in a constructive trust in Speedfit's name.

<u>THE PARTIES</u>

8.     Speedfit is a New York limited liability company formed and existing pursuant to the laws of the State of New York with its principal place of business at 79 Newtown Lane, East Hampton, New York 11937. Speedfit is in the business of fitness, including developing programs and machines, to facilitate achieving an individual's fitness goals.

9.     Astilean, a member of Speedfit, resides in East Hampton, New York. Astilean is a former world class athlete who founded Speedfit. Astilean, among other things, uses his patented fitness program that emphasizes speed training over long distance exercise. Astilean also invented a "fitness matrix" that allows individuals to determine their fitness level and therefore tailor their individual workouts. Astilean, a native Romanian who was once ranked seventh in the world in the decathlon, teaches a low-impact, injury-free, high-energy approach to fitness, making his programs available to the public irrespective of their fitness level. Astilean and Bostan invented, and Astilean and Speedfit developed the leg-powered, non-motorized treadmill with the curved running surface, which is the subject of this action.

10.     Woodway is a Wisconsin corporation which, among other things, manufactures exercise products, including treadmills, and maintains its corporate headquarters at W229 N591 Foster Court, Waukesha, Wisconsin 53186. Woodway sells various motorized treadmills, and because of the acts which are the subject of this action, now illegally sells Plaintiffs' non-motorized leg powered treadmills with curved running surface, which it converted from Plaintiffs' design, to fitness facilities, athletes, professional sports organizations, armed forces and government facilities, colleges and universities, and for home and office fitness use. Woodway sells its products directly and through a network of distributors in the United States

4

and internationally. In addition to its domestic facility in Waukesha, Wisconsin, Woodway has

design and manufacturing facilities in Germany and Japan.

<u>U.S. PROVISIONAL APPLICATION No. 61/280,265,</u>
<u>U.S. PATENT NOS.  8,308,619 AND 8,343,016</u>

11.     Speedfit owns all right, title, and interest in and to United States Provisional

Application Serial No. 61/280,265, filed on November 2, 2009 (the "'265 Provisional

Application") and in United States Patent No. 8,308,619 (the "'619 Patent") filed on or about

October 29, 2010, including the right to sue for past damages. Accordingly, Speedfit has

standing to bring this action and claim for patent infringement. The '619 Patent derives its

priority under 35 USC § 119(e) from the '265 Provisional Application.  The '619 Patent was

duly and legally issued by the United States Patent and Trademark Office on November 13,

2012, is active and is entitled "Leg Powered Treadmill." A copy of the '265 Provisional

Application is annexed hereto as Exhibit A. A copy of the '619 Patent is annexed hereto as

Exhibit B.

12.     Speedfit owns all right, title, and interest in and to United States Patent No.

8,343,016 (the "'016 Patent"), which is a second patent filed by Astilean on or about November

1, 2010. Accordingly, Astilean and/or Speedfit has/have standing to bring this action and claim

for patent infringement. The '016 Patent derives its priority under 35 U.S.C. § 119(e) from the

'265 Provisional Application.  The '016 Patent was duly and legally issued by the United States

Patent and Trademark Office on January 1, 2013, is active and is entitled "Leg Powered

Treadmill." A copy of the '016 Patent is annexed hereto as Exhibit C.

13.     The '265 Provisional Application, the '619 Patent and the '016 Patent

(together the "Patents-in-Suit") relate generally to a non-motorized, leg powered treadmill with

curved running surface that allows the rider to walk, jog, run or sprint without making any

adjustments to the treadmill other than shifting the user's center of gravity forward or backwards. The non-motorized, leg powered treadmill with curved running surface disclosed and described in the Patents-in-Suit require a means for slackening the upper curved surface of the treadmills' running belts to effect and maintain the curvature. An Assignment, dated June 1, 2015, assigning the rights to the aforementioned patents to Speedfit is attached hereto as Exhibit D.

<u>U.S. PROVISIONAL APPLICATION No. 61/161,027,</u>

14.     Woodway filed a U.S. Provisional Patent Application No. 61/161,027, in the name of inventor Nicholas Oblamski on March 17, 2009 (the "Oblamski Provisional Application"). The Oblamski Provisional Application discloses a production model of a motorless treadmill with curved running surface, constructed based on the wooden prototype that was disclosed by video to Woodway by Astilean in December 2008 supplied in part to Woodway in December 2008, and direction from Astilean to Oblamski between December 2008 and March 2009.  A copy of the Oblamski Provisional Application is attached hereto as Exhibit E.

