UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
SPEEDFIT LLC and AUREL A.
ASTILEAN,

                    Plaintiffs,                    **MEMORANDUM AND ORDER**

            -against-                          13-cv-1276 (KAM)(AKT)

WOODWAY USA, INC.,

                    Defendant.
--------------------------------X

**MATSUMOTO, United States District Judge:**

            Plaintiffs Speedfit LLC ("Speedfit") and Aurel A.

Astilean ("Astilean") (collectively, "plaintiffs") commenced the

instant action against Woodway USA, Inc. ("Woodway" or

"defendant"), alleging that Woodway wrongfully infringed upon

United States Patent No. 8,308,619 ("the '619 Patent") and

United States Patent No. 8,343,016 ("the '016 Patent"), both of

which are owned by Speedfit and relate to a manually-powered

treadmill involving a closed-loop treadmill belt designed to

maintain a curved running surface.  Presently before the court

are the parties' submissions for claim construction of a single

disputed term, "means for slackening," recited in Claim 1 of the

'016 Patent.[1]

---

[1] In their initial claim construction memorandum, plaintiffs sought
construction of four disputed claim terms recited in Claims 1 and 12 of the
'016 Patent, and Claim 1 of the '619 Patent.  (*See* ECF No. 178, Plaintiffs'
Initial Claims Construction Brief ("Pl. Mem.") at 1.)  During the claim
construction, or *Markman*, hearing, held before this court on August 15, 2017,
the parties confirmed that ordinary meaning would govern for all claims
previously in dispute, with the exception of "means for slackening" as it is

Plaintiff Speedfit, founded by plaintiff Astilean and co-inventor Dan Bostan, who is not joined in this action, is a New York-based company that develops fitness programs and equipment. (ECF No. 150, Supplemental Complaint, dated 2/10/2017 ("Supp. Compl.") at ¶¶ 8-9.) Defendant Woodway is a Wisconsin-based corporation that designs, manufactures, and sells fitness and exercise products, including manually-operated treadmills with a curved running surface. (*Id.* at ¶ 10.) The patents at issue relate to a manually-powered treadmill design involving a closed-loop treadmill belt designed to maintain a curved running surface.

The '619 Patent, which derives its priority from United States Provisional Application Serial No. 61/280,265 ("the '265 Application"), was filed on October 29, 2010 and issued on November 13, 2012, with a single, independent claim. (Pl. Mem. at 1; Ex. B, '619 Patent.) The '016 Patent was filed November 1, 2010 and issued on January 1, 2013, with seventeen

---

recited in Claim 1 of the '016 Patent. (*See* ECF No. 188, Transcript of August 15, 2017 *Markman* hearing ("Tr.") at 5:4-15, 98:4-12.) Accordingly, the court will only construe the term "means for slackening" as it is recited in Claim 1 of the '016 Patent.

[2] The factual and procedural history of this action has been discussed comprehensively in the court's prior orders concerning this litigation (*see* ECF No. 59, Order denying motion to dismiss and to transfer; ECF No. 124, Order granting motion to file a third amended complaint; ECF No. 143, Order granting in part and denying in part motion to dismiss the third amended complaint), and is, therefore, only set forth in this Memorandum and Order to the extent relevant to claim construction.

claims, of which Claim 1 is the sole independent claim. (*Id.* at 1; Ex. A, '016 Patent.) The '016 Patent also derives its priority from the '265 Application. (*Id.*)

Plaintiffs allege that Astilean brought his non-motorized treadmill invention to Woodway's attention in early December of 2008, after filing a provisional patent application ("the '239 Application"),[3] and arranged with the President of Woodway, Doug Bayerlein, that Woodway's engineer, Nicholas Oblamski, would build a production model for use at an upcoming tradeshow. (Pl. Mem. at 4-5.) Plaintiffs allege that Woodway subsequently misappropriated their unique concept, design, and patent rights, by filing a provisional patent application in its name only. (*Id.* at 5.) In particular, plaintiffs allege that Woodway filed the provisional patent application "in attempt to secure patent rights to a leg-powered treadmill with a curved running surface that relies upon a means for slackening . . . . to keep the upper part of the treadmill belt from floating up off the rails and losing the slightly concave shape." (*Id.*) Plaintiffs claim that the "means for slackening" at issue was their unique conception. (*Id.*)

Plaintiffs commenced the instant action on March 11, 2013, seeking, *inter alia*, a declaratory judgment invalidating

---

[3] The '239 Application was initially filed on November 7, 2008, and was subsequently refiled on November 1, 2009, as the '265 Application. (Pl. Mem. at 3.)