15.     Woodway also is identified as the owner of the following US Patents, which derive priority under 35 U.S.C. §119(e) from the Oblamski Provisional Application: United States Patent No. 8,864,627 (" '627 Patent), filed on or about September 16, 2011; United States Patent No. 8,986,169 (" '169 Patent"), filed on or about April 2, 2014; United States Patent No. 9,039,580 (" '580 Patent"), filed on or about March 13, 2015; United States Patent No. 9,114,276 (" '276 Patent"), filed on or about November 11, 2013; United States Patent No. 9,216,316 (" '316 Patent"), filed on or about October 17, 2014; United States Design Patent No. D736,866 (" 'D866 Patent"), filed on or about October 14, 2014; United States Design Patent No. D753,245 (" 'D245 Patent"), filed on or about July 28, 2015; and United States Design Patent No. D753,766 (" 'D766 Patent"), filed on or about July 28, 2015.

16.     The Oblamski Provisional Application, the '065 Application, the '627 Patent, the '169 Patent, the '580 Patent, the '276 Patent, the '316 Patent, the 'D866 Patent, the 'D245 Patent and the 'D776 Patent, all are directed to a non-motorized treadmill, with curved running surface, and the ornamental design thereof, invented by Astilean and Bostan. The Oblamski Provisional Application discloses that the treadmill includes, *inter alia,* means that allow the upper running surface of the running belt to follow a top curve of the treadmill rather than "float" straight across the top of the curved treadmill.

17.     The Oblamski Provisional Application, therefore, is the foundation upon which all Woodway's allegedly owned patents find support, including the certain US Patents to which this action to correct inventorship is directed.  Because Astilean and Bostan are the true inventors of the Speedboard 2, which embodies the subject matter of the Oblamski Provisional Application, and because Astilean and Bostan assigned their rights to their invention to Speedfit on June 1, 2015 (Assignment attached hereto as Exhibit K), only Speedfit, and not Woodway has a valid claim to ownership of the any rights to the subject matter of the Oblamski Provisional Application, the '065 Application, of the '276 Patent, the 'D866 Patent, the 'D245 Patent and the 'D776 Patent.

18.     As introduced above, the subject matter invented by Astilean and Bostan was first disclosed to Woodway by Astilean on December 10, 2008, when Astilean played a video of him, his wife and one of his children walking and running on the aforementioned wooden prototype ("wooden prototype").  The video was recorded sometime in August 2008, in Bostan's home in Canada.  During the video disclosure to Woodway on December 20, 2008, Astilean also explained to Douglas Bayerlein, Woodway's president and CEO, the need that a non-motorized treadmill with curved running surface has for a "means for slackening" the upper running surface

of the treadmill running belt, to prevent the upper portion of same from floating up and losing the curved shape during use, which is crucial to the design and operation.  The means for slackening is the solution to the problem of the curved running surface comprising the upper part of the belt floating up off its bearing surface and losing its curved shape due to the lower part of the running belt sagging due to its weight.

19.    After reviewing Speedfit's Wooden Prototype on December 10, 2008, Woodway (i.e., Mr. Bayerlein) agreed to build a production version of the wooden prototype that it would market and sell as the Speedfit Speedboard.  Bayerlein directed Mr. Oblamski to build the production version of the wooden prototype.  Between approximately, December 12, 2008 through February 24, 2008, Oblamski worked under Astilean's direction to realize a production model of the Speedfit design, as evidenced by numerous email exchanges. Astilean provided Oblamski with access to videos of the operation of the wooden prototype and the operation of a slightly modified version of the wooden prototype, broadcast by the Discovery Channel in January 2009.  Astilean sent Oblamski the side rails of the Wooden Prototype so that Oblamski could measure and duplicate the curvature of the Wooden Prototype in the production model, which was proven to work.  Astilean spoke on the phone to Oblamski during this period of construction numerous times, and Oblamski verified that the production model of the Wooden Prototype was operational finally in late February or early March 2009.  The production model was shown and offered for sale by Woodway under Speedfit's brand name SPEEDBOARD, on or about March 19, 2009 at the IHRSA tradeshow in San Francisco.  The production model is referred to as the Speedboard 2, the Woodway Curve or the Woodway Product, one of several motor-less treadmill products with curved running surface that Woodway sells, and which derive from Astilean's and Bostan's inventive know-how.