Woodway's patent application or, alternatively, adding Astilean
as an inventor on the pending application.  (ECF No. 1,
Complaint, dated 3/11/2013.)  The parties have already engaged
in substantial motion practice, resulting in the filing of
multiple amended complaints, including most recently, a
supplemental complaint dated February 10, 2017.[4]  (*See generally*
Supp. Compl.)  The parties submitted a joint disputed claim
terms chart on April 19, 2017, in which plaintiffs proposed
constructions for multiple claim terms recited in the '016 and
'619 Patents, and defendant contended, in response, that no
construction was necessary, and that ordinary meaning should
govern for all terms except for "means for slackening."  (*See*
ECF No. 158, Joint Disputed Claim Terms Chart.)

       Plaintiffs filed their instant motion for claim
construction pursuant to court order, in which they limited the
construction sought to four claim terms, including the "means
for slackening" claim term presently at issue.  (Pl. Mem. at 13-

---

[4] In its most recent motion to dismiss, which was granted by Memorandum and
Order dated December 28, 2016, defendant argued that plaintiffs lacked
standing to bring the instant infringement claim, due to their failure to
join Dan Bostan, a co-inventor, as a plaintiff at the time that the complaint
was filed.  (*See* ECF No. 143, Order granting Motion to Dismiss.)  During a
telephonic status conference held before this court on January 19, 2017,
plaintiffs proposed filing a fourth amended complaint alleging infringement
claims on behalf of Speedfit as of June 1, 2015, the date of assignment of
Bostan and Astilean's ownership interest in the patents at issue to Speedfit,
thereby conferring standing as of that date.  (*See* ECF Minute entry dated
1/19/2017.)  Defendant expressed a preference that plaintiffs file a
supplemental complaint to avoid relation back issues, to which plaintiffs
consented, and plaintiffs subsequently filed a supplemental complaint on
February 10, 2017.  (*See id.*; Supp. Compl.)

14.) A claim construction, or *Markman*, hearing was held before this court on August 15, 2017, at which the parties presented oral arguments and expert testimony to further explain their respective constructions of the claim term in dispute. (*See generally* Tr.) As discussed above, the parties represented that they reached a resolution on all disputed claim terms, with the exception of "means for slackening" as it is recited in Claim 1 of the '016 Patent. (*Id.* at 5:4-15, 98:4-12; *see also* ECF No. 177, Memorandum in Opposition ("Def. Opp.") at 12-13.)

## LEGAL STANDARDS

### I. Claim Construction

Before reaching a determination regarding an alleged infringement, the court must first construe a patent's claim limitations to define the meaning and scope of the invention from which a patentee has a right to exclude others. *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (noting that "determining infringement is a two-step process" whereby the court must first construe a patent's claim limitations to define the meaning and scope of the invention, and second, compare the accused device to the construed claims). To effectively protect an inventor's rights, patents must describe the exact scope of an invention. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) ("[A] patent must describe the exact scope of an

invention and its manufacture to secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them." (internal citation and quotation marks omitted) (alterations in original)).  Through the patent claims, a patentee seeks to define the precise scope of the invention and thus, the scope of the patentee's right to exclude others from making, using, or selling the patented invention.  *Id.*

Construction of a patent, including the terms within its claims, must be determined by the court.  *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015) ("'[T]he construction of a patent, including terms of art within its claim,' is not for a jury but 'exclusively' for 'the court to determine.'" (quoting *Markman*, 517 U.S. at 390)).  The law of the Federal Circuit governs issues of substantive patent law, which includes claim construction.  *See Spiel Assoc., Inc. v. Gateway Bookbinding Sys., Ltd.*, No. 03-CV-4696, 2007 WL 6148516, at *3 (E.D.N.Y. June 21, 2007) ("The construction of patent terms is a question of law to be determined by the Court, applying the law of the Federal Circuit to issues of substantive patent law." (citations omitted)), *adopted by* 2008 WL 5750018 (E.D.N.Y. Feb. 28, 2008).  In addition to its protective function with respect to the patentee, claim construction is significant in providing proper notice to the public as to what inventions are and are not covered by a given patent.  *See*

*Markman*, 517 U.S. at 373; *see also Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1311 (Fed. Cir. 1999) (referring to the "public notice function" of patent claims).