8

JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) and  1498(a). This complaint seeks the recovery of Plaintiffs' reasonable and entire compensation for the use by Defendant, without license, of the Patents-in-Suit, invention described in and covered by the Patents-in-Suit and the know-how for building the Woodway Treadmills. There is diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and Plaintiffs do not share a state of citizenship with Defendant.   Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

21.     This Court has personal jurisdiction over Defendant Woodway, as Woodway purposely availed itself of this judicial district by, among other things: (i) having its directors, agents, assignees, and employees attending trade shows and distributing products throughout New York State; (ii) a substantial part of the events or omissions giving rise to this case occurred in New York, including meetings between the representatives of Plaintiffs and Defendant's directors, agents, assignees, and employees; (iii) Woodway's directors, agents, assignees, and employees attended meetings with Plaintiffs in New York; (iv) Woodway sent product samples for inspection and modification to Plaintiffs in New York; and (v) Woodway's directors, agents, assignees, and employees phoned and e-mailed Plaintiffs at their New York residences regarding the treadmill and the venture.

22.     Furthermore, as demonstrated on Woodway's website www.woodway.com: (i) the treadmills are available for purchase by New York consumers directly on the website; (ii) Woodway travels to New York to promote sales of the treadmill; and (iii) Woodway has contracted to sell treadmills, including the Curve (as defined below) to various New York

athletic teams including the New York Yankees, Mets and Jets, and to the U.S. Military Academy at West Point, amongst many other New York residents.

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1400 and 28 U.S.C. § 1391 and the Local Rules for the Southern and Eastern Districts of New York in that this is the district "where the Defendant resides, or where the Defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400 (b).

<u>FACTS COMMON TO ALL CLAIMS</u>

24.     Astilean first met Douglas G. Bayerlein ("Bayerlein"), president of Woodway, in 2002 at the Spring fitness equipment show in San Francisco, California. During that meeting Astilean discussed with Bayerlein Speedfit's innovative concepts in both exercise programs and exercise equipment. Bayerlein liked his ideas.

25.     On or about May 1, 2003, after a meeting between Astilean and Bayerlein at the Hilton Hotel in New York City, the parties entered into a non-disclosure/circumvention agreement and duly executed a writing embodying the terms of the non-disclosure/circumvention agreement. After the execution of the non-disclosure/circumvention agreement, the parties discussed Speedfit's novel idea of a non-motorized treadmill.

26.     In 2004, Astilean formally introduced to Woodway his invention of a non-motorized treadmill. Astilean provided to Woodway his specifications for the non-motorized treadmill and Woodway agreed to build a prototype. It was agreed that the prototype would be built at no cost to Speedfit or Astilean.

27.     In May 2005, during a visit to Woodway's Wisconsin headquarters by Astilean and his former business partner, Tami Mack, the parties entered into a second non-disclosure/circumvention agreement and signed a writing embodying the terms of the second

non–disclosure/circumvention agreement which were orally conveyed to Plaintiffs. The second agreement refers back to the first agreement. This was memorialized in the second non-disclosure/circumvention agreement, which provided in pertinent part:

> 1.     Woodway has signed a non-disclosure agreement (the "NDA") related to any designs and other information supplied by Speedfit. The NDA continues to be applicable to all disclosures made by Speedfit and all actions taken by Woodway as a result of said disclosures, including, without limitation, the construction of prototypes of personal exercise equipment based on Speedfit's design.

> *                         *                         *

> 5.     Speedfit owns every right of every kind in and to its designs and any other information supplied to Woodway, and to any prototypes that Woodway builds as a result thereof…

28.     By August 15, 2005, the prototype was developed. Speedfit, however, was not yet satisfied with the treadmill and, at its request, Woodway sent to Speedfit two chassis with belts (the working parts of the treadmill which eliminates the need for a motor) so that it could continue to modify and perfect the design of the treadmill for end users.

29.     Approximately three days later, apparently eager to participate in Speedfit's invention, on August 18, 2005, Woodway delivered to Speedfit a memorandum pursuant to which it acknowledged Speedfit's invention of the non-motorized treadmill and the intellectual property rights ancillary to it, along with proposals which the parties might pursue together on a partnership or joint venture basis. The proposed agreement provided several options for Speedfit and Woodway to partner together in the sale of the Woodway production model and other Woodway Curve products. Each and every option provided a component of payment to go to Speedfit from Woodway. The proposals, however, were not accepted by Speedfit and the NDAs and oral agreement of confidentiality remained in full force and effect.