In deciding matters of claim construction, district courts have "wide latitude" regarding the procedure by which to reach a final determination. *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best."). In addition, the court need only construe claims that are "in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (citing *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)); *see also Ballard*, 268 F.3d at 1358 ("If the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties."). Further, the court is not required to construe every limitation present in a patent's asserted claims, but rather, the focus is on resolution of disputed meanings and scope for use in determination of infringement. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

## II.  Sources for Construing Claims

Courts must construe patent claims objectively, *Vivid Techs.,* 200 F.3d at 803, by seeking to accord a claim the meaning it would have to a "person of ordinary skill in the art at the time of the invention*." Innova/Pure Water*, 381 F.3d at 1116.  In construing claims, courts consider three primary sources within the intrinsic evidence of record: (i) the language of the claims, (ii) the specification, and (iii) the prosecution history.  *Secure Web Conference Corp. v. Microsoft Corp.*, No. 13-CV-2642, 2014 WL 4954644, at *1 (E.D.N.Y. Oct. 2, 2014) (citing *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) and *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996)), *aff'd* 640 F. App'x 910 (Fed. Cir. 2016).

### A.  Claim Language

The court first looks to the "words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention."  *HowLink Global LLC v. Network Commc'ns Int'l. Corp.*, 561 F. App'x 898, 905 (Fed. Cir. 2014) (quoting *Vitronics*, 90 F.3d at 1582).  In making such a determination, the words of the claim are the "controlling focus."  *Secure Web*, 2014 WL 4954644, at * 2 (citing *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998)).  In general, a claim's language is given its

ordinary and customary meaning unless a distinct definition is employed in the specification or prosecution history. *See Digital Biometrics*, 149 F.3d at 1344 (citing *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1572 (Fed. Cir. 1996) ("Without an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning.")). As discussed above, the ordinary and customary meaning of a claim term is that which one of "ordinary skill in the art at the time of the invention" would understand. *Innova/Pure Water,* 381 F.3d at 1116; *see also InTouch Techs., Inc. v. VGO Commc'ns Inc.*, 751 F.3d 1327, 1339 (Fed. Cir. 2014) ("Generally, a claim term is given the ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of invention." (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005))); *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001) ("Throughout the construction process, it is important to bear in mind that the viewing glass through which the claims are construed is that of a person skilled in the art." (citations omitted)).

**B. Specification**

Next, the court looks to the patent's specification, as "[c]laims must be read in view of the specification, of which they are a part." *Markman,* 52 F.3d at 979 (citations omitted).

The specification may assist in the court's determination of whether the inventor intentionally used any terms in the claims in a manner inconsistent with their ordinary meaning; however, this intention must be clear. *See Vitronics*, 90 F.3d at 1582 ("[A] patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." (citations omitted)).

If a patentee selects a meaning distinct from that which the claim terms would otherwise have to a person of ordinary skill in the art, the different meaning must be set out in the specification in a manner sufficient to give one of ordinary skill notice of the change from the usual meaning. *See id.; see also Innova/Pure Water*, 381 F.3d at 1117. Moreover, "because the inquiry into the meaning of claim terms is an objective one, a patentee who notifies the public that claim terms are to be limited beyond their ordinary meaning . . . will be bound by that notification, even where it may have been unintended." *Innova/Pure Water*, 381 F.3d at 1117 (citations omitted). It is improper, however, for courts to read limitations, not clearly set forth in the specification, into a claim. *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1321 (Fed. Cir. 2016) (citing *Phillips*, 415 F.3d at 1323);

*see also Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1312).

### C. Prosecution History

Third, the court may consider the prosecution history of the patent, if it is in evidence. A patent's prosecution history contains a complete record of all proceedings before the United States Patent and Trademark Office ("USPTO"), including any express representations made by the applicant regarding the scope of the claims. *See Phillips*, 415 F.3d at 1317. As such, the prosecution history provides evidence of how the USPTO and the inventor understood the patent, and the record before the USPTO can be of critical significance in determining the meaning of the claims. *See id.* ("Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." (citation omitted)); *see also Southwall Tech., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." (citations omitted)).