30.     In or about December 2006 Astilean visited Woodway to supervise the construction of his latest version of the treadmill which Speedfit named the "Speedboard." The This first Speedboard to be sold under Speedfit's registered trademark SPEEDBOARD (or "Speedboard 1") was completed in time for an industry show to be held in the Spring 2007 and it was prominently displayed at that show; the logos of both Woodway and Speedfit were affixed to the "Speedboard 1" at the show.

31.     The "Speedboard 1" was a great success at the show; Speedfit, however, was not completely satisfied with the design and continued to work on perfecting it.   The "Speedboard 1" contained a motorized mechanism to raise and lower the incline of the treadmill. Since Speedfit's invention was fundamentally based upon the concept of a non-motorized treadmill, Speedfit wanted to develop a non-motorized mechanism by which a user raised or lowered the incline on the "Speedboard 1", so that it would be easier to use and more versatile.

32.     Upon information and belief, after the Spring 2007 show, Woodway started to sell the "Speedboard 1" and to retain all the revenue generated from the sales.  Speedfit did not consent to the sales nor consent to the fact that the proceeds were kept solely by Woodway.

33.     By early 2008, frustrated with the inability of Woodway to build a fully non-motorized prototype up to industry and consumer standards, Speedfit undertook to design and build a non-motorized treadmill to its specifications.

34.     In early 2008, Astilean sought the help of Bostan, to support his efforts in improving an incline adjustment mechanism and a speed control mechanism of a flat, motorless treadmill that Astilean had been developing.  During their efforts, Astilean and Bostan invented and developed a treadmill with a curved running surface that would enable a user to vary the

amount of exerted effort, not by adjusting the incline, but by positioning his/her feet on different locations along the curved surface ("the New Design").

35.     On March 30, 2008, Astilean and Bostan agreed to collaborate on a working embodiment of a motorless treadmill with a slightly concave, curved running surface (i.e., the New Design), pursuant to certain terms.  They agreed to "cooperation," by which Bostan would participate in developing a working model or prototype for the New Design and Astilean would participate by securing patent protection for the New Design, producing experimental models, producing, marketing and selling a production model of the treadmill based on the New Design.

36.     Over the next few months, the two worked together towards the ends of their respective allotted tasks.  Bostan's efforts included constructing several prototypes to prove out the New Design. By experimenting with the various prototypes, Astilean and Bostan realized that there was an inherent problem with the slightly concave curved surface of the New Design. That is, as the belt revolved around the pulleys, the weight of the lower part of the closed loop running belt caused same to droop, the drooping of the lower portion caused a tautening of the upper part of the belt between the pulleys, which resulted in a floating up of the curved part off the bearings such that the curved portion between the pulleys more or less disappeared.

37.     While Bostan and Astilean could have added a means for holding the belt edges at the bearings, such solutions would have added an unacceptable amount of friction. Around midsummer 2008, however, they found a solution: embodying a means for slackening the upper running surface of the closed loop treadmill belt, so that the belt would not go taut and float up off the bearings at the belt edges, losing the curved shaped and rendering the treadmill unusable.

13

38.     By August 2008, Speedfit – through Astilean and Bostan – had built a wooden version of a fully non-motorized treadmill, with a curved running surface (i.e., the wooden prototype), which allows people to walk, jog, run and sprint without making any adjustments to the treadmill other than shifting the user's center of gravity forward and backward. Astilean and Bostan tested the wooden prototype in Montreal during August 2008 and video-recorded the operational wooden prototype.  The wooden prototype included the means for slackening the Woodway belt, as it maintained the upper part of the belt from floating up off the bearing surfaces reflecting the curved shape.

39.     Speedfit had now also resolved its concern about how to maneuver the inclines on a treadmill which it had identified on the previous design, with an altogether new design innovation of a curved treadmill. Instead of the traditional manual incline found universally on treadmills, the new invention (which became known as the "Speedfit SPEEDBOARD" treadmill or "Speedboard 2" treadmill, as introduced by Defendant in March 2009, and then renamed by Defendant as the "Curve" sometime in 2010.  The Speedboard 2 allows a user to simply move to the front or back of the Curve for a larger incline, or to the middle for no incline.