### D.  **Extrinsic Evidence**

Finally, although it is well-settled that courts should look primarily to the intrinsic evidence of record in resolving a claim construction dispute, extrinsic evidence may be considered when ambiguity remains even after consulting the intrinsic evidence.  *See Vitronics*, 90 F.3d at 1583 (noting that it is improper to rely on extrinsic evidence where "analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term").  Extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language."  *Secure Web*, 2014 WL 4954644, at *2 (quoting *Phillips,* 415 F.3d at 1317).  Indeed, in permitting consideration of extrinsic evidence, the Federal Circuit has cautioned courts not to place too much reliance on extrinsic evidence and too little reliance on intrinsic sources.  *Id.* (citing *Phillips*, 415 F.3d at 1320).  Extrinsic evidence may include evidence external to the patent and prosecution history, such as expert testimony, inventor testimony, dictionaries, and relevant treatises.  *See id.* (citing *Phillips*, 415 F.3d at 1317 and *Markman*, 52 F.3d at 980).

### III. **"Means-Plus-Function" Claim Limitations**

Patent claims employing a "means-plus-function" limitation are governed by 35 U.S.C. § 112(f), which provides:

> An element in a claim for a combination may be
> expressed as a means or step for performing a
> specified function without the recital of
> structure, material, or acts in support
> thereof, and such claim shall be construed to
> cover the corresponding structure, material,
> or acts described in the specification and
> equivalents thereof.

35 U.S.C. § 112(f).[5]

"A means-plus-function limitation recites a function to be performed rather than definite structure or materials for performing that function." *Easyweb Innovations, LLC v. Twitter, Inc.*, No. 11-CV-4550, 2016 WL 1253674, at *13 (E.D.N.Y. Mar. 30, 2016) (quoting *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003)), *aff'd*, 689 F. App'x 969 (Fed. Cir. 2017). As such, a means-plus-function limitation "represents a *quid pro quo* by permitting inventors to use a generic means expression for a claim limitation provided that the specification indicates what structure(s) constitute(s) the means." *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1367 (Fed. Cir. 2012) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1381 (Fed. Cir. 1999)).

In construing a means-plus-function limitation, courts employ a two-step approach, by which they first identify and

---

[5] The provision contained in § 112(f) was previously recited in Paragraph 6 of 35 U.S.C. § 112, before the America Invents Act ("AIA") took effect. *See Driessen v. Sony Music Entm't*, 640 F. App'x 892, 894 n.2 (Fed. Cir. 2016); *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1342 n.4 (Fed. Cir. 2015).

construe the claimed function, and then identify the corresponding structure that performs that function. I*d.* (citing *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006)); *Easyweb*, 2016 WL 1253674, at *13 (citing *Lockheed Martin*, 324 F.3d at 1318-20). The function is construed to include the limitations contained in the claim language, whereas the structure is construed to include the structure or material disclosed in the patent's specification that performs the claimed function, as well as any equivalents of the disclosed structure or material. *Easyweb*, 2016 WL 1253674, at *13-14 (citations omitted).

"It is well-established that the specification must be read as a whole to determine the structure capable of performing the claimed function." *Chicago Bd.*, 677 F.3d at 1367 (quoting *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1379 (Fed. Cir. 2001)) (internal quotation marks omitted). A structure disclosed in the specification, however, will be construed as a corresponding structure "only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* (quoting *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003)). A structure that is not sufficiently disclosed in the specification may nonetheless be protected through "structural equivalence" if the differences between the

structure disclosed in the specification and the undisclosed structure are "insubstantial," *i.e.*, "if the assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification." *Easyweb*, 2016 WL 1253674, at *14 (quoting *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)). Moreover, it is well-established that "means-plus-function claims are limited to the particular structures the specification describes as performing the recited function (and their statutory equivalents), even if a person of ordinary skill in the art would know what other structures could be employed to perform the function." *Id.* (citing relevant Federal Circuit precedent).

**DISCUSSION**

As discussed above, the sole claim term in dispute in the instant case is "means for slackening" as it is recited in Claim 1 of the '016 Patent. Claim 1 of the '016 Patent provides, in relevant part: "a **means for slackening** an upper concave portion while simultaneously keeping a lower portion of the belt taut, preventing said lower portion from drooping down during rotation and exertion of walking or running force upon said upper concave portion of said closed loop treadmill belt." ('016 Patent 6:42-47.) Three embodiments, which correspond to

illustrations contained in Figures 2, 3, and 4 of the '016
Patent, are described in detail in the specification, designed
to prevent the lower portion of the treadmill belt from drooping
down while maintaining the upper concave surface. (*Id.* at 3:11-
19, 4:61-5:20.)