40.     On November 7, 2008, before the wooden prototype was presented to Woodway, Astilean filed a provisional patent application to protect the invention, under Patent Number 61/193,239 ("First Provisional Application").   The first provisional application disclosed the details of the inventive motor-less treadmill, with the curved running surface. including a broad solution to the problem of the upper running belt floating up.   The first provisional Application relied upon a marked-up photograph of the Wooden Prototype; Speedfit ultimately re-filed the first provisional application as Application Serial No. 61/280,265, on November 2, 2009 (the " '265 Provisional Application").

41.     Thereafter, Speedfit disclosed the operational Wooden Prototype to Woodway, including showing a video of the operational Wooden Prototype to Woodway personnel, including Mr. Bayerlein and Michael Frank, on December 10, 2008.  Mr. Bayerlein testified that this was the first time he had seen such a treadmill and he acknowledged that Astilean had disclosed that the Wooden Prototype possessed a means for slackening (on December 10, 2008). Bayerlein agreed that Woodway would build a metal production model of the inventive treadmill for Speedfit, then and there, i.e., at the meeting in which the video was played on December 10, 2008.  While there was no commitment to an amount of financial remuneration to Astilean or Woodway at that time for the expected sales of whatever production model would result from the collaboration, both Astilean and Bayerlein understood that Speedfit would be compensated.

42.     Astilean took pictures of Bayerlein watching the video of the Wooden Prototype, to which Mr. Frank responded that there was no reason for Astilean to take photographs since Woodway was bound by the NDAs.

43.     To build the metal production model, Astilean then sent the side rails of the Wooden Prototype and the specifications to Woodway so that Woodway could duplicate it in metal as the production model. In connection with Woodway's production of the metal version or production model of the Wooden Prototype, Bayerlein verbally (and expressly) confirmed to Astilean that Woodway remained bound by the NDAs, and clearly evidencing Woodway's understanding that at least Astilean was the inventor and that Woodway and its employees were bound to maintain the details of the inventive design in confidence and as Speedfit's proprietary subject matter.

44.     Woodway clearly understood that a confidentiality agreement existed – both orally and as an executed NDA – binding Woodway's employees to maintain the details of the

inventive design as well as the details of the construction of the wooden version and the metal production model in confidence and as Speedfit's proprietary subject matter and know-how.

45.     The first introduction of what Woodway now sells as the Woodway Curve was disclosed by Speedfit on the Discovery Channel, Wreckreation Nation, in January 2009; the Wooden Prototype that Speedfit created was modified by Speedfit and featured in the Wreckreation video because the final metal prototype (i.e., the production model or Speedboard 2) had not yet been completed by Woodway (again, at Astilean's direction).

46.     By late February or early March 2009, Woodway had an operational production model of the Wooden Prototype ready for market, in view of the videos and written and oral communications between Astilean and Oblamski. Woodway used a slightly modified version of the side panels Speedfit displayed in the January 2009 discovery channel disclosure (video).  At that time Woodway released the Speedboard 2, "Speedfit SPEEDBOARD" was displayed on the labels covering the side panels, and as explained above, Woodway, about one (1) year later, unilaterally changed the name to "Woodway Curve," to effect conversion.

47.     The first times the Speedfit Speedboard 2 was publicly displayed by Woodway was at a fitness show in March 2009 at IHRSA USA and 2009 FiBO Germany; it was an instant success. After the shows, the Speedboard 2 was in just about every fitness catalog and hundreds of articles were on the Internet (displayed as "Speedfit Speedboard," while referred to internally as Speedboard 2). The new treadmill was featured in Style Magazine, which endorsed the concept of the product and many magazines articles and news articles about the new invention were written and published.

48.     Thus, prior to these public disclosures, Woodway – through its agents Mr. Bayerlein and Mr. Frank – viewed the operational Wooden Prototype in December 2008.

49.     In or about March 20, 2009 Woodway issued a press release attributing inventorship to Speedfit.

50.     On or about May 2009, again eager to secure a commercial interest in the Speedboard 2, Woodway provided to Speedfit what it denominated as a strategic evaluation agreement ("SEA"), which among other things, acknowledged that Speedfit developed the Speedboard 2 and therefore the Curve and was entitled to patent it.

51.     Speedfit refused to sign the SEA which it believed to be inherently inequitable. Instead, between May 2009 and August 2009, Plaintiffs attempted unsuccessfully to discuss the SEA with Woodway and work on a fair and just agreement, given that Plaintiffs had invented and provided the know-how for designing the Speedboard 2 or Woodway Curve product and the NDA was in full force and effect. Woodway was unresponsive to these overtures by Plaintiffs.