The parties agree that the claim term at issue should
be construed as a means-plus-function limitation, and that the
claimed function should be construed as slackening the upper
concave or curved portion of the treadmill belt, while
simultaneously keeping the lower portion taut. (*See* Pl. Mem. at
15; Def. Opp. at 2.) Further, the parties do not dispute that
the structures claimed in Claim 1 include the structures
described in Figures 2, 3, and 4 of the '016 Patent
specification. (Def. Opp. at 2, 9; ECF No. 182, Reply in
Opposition to Defendants' Responsive Claims Construction Brief
("Pl. Repl.") at 6.) Thus, the sole issue in dispute is whether
the claim should be limited to those structures described in
Figures 2, 3, and 4, or whether those figures should be
construed as "exemplary," and the claim should, accordingly, be
construed to include other structures, such as Figure 1 of the
'265 Application. (Pl. Mem. at 13; Def. Opp. at 7-8.)

Defendant argues that Claim 1 must be limited to the
structures specifically disclosed in Figures 2, 3, and 4 of the
'016 Patent. (Def. Opp. at 7-8.) Plaintiffs, however, assert

that the claim term "should not be construed to limit the
claimed scope to any one particular example or species
embodiment disclosed by the '265 application, the '016 Patent or
the '619 Patent" and should instead be construed "broadly enough
to read on any disclosed species and equivalents thereof, that
function to keep the lower part of the belt from drooping and/or
the upper part of the belt slack."  (Pl. Mem. 15-16.)
Plaintiffs contend that they have defined the phrase "means for
slackening" with sufficient "deliberateness, precision, and
clarity" to provide sufficient notice of its meaning to one of
ordinary skill of the art.  (*Id.* at 16.)  Plaintiffs further
assert that the incorporation of the '265 Application by
reference in the '016 Patent specification renders it a part of
the written description for purposes of construing the scope of
the claim.  (Pl. Repl. at 3.)  In addition, plaintiffs assert
that the limitation included in Claim 12 gives rise to a
rebuttable presumption that such limitation is not present in
Claim 1.  (Pl. Mem. at 17.)

Upon consideration of the parties' respective
arguments, presented in their motion papers and at the *Markman*
hearing, as well as the intrinsic record, expert testimony, and
controlling precedent, the court finds that Claim 1 of the '016
Patent must be construed as limited to the structures
specifically described in the specification, *i.e.*, those

disclosed in Figures 2, 3, and 4, and their equivalents. It is well-settled in the Federal Circuit that, in the context of means-plus-function limitations, exemplary language may not be construed to include structures other than those specifically described in the specification. *See Easyweb*, 2016 WL 1253674, at *14 (citing cases in which the Federal Circuit found corresponding structures under § 112(f) to be limited to those described in the specification and equivalents thereof). Thus, although the '016 Patent contains exemplary language, such as "it is noted that the invention is not limited to the precise embodiments shown in drawings," ('016 Patent 2:65-67), and "no unnecessary limitations are to be construed by the terms used or illustrations depicted . . . since the terms and illustrations are exemplary only, and are not meant to limit the scope of the present invention" (*id.* at 6:20-24), this language cannot expand the scope of the means-plus-function limitation, without specifically disclosing the additional structures sought to be included in the claim.

Similarly, with respect to plaintiffs' arguments regarding the '265 Application, which plaintiffs contend should be construed as part of the specification because it is incorporated by reference therein, the court finds that such incorporation by reference is insufficient to expand the scope of the means-plus-function limitation, without a specific

description of the incorporated structure. Although the Federal

Circuit has held that provisional patent applications may be

incorporated by reference to define a structure for purposes of

§ 112(f), it has found such incorporation by reference

sufficient where the patent explicitly referenced the

incorporated application in its specific description of the

corresponding structure. *See Otto Bock HealthCare LP v. Össur*

*HF*, 557 F. App'x 950, 955-56 (Fed. Cir. 2014) (finding that a

patent application may be incorporated by reference to define

structure in a means-plus-function claim, and that the district

court did not err in referring to the application's

incorporation by reference where the structure was specifically

described in the patent's specification "as disclosed in [the

patent application].").[6]

Here, in contrast, plaintiffs rely on a general

introductory statement incorporating the '265 Application by

reference into the '016 Patent (*see* '016 Patent at 1:5-12),

without specifically referencing any structures disclosed

therein. Rather, plaintiffs contend that Claim 1 should be

construed to include the "generic claim that covers each and

---

[6] The court further notes that, although the case relied upon by plaintiffs at the *Markman* hearing, *Vederi, LLC v. Google, Inc.*, 744 F.3d 1376 (Fed. Cir. 2014), demonstrates an instance in which a provisional patent application was incorporated by reference, and where such incorporation was relevant to claim construction, the patent at issue in *Vederi* did not employ a means-plus-function limitation under § 112(f), and its reasoning is, therefore, not applicable to the court's analysis of the claim term presently at issue. (Tr. at 41:19-23, 43:2.)

every species embodiment found in the '265 provisional
application and Figs. 2-4 of the patents."  (Pl. Repl. at 8.)