52.     Unbeknownst to Speedfit, as explained above, on or about March 17, 2009, certain employees of Woodway filed the Oblamski Provisional Application.  Upon information and belief, the information used by Woodway for the Oblamski Provisional Application was taken directly from Speedfit's design and invention of the Wooden Prototype and the completed production model they displayed at IRHSA 2009 as the Speedfit Speedboard (again, identified internally as Speedboard 2). The Oblamski Provisional Application improperly identified Oblamski as inventor of the subject matter found therein, failing to identify Astilean and Dan Bostan as the inventors of the Speedboard 2.

53.     As late as August, 2009, Bayerlein affirmed to Astilean in writing that the purpose of the SEA was to protect Astilean and the invention.

54.     Upon information and belief, in early 2010, Woodway began to sell the Speedboard 2 without the Speedfit SPEEDBOARD brand name, as the Curve, although

Woodway previously sold the Speedboard 2 with the registered trademark. Woodway, without Speedfit's permission, removed its trademark from the Speedboard 2, identifying same with its trademark Curve since.

55.     Woodway continues to manufacture and sell the Curve as its own product, to the exclusion of Speedfit. Moreover, Woodway has not tendered any royalties or other remuneration to Plaintiffs from the sales of the Curve.

56.     Upon information and belief, in or about September 15, 2011, the Oblamski Provisional Application, the '627 Patent, the '169 Patent, the '580 Patent and the '276 Patent were assigned to Woodway by the purported inventors. Since that time, and upon information and belief, the '316, the "D866, the "D245 and the '776 Patents, which derive directly or indirectly from and incorporate by reference the entire subject matter of the Oblamski Provisional Application, have been assigned to Woodway

FIRST CLAIM FOR RELIEF
(INFRINGEMENT OF THE PATENTS)

57.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

58.     Plaintiff Speedfit, LLC, is the owner of the Patents-in-Suit. (Exhibits B and C).

59.     Plaintiff Speedfit has owned the Patents-in-Suit since June 1, 2015, throughout the period of the Defendant's infringement from that date, and still own the Patents-in-Suit (Exhibit E).

60.     Claim 1 of the '619 Patent sets forth:

1.     A motor-less, leg-powered treadmill comprising:

a treadmill frame;

a set of respective front and rear pulley end rollers for rotation, said front and rear pulleys supporting a closed loop treadmill belt;

said closed loop treadmill belt comprising a plurality of parallel slats oriented perpendicular to an axis of rotation of said belt, said parallel slats attached to each other in a resilient fashion;

said closed loop treadmill belt being of such length as compared to the distance between the end rollers to permit it to assume a required concave upper contour;

a means for slackening an upper concave portion of said closed loop treadmill belt while simultaneously keeping a lower portion of said closed loop treadmill belt taut, preventing said lower portion from drooping down during rotation and exertion of walking or miming force upon said upper concave portion of said closed loop treadmill belt, said means for slackening the upper portion while simultaneously keeping the lower portion taut, preventing said lower portion from drooping down during rotation and exertion of walking or running force upon said upper concave portion of said closed loop treadmill belt comprises a timing belt having respective timing belt pulleys attached to said front and rear pulley rollers for said closed loop treadmill belt, wherein timing belt idlers are used to configure said timing belt geometrically to fit within constraints of said contours of said treadmill, wherein if said closed loop treadmill belt is prevented from slipping relative to said end rollers by high friction coefficient, once configured, said timing belt will not permit drooping down of said lower taut portion of said closed loop treadmill belt because all respective motion is synchronous.

Claim 1 of the '016 Patent sets forth:

1. A motor-less, leg-powered curved treadmill comprising: a treadmill frame; a set of respective front and rear pulley end rollers for rotation, said front and rear pulleys supporting a closed loop treadmill belt; said closed loop treadmill belt comprising a plurality of parallel slats oriented perpendicular to an axis of rotation of said belt, said parallel slats attached to each other in a resilient fashion; said closed loop treadmill belt being of such a length as compared to the distance between the end rollers to permit it to assume a required concave upper contour; a means for slackening an upper concave portion while simultaneously keeping a lower portion of the belt taut, preventing said lower portion from drooping down during rotation and exertion of walking or running force upon said upper concave portion of said closed loop treadmill belt; wherein each said slat is made of a material with sufficient resiliency and strength and weight to lie on and conform to a concave row of upper support peripheral ball bearings located at each peripheral side of said upper portion of said motor-less, leg-powered curved treadmill.