Looking at the terms of the '016 Patent, the
specification does not reference the '265 Application in its
descriptions of the "means for slackening" or otherwise in its
discussion of the corresponding embodiments.  Further, as
discussed during the *Markman* hearing, the '265 Application, and
photograph of the wooden prototype contained therein, do not
disclose the specific structure intended to perform the
slackening function.  (*See* Pl. Mem. Ex. D; Tr. 15:8-18.)  Thus,
the generic incorporation by reference is insufficient to
provide proper notice of additional structures sought to be
included in the means-plus-function claim limitation in the '016
Patent.  *See Pressure Prods. Med. Supplies, Inc. v. Greatbatch
Ltd.*, 599 F.3d 1308, 1317 (Fed. Cir. 2010) ("Trial courts cannot
look to the prior art, identified by nothing more than its title
and citation in a patent, to provide corresponding structure for
a means-plus-function limitation. . . . Simply mentioning prior
art references in a patent does not suffice as a specification
description to give the patentee outright claim to all of the
structures disclosed in those references.").

Thus, in light of the "*quid pro quo*" nature of
plaintiffs' reliance on a means-plus-function limitation, and
the accompanying duty of a patentee to draft the specification

to specifically disclose the claimed structures, discussed above, the court cannot construe the claim term at issue to encompass structures that are not specifically disclosed in the '016 Patent.  Further, as discussed above, plaintiffs have not disclosed any additional structures in the '016 Patent specification through the incorporation of '265 Application, as required to provide clear notice of the structures encompassed by the means-plus-function limitation.  The court, therefore, finds that "means for slackening," as it is recited in Claim 1 of the '016 Patent, must be construed as limited to only those structures specifically disclosed in the specification, namely, Figures 2, 3, and 4, which, as set forth in the specification, perform the claimed function of maintaining the concave or curved surface of the upper portion of the treadmill belt while keeping the lower portion taut.

The court further notes, however, that the court's construction of the means-plus-function limitation, contained in Claim 1 of the '016 Patent, also protects any structure deemed to be an "equivalent," which is a question of fact to be addressed at the infringement stage following claim construction.  Thus, plaintiffs' infringement claims may nonetheless turn on whether the descriptions in the '265 Application qualify for protection as "equivalents" under the court's instant construction of the claim term at issue.  *See*

*Pressure Prods.*, 599 F.3d at 1317 ("Although many of the disclosed alternatives may well be determined to be structural equivalents permitted by [§ 112(f)]—a question of fact for the jury—these alternative methods of [performing the disclosed function] cannot be treated as the disclosed structures . . . ."); *see also Lockheed Martin*, 324 F.3d at 1320 ("An accused structure that does not literally infringe a means-plus-function claim may nevertheless infringe under the doctrine of equivalents.").

Accordingly, although the court finds that plaintiffs' reliance on the concept of "equivalents" to encompass structures not specifically disclosed in Figures 2, 3, or 4 (*see, e.g.,* Tr. at 9:11-16, 10:10-11, 12:13-13:8), does not permit construction of the means-plus-function claim limitation to include such undisclosed structures, the court notes that this issue may be addressed further at the infringement stage of the instant litigation.

## CONCLUSION

For the foregoing reasons, the disputed claim term, "means for slackening" as it is recited in Claim 1 of the '016 Patent, shall be construed as detailed in this Memorandum and Order. As discussed during the *Markman* hearing, the parties are encouraged to confer in good faith with each other and their respective clients regarding a potential resolution. The parties shall jointly advise the court by letter filed on ECF by no later than November 28, 2017 how they intend to proceed, including whether they will seek a settlement conference before Magistrate Judge Tomlinson, or, if the parties intend to proceed with motion practice, a joint proposed briefing schedule for summary judgment.

Dated:   November 20, 2017
         Brooklyn, New York

                                              /s/
                                 **Kiyo A. Matsumoto**
                                 United States District Judge