Similarly, the Oblamski Provisional Application (Exhibit E), describes and pictures a virtually identical leg powered treadmill:

[0006]One embodiment of the disclosure relates to a manually operated treadmill comprising a treadmill frame having a front end and a rear end opposite the front end, a front shaft rotatably coupled to the treadmill frame at the front end, a rear shaft rotatably coupled to the treadmill frame at the rear end, and a running belt including a curved running surface upon which a user of the treadmill may run. The running belt is disposed about the front and rear shafts such that force generated by the user causes rotation of the front shaft and the rear shaft and also causes the running surface of the running belt to move from the front shaft toward the rear shaft. The treadmill is configured to control the speed of the running belt to facilitate the maintenance of the contour of the curved running surface.

[0007]Another embodiment of the disclosure relates to a manually operated treadmill comprising a treadmill frame, a front support member rotatably coupled to the treadmill frame, a rear support member rotatably coupled to the treadmill frame, a running belt including a curved running surface upon which a user of the treadmill may run, wherein the running belt is supported by the front support member and the rear support member, and a synchronizing system configured to cause the front support member and the rear support member to rotate at substantially the same speeds. The force generated by the user causes rotation of the front support member and the rear support member and also causes the running belt to rotate relative to the treadmill frame.

[0008]Another embodiment of the disclosure relates to a manually operated treadmill comprising a treadmill frame, a front shaft rotatably coupled to the treadmill frame, a rear shaft rotatably coupled to the treadmill frame, a running belt including a contoured running surface upon which a user of the treadmill may run, wherein the running belt is disposed about the front and rear shafts such that force generated by the user causes rotation of the front shaft and the rear shaft and also causes the running belt to rotate about the front shaft and the rear shaft without the rotation of the running belt being generated by a motor, and a one-way bearing assembly configured to prevent rotation of the running surface of the running belt in one direction.

[0009]Another embodiment of the disclosure relates to manually operated treadmill comprising a treadmill frame, a running belt including a running surface upon which a user of the treadmill may run, a front support member rotatably coupled to the treadmill frame, the front support member comprising the forward most support for the running belt, a rear support member rotatably coupled to the treadmill frame, the rear support member comprising the rearward most support for the running belt. The running surface comprises at least in part a complex curve located intermediate the front support member and the rear support member and incorporating a minimum of two geometric configurations.

61.     Defendant had actual or constructive knowledge of Speedfit's Patents-in-Suit and/or Speedfit's patented subject matter and know-how provided to Defendant and its agents by Astilean, since the Patents-in-Suit issued and since Astilean instructed Defendant between December 2008 and March 2009, respectively.

62.     Defendant has infringed the Patents-in-Suit literally and/or under the doctrine of equivalents, and upon information and belief, is still infringing on the Patents-in-Suit by making, selling, and using the Curve Products that embody the patented invention.

63.     Upon information and belief, Defendant will continue in its willful and deliberate infringement of the Patents-in-Suit unless and until it is enjoined by this Court.

64.     Plaintiff Speedfit has been and continues to be damaged by the infringement by Defendant in an amount at present unknown, as Speedfit have not been informed as to the full extent of such infringement and such extent cannot be ascertained except by discovery and special accounting.

65.     Plaintiff Speedfit is entitled to compensation for use by Defendant Woodway of the Patents-in-Suit.

66.     By reason of the foregoing, Plaintiff Speedfit requests judgment in its favor against Defendant for a sum of money representing the reasonable and entire compensation for the infringing use by or for Defendant of the Patents-in-Suit either literally or under the doctrine of equivalents, with interest, and for such other relief as this court may deem just and proper, including interest, attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

67.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

68.     Plaintiffs and Defendant entered into two separate non-disclosure agreements (paragraphs 25 and 27 above) in which Defendant agreed to assist Plaintiffs in the development of a prototype of Astilean's leg powered, non-motorized treadmill with curved running surface, confidentially, acknowledging Plaintiffs' ownership rights in same.

69.     An oral confidentiality agreement existed between Plaintiffs and Woodway, as Woodway's directors, agents and employees orally confirmed to Astilean that Woodway was bound by the NDAs, clearly evidencing Woodway's understanding that Astilean is the inventor of the non-motorized treadmill with curved running surface and that it and its employees were bound to maintain the details of the inventive design as well as the details of the construction of the wooden version in confidence and as Speedfit's proprietary subject matter.

70.     Defendant breached these agreements by selling the Curve product, by filing the Oblamski Provision Application that identifies the inventor as Oblamski rather that Astilean and Bostan, the true inventors, identifying various employees of Defendant, as inventors of Plaintiffs' non-motorized treadmill with curved running surface and holding out to the world that they invented the Curve related motorless treadmill products and are its owner.

71.     By reason of the foregoing, Defendant is indebted to Plaintiffs for all amounts earned from the sale of the Woodway motorless, curved treadmill products to date, including but not limited to sales in the United States and abroad, together with interest, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs, as well as an Order by the Court compelling

Defendant to assign all right, title and interest in U.S. patent application serial no. 13/235,065 and U.S. Provisional application serial no. 61/161,027 to Plaintiffs.

THIRD CLAIM FOR RELIEF
(UNJUST ENRICHMENT)

72.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

73.     Defendant has been unjustly enriched through the receipt of proceeds of the sale of the Curve in an amount to be determined at trial but presently believed to be in excess of $20,000,000.

74.     By reason of the foregoing, Defendant is indebted to Plaintiffs in the amount of $20,000,000 together with interest thereon, punitive damages, legal costs and attorneys' fees incurred by Plaintiffs.

FOURTH CLAIM FOR RELIEF
(CONTRUCTIVE TRUST)

75.     Plaintiffs repeat and reallege all allegations contained in all the foregoing paragraphs of this complaint as if they were fully stated herein.

76.     Plaintiffs expended a significant amount of time and resources in developing the Curve with the understanding that once it was developed, Plaintiffs could bring the product to market using whatever manufacturer they chose.

77.     Defendant improperly, without justification, stole the design of the Curve from Plaintiffs and has marketed it as its own product and design.

78.     Defendant has failed and refused to remunerate Plaintiffs for the invention and development of the Curve or any of the other products which Plaintiffs brought to Defendant.

79.    The conduct of Defendant, as aforesaid, was an abuse of the confidence and breach of the fiduciary relationship between Plaintiffs and Defendant.

80.    Plaintiffs have no adequate remedy at law.

81.    By reason of the foregoing, Plaintiffs should be awarded a constructive trust over the assets of Woodway.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Speedfit LLC and Aurel A. Astilean, demand judgment against Defendant, Woodway USA, Inc., as follows:

1) On the first claim for relief:

   a) awarding to Plaintiff Speedfit accounting to determine the amounts of his damages;

   b) awarding to Plaintiff Speedfit money damages in an amount sufficient to compensate Speedfit for Woodway's infringement of the Patents-in-Suit, but not less than a reasonable royalty;

   c) awarding to Plaintiff Speedfit prejudgment interest under 35 U.S.C. § 284;

   d) awarding to Plaintiff Speedfit increased damages, pursuant to 35 U.S.C. § 284, in an amount not less than three times the actual amount of damages awarded to Woodway, by reason of Woodway's willful and deliberate infringement of the Patents-in-Suit.

   e) restraining and enjoining Defendant Woodway, and Woodway's officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, and attorneys from directly or indirectly infringing on the Patents-in-Suit;

24

f) declaring the case exceptional under 35 U.S.C. § 285 and awarding to Plaintiff Speedfit its reasonable attorneys' fees, expenses and costs incurred in this action;

2) On the Second Claim for Relief:

awarding to Plaintiffs money damages against Defendant in an amount to be determined upon the trial of this action but presently believed to be in excess of Twenty Million Dollars ($20,000,000) together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

3) On the Third Claim for Relief, awarding to Plaintiffs money damages against Defendant in an amount to be determined upon the trial of this action but presently believed to be in excess of Twenty Million Dollars ($20,000,000) together with interest thereon, punitive damages, and legal costs and attorneys' fees incurred by Plaintiffs;

4) On the Fourth Claim for Relief, awarding to Plaintiffs a constructive trust against the assets of Woodway, together with punitive damages, legal costs and attorneys' fees incurred by Plaintiffs; and

5) Granting to Plaintiffs such other and further relief as to this Court may seem just and proper, including an award of punitive damages against Defendant.

February 10, 2017

JOHN F. VODOPIA, P.C.

By:   */s/ John F. Vodopia*
JOHN F. VODOPIA (6450)
191 New York Avenue
Huntington, NY 11743
(631) 673-7555
jvodopia@gmail.com

FISHMAN & DECEA

By:   */s/ Thomas B. Decea*
THOMAS B. DECEA
Member of the Firm
84 Business Park Drive Suite 200
Armonk, New York 10504
(914) 285-1400