**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SPEEDFIT LLC and AUREL A. ASTILEAN, )
                Plaintiffs,        )
        vs.               )     Case No. 2:13-cv-01276 (KAM) (AKT)
WOODWAY USA, INC.,       )
                Defendant.     )


## WOODWAY USA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PRECLUDE THE TESTIMONY OF PLAINTIFFS' TECHNICAL EXPERT JAMES WHELAN

# CONTENTS

I.  RELEVANT BACKGROUND ........................................................................ 2

    A.  The Parties' Claims and Defenses ........................................................ 2

    B.  The Asserted Patents ............................................................................ 2

    C.  Plaintiffs' Priority Claim to the '265 Provisional Application ............. 3

    D.  The Parties' Technical Experts ............................................................ 5

II.  EXPERT TESTIMONY MUST BE RELEVANT, RELIABLE, AND TIMELY ............................................................................................................ 7

III.  RELEVANT LEGAL AUTHORITIES ..................................................... 10

    A.  Written Description ............................................................................ 11

    B.  Enablement ........................................................................................ 13

IV.  ARGUMENT .............................................................................................. 14

    A.  Mr. Whelan's Opinions Cannot Establish Priority and Are Premised on a Misapplication of the Facts to the Law .......................................... 14

        1.  Mr. Whelan repeatedly failed to identify, let alone establish, the relevant person of ordinary skill in the art ................................. 15

        2.  Mr. Whelan ignores the written description requirement ........................ 18

        3.  Mr. Whelan's enablement analysis is based on an unreliable methodology untethered to the requirements for evaluating priority ....... 20

        4.  Mr. Whelan fails to separately assess anticipation ................................. 23

        5.  Mr. Whelan's opinions are unhelpful because they are contrary to the Court's Claim Construction Order ...................................... 23

    B.  Mr. Whelan's Opinions Regarding Derivation Are Not Based On Sufficient Facts ................................................................................ 24

    C.  Mr. Whelan's Opinions Are Not Relevant to Any Other Issues In This Case .................................................................................................... 26

**V.     CONCLUSION** ............................................................................................................. 26

4833-3711-9853.2

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adang v. Fischoff,*
    286 F.3d 1346 (Fed. Cir. 2002)...................................................................................22

*AK Steel Corp. v. Sollac,*
    344 F.3d 1234 (Fed. Cir. 2003)...................................................................................14

*Applera Corp. v. MJ Res., Inc.,*
    297 F. Supp. 2d 453 (D. Conn. 2004)..........................................................................24

*Ariad Pharmas., Inc. v. Eli Lilly and Co.,*
    598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) .............................................................11, 12

*Aristocrat Techs. Austrailia Pty Ltd. v. Int'l Game Tech.,*
    709 F.3d 1348 (Fed. Cir. 2013)...................................................................................17

*Boucher v. United States Suzuki Motor Corp.,*
    73 F.3d 18 (2d Cir.1996).............................................................................................8

*Bourjaily v. United States,*
    483 U.S. 171 (1987)...................................................................................................10

*Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,*
    2000 WL 356412 (S.D.N.Y. Apr.2, 2000)..................................................................10

*Byrne v. Liquid Asphalt Sys., Inc.,*
    250 F. Supp. 2d 84 (E.D.N.Y. 2003) ...........................................................................9

*Callicrate v. Wadsworth Mfg.,*
    427 F.3d 1361 (Fed. Cir. 2005)..............................................................................11, 20

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.,*
    541 F.3d 1115 (Fed. Cir. 2008)...................................................................................13

*Cates v. Whirlpool Corp.,*
    No. 15-cv-5980, 2017 WL 1862640 (N.D. Ill. May 9, 2017).................................26

*CDR-Wantagh, Inc. v. Shell Oil Co.,*
    No. 07-CV-4497 DRH ETB, 2011 WL 795865 (E.D.N.Y. Feb. 28, 2011) .........8, 9

*Chiron Corp. v. Genentech, Inc.,*
    363 F.3d 1247 (Fed. Cir. 2004)...................................................................................16

*In re Chu*,
    66 F.3d 292, 297 (Fed. Cir. 1995)................................................................................16

*Combined Tactical Sys. Inc. v. Defense Tech. Corp. of Am.*,
    589 F. Supp. 2d 260 (S.D.N.Y. 2008)........................................................................13

*Crown Operations Int'l, Ltd. v. Solutia Inc.*,
    289 F.3d 1367 (Fed. Cir. 2002)...................................................................................13

*Cummings v. Adidas USA*,
    716 F. Supp. 2d 323 (S.D.N.Y. 2010)..........................................................................3

*Cuozzo Speed Techs., LLC v. Lee*,
    136 S. Ct. 2131 (2016).................................................................................................25

*In re Curtis*,
    354 F.3d 1347 (Fed. Cir. 2004)...................................................................................13

*Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*,
    501 F. 3d 1254 (Fed. Cir. 2007)..................................................................................16

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...........................................................................................1, 8, 26

*Detwiler v. Offenbecher*,
    728 F. Supp. 103 (S.D.N.Y. 1989) ...............................................................................9

*In re Enhanced Sec. Research, LLC*,
    739 F.3d 1347 (Fed. Cir. 2014).....................................................................................3

*Enzo Biochem, Inc. v. Gen-Probe Inc.*,
    323 F.3d 956 (Fed. Cir. 2002).....................................................................................23

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)....................................................................................................23

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)......................................................................................................8

*Genentech, Inc. v. Novo Nordisk, A/S*,
    108 F.3d 1361 (Fed. Cir. 1997)...................................................................................14

*Graham v. John Deere Co. of Kansas City*,
    383 U.S. 1 (1966).........................................................................................................15

*Great N. Ins. Co. v. Power Cooling, Inc.*,
    No. 06-CV-874 ERK KAM, 2007 WL 4688411 (E.D.N.Y. Dec. 18, 2007)...............8

iv

*Harris Corp. v. IXYS Corp.*,
   114 F.3d 1149 (Fed. Cir. 1997)................................................................................14

*Hill v. City of New York*,
   No. 03CV1283(ARR)(KAM), 2007 WL 1989261 (E.D.N.Y. July 5, 2007)...........................8

*In re Hoffmann*,
   558 Fed. App'x 985 (Fed. Cir. 2014).............................................................................14, 21

*In re Huston*,
   308 F.3d 1267 (Fed. Cir. 2002)................................................................................11

*In re Jolley*,
   308 F.3d 1317 (Fed. Cir. 2002)................................................................................15

*L.A. Biomed. Research Inst. at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*,
   849 F.3d 1049 (Fed. Cir. 2017)................................................................................12

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
   424 F.3d 1336 (Fed. Cir. 2005)................................................................................13

*Lockwood v. Am. Airlines, Inc.*,
   107 F.3d 1565 (Fed. Cir. 1997)................................................................................12, 22

*Martin v. Mayer*,
   823 F.2d 500 (Fed. Cir. 1987)................................................................................12

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011)................................................................................6

*New Railhead Mfg., L.L.C. v. Vermeer Mfg.*,
   298 F.3d 1290 (Fed. Cir. 2002)................................................................................13, 18

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005)................................................................................8

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
   723 F.3d 1336 (Fed. Cir. 2013)................................................................................11

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed.Cir.1997)................................................................................15

*In re Omeprazole Patent Litig.*,
   No. 00CV4467, 2002 WL 287785 (S.D.N.Y. Feb. 27, 2002)................................................10

*Outley v. City of New York*,
   837 F.2d 587 (2d Cir.1988)................................................................................10

v

*Pfaff v. Wells Elecs., Inc.*,
  525 U.S. 55 (1998.)......................................................................................................3

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008)...................................................................11, 20, 23

*Reed Const. Data Inc. v. McGraw-Hill Cos., Inc.*,
  49 F. Supp. 3d 385, 400 (S.D.N.Y. 2014) ...............................................................26

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
  No. 05 CIV. 09546LMMTHK, 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) .................9, 10

*Sundance Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008)...............................................................................15

*Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*,
  713 F. Supp. 2d 184 (W.D.N.Y. 2010) ....................................................................14

*Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*,
  No. C 11-04100 WHA, 2012 WL 2054994 (N.D. Cal. Jun. 5, 2012) ....................21

*Transclean Corp. v. Bridgewood Servs., Inc.*,
  77 F. Supp. 2d 1045 (D. Minn. 1999) .....................................................................10

*Tronzo v. Biomet, Inc.*,
  156 F.3d 1154 (Fed. Cir. 1998)........................................................................12, 23

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
  264 F.3d 1111 (Fed. Cir. 2001).............................................................................12

*In re VerHoef*,
  888 F.3d 1362 (Fed. Cir. 2018)............................................................................25

*In re Wands*,
  858 F.2d 731 (Fed. Cir. 1988)......................................................................14, 21

*In re Wright*,
  999 F.2d 1557 (Fed.Cir.1993)....................................................................14, 21

*X2Y Attenuators, LLC v. ITC*,
  757 F.3d 1358 (Fed. Cir. 2014).................................................................................3

*In re Ziegler*,
  992 F.2d 1197 (Fed.Cir.1993).................................................................................21

**Statutes**

35 U.S.C. § 101................................................................................................................21

35 U.S.C. § 102 ............................................................................................................1, 2

35 U.S.C. § 102(a) ........................................................................................................2, 11

35 U.S.C. § 102(f) ....................................................................................................2, 25, 26

35 U.S.C. § 112 ..............................................................................11, 12, 20, 21, 22

35 U.S.C. § 119(e)(1) ..................................................................................................11

35 U.S.C. § 256 ..............................................................................................................2

America Invents Act ....................................................................................................25

**Other Authorities**

Fed.R.Civ.P. 26(a)(2)(B) ............................................................................................9

Fed. R. Evid. 702 ................................................................................8, 9, 10, 25

Fed. R. Civ. P. 37 ........................................................................................................10

Plaintiffs Speedfit LLC ("Speedfit") and Aurel A. Astilean (collectively, "Plaintiffs") disclosed James Whelan as their technical expert in this case.  For his opening report, Mr. Whelan conducted testing and purported to opine on whether the invention as described in the 2009 Astilean provisional patent application "was sufficient to allow one to make the invention as claimed" in U.S. Patent Nos. 8,308,619 ("the '619 patent") and 8,343,016 ("the '016 patent") (collectively the "Asserted Patents").  Seemingly this opinion was offered to support Plaintiffs' priority claim for the Asserted Patents, which Woodway USA, Inc. ("Woodway") challenges.  However, Mr. Whelan's methodology and assessment are irrelevant to the priority determination.  Because Mr. Whelan ignored binding Federal Circuit precedent which establishes the test for priority, any information and opinions that Mr. Whelan may provide on this subject will be unhelpful to the jury, particularly because his opinions directly contradict this Court's Claim Construction Order and underlying reasoning regarding "means for slackening."

Relatedly, Mr. Whelan's opinions rebutting Woodway's 35 U.S.C. § 102 challenges, which are grounded in the priority determination, are equally suspect.  Mr. Whelan's Rebuttal Report addressing these significant issues was prepared in a single day.  (Declaration of Matthew W. Peters ("Peters Decl."), Ex. A, at 121:7-122:7.)  Not only did Mr. Whelan spend too little time,[1] but his study was limited to the specific handful of documents selected by Plaintiffs' counsel that do not show the facts in a fair light.

Because Mr. Whelan's opinions regarding priority, anticipation, and co-inventorship fail to meet the requirements for admissible expert opinion, they should be stricken.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

---

[1] Mr. Whelan testified that he spent a total of 9 hours preparing his opening report, including analysis.  (Peters Decl., Ex. A, at 108:16-24.)  He purportedly spent a total of 9.5 hours preparing his rebuttal report, including file review and research.  (*Id.* at 122:8-13.)

1

## I.   RELEVANT BACKGROUND

### A.   The Parties' Claims and Defenses

Plaintiffs filed a complaint against Woodway in this Court on March 11, 2013, for a declaratory judgment that a patent application filed by Woodway, United States Patent Application No. 13/235,065, was invalid, and that it was entitled to damages for breach of contract. (Dkt. No. 1 at ¶¶ 31-59.) Thereafter, Plaintiffs amended the complaint three times and then supplemented it to address a standing issue involving Mr. Astilean's friend and former business partner, Dan Bostan. (Dkt. Nos. 18, 84, 125, & 150.)

Currently before the Court are Plaintiffs' claims alleging breach of oral, unsigned non-disclosure agreements, unjust enrichment, constructive trust, and infringement of the Asserted Patents. (Dkt. No. 150 at ¶¶ 57-81.) Woodway has counterclaimed for a declaratory judgment that these patents are invalid under 35 U.S.C. § 102, and if not invalid, Woodway seeks a determination that Messrs. Astilean and Bostan derived their claimed inventions in the Asserted Patents from at least Woodway engineer, Nick Oblamski.[2] (Dkt. No. 153 at Counterclaim ¶¶ 11-18.) According to Woodway, Mr. Oblamski should be identified as the sole or joint inventor of the '619 and '016 patents pursuant to 35 U.S.C. § 256. (*Id.*)

### B.   The Asserted Patents

The Asserted Patents are directed to a curved, manual, motorless treadmill that discloses three specific "means for slackening" the running belt, or in other words, three different methods to keep the running belt in contact with the concave running surface. The '619 patent application was filed on October 29, 2010, and ultimately issued on November 13, 2012, with a single,

---

[2] At summary judgment or trial, Woodway will demonstrate that the Asserted Patents are invalid because at least the display of Woodway's Curve treadmill at the IHRSA tradeshow in 2009 and subsequent sales predate the effective filing date of the Asserted Patents, rendering them invalid under 35 U.S.C. § 102(a). Additionally, Woodway will demonstrate that Woodway employee, Mr. Oblamski, solely (or jointly) conceived of the inventions claimed in the Asserted Patents, giving rise to a 35 U.S.C. § 102(f) derivation defense and a 35 U.S.C. § 256 certificate of correction.

2

independent claim. (Dkt. No. 150-2 at cover, col. 4 l. 53-col. 6, l. 9.) Because the '619 patent was filed October 29, 2010, its critical date[3] is October 29, 2009, unless it is entitled to claim priority[4] to an earlier-filed patent application.

The '016 patent application was filed on November 1, 2010, two days after the '619 patent application was filed. (Dkt. No. 150-3 at cover.) The '016 patent is a continuation-in-part of the '619 patent application[5] and ultimately issued on January 1, 2013, with 17 claims. (*Id.* at cover, col. 6, l. 30-col. 8, l. 38.) The '016 patent's filing date is November 1, 2010, which means its critical date is November 1, 2009, unless it is entitled to claim priority to an earlier-filed patent application.

### C.  Plaintiffs' Priority Claim to the '265 Provisional Application

In an effort to establish an earlier critical date, Plaintiffs contend that both the '619 and '016 patents are entitled to claim priority to an earlier-filed provisional patent application, U.S. Provisional Patent Application No. 61/280,265 ("the '265 Provisional Application"). The '265 Provisional Application was filed with the United States Patent Office by a patent attorney on November 2, 2009, (Dkt. No. 150-1 at cover), which means it has a critical date of November 2, 2008.

The disclosure of the '265 Provisional Application consists of little more than a single page of written description and a single, grainy photograph of what Plaintiffs refer to as the "Wooden Prototype." The '265 Provisional Application provides in its entirety as follows:

---

[3] The "critical date" for determinations based on prior disclosures is one year prior to the filing of the patent application that led to the patent. *See Cummings v. Adidas USA*, 716 F. Supp. 2d 323, 330-31 (S.D.N.Y. 2010). For example, if an offer for sale occurs before the critical date, then the patent is statutorily barred and invalid. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998.)

[4] The priority date (or "effective filing date") of a patent is vital because it is the central reference point to which the patent's validity must be tested against the "prior art." Prior art encompasses any matter that "was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." *In re Enhanced Sec. Research, LLC*, 739 F.3d 1347, 1354 (Fed. Cir. 2014).

[5] A continuation-in-part adds new subject matter to the patent application that is not supported by the parent application. This new matter does not receive the benefit of the filing date(s) for the parent application(s), and this priority is decided on a claim-by-claim basis. *See X2Y Attenuators, LLC v. ITC*, 757 F.3d 1358, 1366 (Fed. Cir. 2014). Here, the application for the '619 patent and the '265 Provisional Application are the "parent applications."

LEG-POWERED TREADMILL

BRIEF DESCRIPTION OF SEVERAL VIEWS OF THE DRAWING

The description of the invention which follows, together with the accompanying drawing should not be construed as limiting the invention to the example shown and described, because those skilled in the art to which this invention appertains will be able to devise other forms thereof.

Fig. 1 is a perspective view of a leg-powered treadmill constructed and having an operating mode according to the present invention.

Illustrated are two leg supports 10 and 12 which lift the treadmill 14 in a clearance position above a support surface 16, said treadmill 10 having space apart sides 18 and 20 which have journalled for rotation end rollers 22 and 24 which support a closed loop treadmill belt 26. Springs (not shown) exert spring urgency in opposite directions holding taut the length of the lower belt portion 26A in a dimension of approximately twenty-three inches denoted by arrow 30 and in the upper belt portion 26B weighing approximately forty pounds, denoted by the arrow 30.

It is to be noted that an essential feature of treadmill 10 is a concave shape subtending an acute angle 34 in the treadmill 10 front end 14A which in practice results in the exerciser 36 running uphill and concomitantly exerting body weight 38 that contributes to driving lengthwise 40 in the direction 42 in which the exerciser runs and achieves the benefits of the exercise.

It is known from common experience that in prior art treadmills, the upper length portion of their closed loops are flat due, it is believed, because of the inability to maintain the concave shape 34 in the length portion 26B. The shortcoming is overcome by the weight 30 which in practice has been found to hold the concave shape 34 during the uphill running of the exerciser.

4

4833-3711-9853.2



Fig. 1

(Dkt. No. 150-1.)

### D.    The Parties' Technical Experts

On July 27, 2015, Plaintiffs served Woodway with Mr. Whelan's Opening Technical Report. (Whelan Opening Report, Ex. 1.)  This report appears to be directed to the validity of the patents-in-suit and Plaintiffs' belief that the disclosure in the '265 Provisional Application "was sufficient to allow one to make the invention as claimed in two issued patents: United States Patent 8,308,619 B1 (Patent 619) and United States Patent 8,343,016 B1 (Patent 016)."  (*Id.* at 3.)  Mr. Whelan's opinion is based on a test rig that he developed.  (*Id.* at 10-21.)  More specifically, Mr. Whelan constructed two test models "constructed to be consistent with the description of the provisional patent application," three test models "constructed to be consistent with what was claimed and described in Patent 016 and described in Patent 619," and a "control model" that did not have a "means for keeping the belt taut when the top belt portion was unloaded."  (*Id.*)  In connection with his testing, Mr. Whelan did not inspect the physical prototype depicted in the photograph in the '265 Provisional Application.  (Peters Decl., Ex. A, at 78:17-19.)  Nevertheless, Mr. Whelan concluded that his models were "consistent with" this disclosure despite his concessions admitting at deposition that the '265 Provisional Application

lacked many elements claimed in the Asserted Patents.  (*See, e.g.*, *id.* at 143:14-144:3, 151:13-154:25, and 161:13-162:8.)  Mr. Whelan offered no definition for the relevant person of ordinary skill in the art.  (*Id.* at 131:8-11; *see generally* Ex. 1.)

The same day Mr. Whelan's Opening Report was served, as Woodway has the burden of proof regarding invalidity,[6] Woodway served the Expert Report of Kim B. Blair regarding invalidity of the Asserted Patents.  (Blair Opening Report, Peters Decl., Ex. B.)  Dr. Blair opined on and defined the qualifications required of a relevant person of ordinary skill in the art in this case, which is pertinent to any invalidity analysis.  (*Id.* at 7-8.)  Dr. Blair also analyzed five prior art patents that are relevant to the art of curved manual treadmills.  (*Id.* at 17-26.)  In addition, Dr. Blair reviewed Woodway emails, deposition transcripts, and other documentation which established Mr. Oblamski's conception and reduction to practice of the Woodway Curve treadmill, which was displayed and offered for sale at the International Health, Racquet & Sportsclub Association ("IHRSA") in March 2009.  (*Id.* at 31-35 and Exhibit B.)  The treadmill displayed and subsequently sold at IHRSA is the same in all material respects as certain of the treadmills Plaintiffs accuse of infringement.  (*Id.* at 35.)

As part of Dr. Blair's invalidity analysis, he reviewed the disclosures of the '265 Provisional Application and the Asserted Patents and opined regarding Messrs. Astilean's and Bostan's defective priority claim.  (*Id.* at 26-37.)  Based on the lack of disclosure in the '265 Provisional Application of later-added material in the Asserted Patents, Dr. Blair concluded that the Asserted Patents are not entitled to their priority claim.  (*Id.*)  Based on this priority determination, the IHRSA disclosure and Woodway's subsequent offers for sale was determined to be an anticipating event, which renders the Asserted Patents invalid.  (*Id.*)

---

[6] A patent challenger, here Woodway, must ultimately demonstrate clear and convincing evidence to prove a patent is invalid.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011).

In addition to Dr. Blair's invalidity analysis in his July 27, 2015 report, Dr. Blair provided a Rebuttal Report to Mr. Whelan's July 27, 2015 report, on August 26, 2015. (Blair Rebuttal Report, Peters Decl., Ex. C.)   In this second report, Dr. Blair reiterated his definition of a person of ordinary skill in the art and explained why the mere mention of "springs, not shown" in the '265 Provisional Application does not enable a person of ordinary skill in the art to create the "means for slackening" methods described in the Asserted Patents.   (*Id.* at 2-4.) Additionally, Dr. Blair explained the fundamental flaws in Mr. Whelan's testing models, which, among other things, do not reflect the structures disclosed in the '265 Provisional Application and Asserted Patents.  (*Id.* at 4-18.)  Finally, Dr. Blair refuted Mr. Whelan's conclusions by pointing out evidence Mr. Whelan ignored in his Opening Report regarding Mr. Oblamski's conception and reduction to practice, entitling him to be named as an inventor.  (*Id.* at 18-20.)

Plaintiffs also served a rebuttal report for Mr. Whelan on August 26, 2015, purportedly to respond to Dr. Blair's July 27, 2015 opinions.   (Whelan Rebuttal Report, Ex. 2.)   More specifically, Mr. Whelan opined that the "file material" suggested that Mr. Astilean conceived of the invention (and that Mr. Oblamski did not).  (*Id.* at 12-13, 15-16.)  Mr. Whelan also retread his priority assessment, and then summarily concluded that the IHRSA disclosure and offer for sale would not anticipate the Asserted Patents.  (*Id.* at 11-12, 14-15.)  Finally, Mr. Whlean commented on certain claim construction issues.  (*Id.* at 13-15.)  Significantly, Mr. Whelan did ***not*** offer any opinions on infringement, any prior art, or Plaintiffs' state law claims.  (*See id.* at 17.)

Mr. Whelan was deposed on September 28, 2015.  (Peters Decl., Ex. A at 1.)

## II.    **EXPERT TESTIMONY MUST BE RELEVANT, RELIABLE, AND TIMELY**

As explained in Woodway's Memorandum in Support of its Motion to Strike Plaintiffs' Damages Expert David Wanetick, which is served contemporaneously with this Memorandum

and Motion, a court may permit an expert to offer opinion testimony only if such testimony (a) will assist the trier of fact, (b) is based upon sufficient facts or data, (c) is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702. "Rule 702 governs the district court's responsibility to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (quoting *Daubert*, 509 U.S. at 589); *see also CDR-Wantagh, Inc. v. Shell Oil Co*., No. 07-CV-4497 DRH ETB, 2011 WL 795865, at *8 (E.D.N.Y. Feb. 28, 2011) ("The Second Circuit has articulated three inquiries that a district court must undertake as part of its gatekeeping function under Rule 702: (1) whether the witness is qualified as an expert to testify as to a particular matter," (2) whether the opinion is based upon reliable data and methodology and (3) whether the expert's testimony (as to a particular matter) will assist the trier of fact.") (internal citations and quotations omitted).

Testimony that does not meet the standard set forth in Rule 702 must be excluded.  *See Nimely,* 414 F.3d at 396-97 (Courts in this Circuit " have previously stated that 'when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.'"); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Hill v. City of New York*, No. 03CV1283(ARR)(KAM), 2007 WL 1989261, at *5 (E.D.N.Y. July 5, 2007) (excluding expert testimony "because it is 'speculative and conjectural'") (quoting *Boucher v. United States Suzuki Motor Corp*., 73 F.3d 18, 21 (2d Cir.1996)); *Great N. Ins. Co. v.*

8

*Power Cooling, Inc.,* No. 06-CV-874 ERK KAM, 2007 WL 4688411, at *18 (E.D.N.Y. Dec. 18, 2007) ("The glaring lack of reliable methodology and analysis cannot be overlooked and should not be permitted to be packaged as reliable expert opinion and delivered to the trier of fact."); *Byrne v. Liquid Asphalt Sys., Inc.*, 250 F. Supp. 2d 84, 88-89 (E.D.N.Y. 2003) (excluding proposed expert testimony on the grounds of relevance where the testimony did not relate to an element of Plaintiffs' claim); *Detwiler v. Offenbecher*, 728 F. Supp. 103, 139-40 (S.D.N.Y. 1989) (noting that, on summary judgment, a party may not rely on an expert opinion that "that is not based upon specific facts . . . or that makes unsupported assumptions or ignores important facts.").

Rule 702 is not the only requirement Plaintiffs must meet. For a party to use expert testimony at trial, expert opinions must be set forth in written reports as required by Fed. R. Civ. 26(a)(2)(B). Failure to timely disclose expert testimony undermines the very foundation of Rule 26 disclosure requirements. The Advisory Committee Note to Rule 26(a) explains, the expert's report "'is intended to set forth the substance of the direct examination' and 'should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.'" *CDR-Wantagh, Inc. v. Shell Oil Co*., No. 07-CV-4497 DRH ETB, 2011 WL 795865, at *6 (E.D.N.Y. Feb. 28, 2011) (quoting Fed. R. Civ. P. 26(a) Advisory Committee Note). "The interest served by requiring the disclosure of expert opinions is self evident [sic]. It is to prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's cross-examination. *Sandata Techs., Inc. v. Infocrossing, Inc*., No. 05 CIV. 09546LMMTHK, 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007) (citations omitted) ("'locking' the expert witness into what Fed.R.Civ.P. 26(a)(2)(B) calls 'a complete statement of all opinions to be expressed and the basis and reasons therefor,' the opposing party knows exactly what she is facing.").

9

The court has discretion under Rule 37 that expert testimony that is not timely disclosed or not disclosed at all cannot be presented at trial.[7] *See In re Omeprazole Patent Litig.*, No. 00CV4467, 2002 WL 287785, at *5 (S.D.N.Y. Feb. 27, 2002) (precluding new opinions in supplemental reports served during the middle of trial); *see also Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,* 2000 WL 356412, at *2 (S.D.N.Y. Apr.2, 2000) (holding that "direct testimony by any expert witness at trial shall be limited to the contents of the Expert Report"); *Transclean Corp. v. Bridgewood Servs., Inc.,* 77 F. Supp. 2d 1045, 1061-62, 1064 (D. Minn. 1999) (striking a party's eleventh-hour expert report, characterizing it as "trial by ambush"); *Sandata*, 2007 WL 4157163 at *8 ("limiting [the expert] to the opinions expressed in the only report authorized by the Court.").

Plaintiffs have the burden to establish that their expert's testimony meets the criteria set forth in Rule 702 by a preponderance of the evidence. Fed. R. Evid. 702, 2000 Advisory Committee's Notes (citing *Bourjaily v. United States,* 483 U.S. 171 (1987)). This case is well into its fifth year of litigation, and it is too late now to give Plaintiffs a chance to opine on issues which they made a tactical decision to ignore. (*See* Peters Decl., Ex. A, at 114:4-11(stating that Plaintiffs' counsel had directed Mr. Whelan's opening report to be of "small scope.").) Because Plaintiffs are limited to the opinions and theories previously offered by Mr. Whelan, Plaintiffs cannot meet their burden under Rule 702. Mr. Whelan's opinions should be excluded.

## III.    RELEVANT LEGAL AUTHORITIES

The invalidity of the Asserted Patents under 35 U.S.C. § 102(a) turns on whether the '265 Provisional Application supports Plaintiffs' priority claim. It does not. Instead, Mr. Whelan's

---

[7] The Second Circuit considers four factors when deciding whether to preclude untimely or previously undisclosed testimony: (1) the explanation for failure to comply with a discovery order, (2) the importance of the new evidence, (3) the prejudice suffered by the opposing party as a result of having to meet the new evidence, and (4) the possibility of a continuance. *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir.1988).

opinions, with insufficient factual support, defy binding Federal Circuit precedent that establishes how priority is to be determined.

In filing a new patent application, a patentee may claim "priority" to an earlier-filed provisional patent application, but "'only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112.'" *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995)); 35 U.S.C. § 119(e)(1).  Section 112 requires that the earlier-filed provisional patent application: (i) contain a "written description" of the invention; *and* (ii) enable the invention, which means that one reasonably skilled in the art could make or use the invention from disclosures in the patent coupled with information known in the art without undue experimentation.  *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1373 (Fed. Cir. 2005).  This priority analysis is conducted on a claim-by-claim basis.  *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1345 (Fed. Cir. 2013).

## A.    Written Description

The written description requirement is met where the four corners of the application reasonably convey an understandable invention to those skilled in the art that shows the inventor actually invented the invention claimed.  *Ariad Pharmas., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*).  Merely establishing that a claimed feature would have been obvious to one of skill in the art reading the priority document does not satisfy the written description requirement.  *Id.* at 1352.  Indeed, entitlement to a filing date does not extend to subject matter which is not disclosed, even if obvious over what is expressly disclosed.  *In re Huston*, 308 F.3d 1267, 1277 (Fed. Cir. 2002).  "It is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but

11

failed to disclose." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997); *see also L.A. Biomed. Research Inst. at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*, 849 F.3d 1049, 1058 (Fed. Cir. 2017).

Where there are elements in the patent not present in the priority application, for priority to attach, the missing descriptive matter must necessarily be present in the original application's specification such that one skilled in the art would recognize such a disclosure. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (holding a claim invalid for failure to satisfy the written description requirement when the specification did not disclose all cup shapes literally or "inherently"); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118-20 (Fed. Cir. 2001) (holding that to comply with the written description requirement the location of the spring must be actually or inherently disclosed; that the location may be obvious from the disclosure is not enough); *see also Martin v. Mayer*, 823 F.2d 500, 505 (Fed. Cir. 1987) (holding the written description requirement is "not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure . . . . Rather, it is a question whether the application necessarily discloses that particular device") (emphasis in original).  If each and every element of the claim at issue does not appear in the priority document's disclosure, the claim does not satisfy the written description requirement regardless of whether one of skill in the art could make or use the claimed invention. *See Ariad*, 598 F.3d at 1344 ("[I]f the claimed invention does not appear in the specification . . . the claim . . . fails regardless whether one of skill in the art could make or use the claimed invention").

The prior application need not use the same words to be entitled to priority. *See, e.g., Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1376 (Fed. Cir. 2002) ("[T]he

disclosure as originally filed does not have to provide in *haec verba* support for the claimed subject matter at issue."). "Identity of that which is described, however, is necessary: 'What is claimed by the patent application must be the same as what is disclosed in the specification . . . .'" *New Railhead Mfg., L.L.C. v. Vermeer Mfg.*, 298 F.3d 1290, 1296 (Fed. Cir. 2002) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002)). "That is, the [earlier] disclosure must show [that the inventor] had invented ***each feature*** that is included as a claim limitation." *New Railhead*, 298 F.3d at 1295 (emphasis added).

Moreover, for the disclosure of a species (*e.g.*, a particular embodiment) in the earlier-filed application to support a later claim for the genus (*e.g.*, a group of structures) in the later patent, which appears to be the position Plaintiffs are taking in this case, the disclosure of a species must "clearly convey to one of skill in the art characteristics common to all species that explain how and why they make the invention operable."  *In re Curtis*, 354 F.3d 1347, 1355 (Fed. Cir. 2004).  For such an explanation to be clearly conveyed, there must be sufficient description of a representative number of species, by disclosure of relevant, identifying characteristics (*i.e.*, structure), by functional characteristics coupled with a known or disclosed correlation between function and structure, or by a combination sufficient to show the application disclosed the later-claimed genus.  *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1124 (Fed. Cir. 2008).  The disclosure of a single species is rarely enough to support a later claim for an entire genus.  *Combined Tactical Sys. Inc. v. Defense Tech. Corp. of Am.*, 589 F. Supp. 2d 260, 268 (S.D.N.Y. 2008); *see also LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005).

### B.    Enablement

For enablement, patent protection is only granted in return for "an enabling disclosure of an invention, not for vague intimations of general ideas that may or may not be

13

workable." *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997) (in the context of the utility requirement, "[A] patent is not a hunting license. It is not a reward for the search, but compensation for its successful conclusion") (internal quotations omitted). And, a patent specification must enable the ***full scope*** of a claimed invention. *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1241 (Fed. Cir. 2003) (emphasis added). To constitute an enabling disclosure, "the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *In re Wright*, 999 F.2d 1557, 1561 (Fed.Cir.1993). Illustrative factors that may be considered in determining whether a disclosure requires "undue experimentation" are: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *see also Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 713 F. Supp. 2d 184, 193-94 (W.D.N.Y. 2010) (finding a patent invalid for lack of enablement where a person of ordinary skill in the art could only engage in trial and error in order to achieve the desired invention). A specification that lacks specificity regarding how a problem is solved, or one that merely restates general principles of the art, is not enabling. *See Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1156 (Fed. Cir. 1997). Additionally, where a disclosure contains incoherent or inaccurate figures, it is more likely that a patent is not enabled. *See In re Hoffmann*, 558 Fed. App'x 985, 987 (Fed. Cir. 2014).

## IV.   **ARGUMENT**

### A.   **Mr. Whelan's Opinions Cannot Establish Priority and Are Premised on a Misapplication of the Facts to the Law**

Here, Mr. Whelan's Opening Report fails to offer any coherent opinions pertinent to the priority inquiry, and his Rebuttal Report does not dispute the underlying facts regarding the prior art disclosure and sales of Woodway's Curve treadmill at the 2009 IHRSA tradeshow in San Francisco. Rather, Mr. Whelan exclusively relies on an incorrect assumption that the '265 Provisional Application discloses the same material as the Asserted Patents. This assumption is premised on an unreliable methodology that: (1) fails to establish a definition of a person of ordinary skill in the art, which is required to make a validity determination under Supreme Court precedent; (2) ignores the written description requirement in its entirety; (3) conflates the test for enablement with a proper priority determination under Federal Circuit law; (4) does not separately assess anticipation; and (5) rests on incorrect application of the facts as determined by this Court's Claim Construction Order.

> ### 1. Mr. Whelan repeatedly failed to identify, let alone establish, the relevant person of ordinary skill in the art

Both infringement and invalidity are determined through the perspective of a person of ordinary skill in the art. *E.g.*, *Sundance Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008); *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402 (Fed.Cir.1997). Resolution of the level of ordinary skill in the art is required before either inquiry can be determined. *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966) (regarding an obviousness analysis, "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; *and the level of ordinary skill in the pertinent art resolved. Against this background*, the obviousness or nonobviousness of the subject matter is determined") (emphasis added); *In re Jolley*, 308 F.3d 1317, 1321 (Fed. Cir. 2002) (holding priority "must be proven by evidence showing what the inventor has disclosed to others and *what that disclosure means to one of ordinary skill in the art*") (emphasis added);

15

*Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004) (upholding jury instructions regarding the written description requirement that provided a challenger "can meet its burden of proving that an earlier application fails to satisfy the written description requirement is to show, by clear and convincing evidence, that the entirety of the specification of an earlier application would clearly indicate *to persons of ordinary skill in the art* that the invention described in that application is of a much narrower scope than the invention ultimately claimed in the [later issued] patent") (emphasis added).   Exemplary factors that may be considered in determining the level of ordinary skill in the art include: (1) "the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F. 3d 1254, 1256 (Fed. Cir. 2007) (internal quotations omitted).

Fatal to his opinions, Mr. Whelan fails to identify, let alone discuss, who is the relevant person of ordinary skill in the art in either of his reports.   Mr. Whelan failed to provide any opinion regarding the appropriate level of skill in the art from which to view the claims of the Asserted Patents and prior art.   In his Opening Report, Mr. Whelan did not define or explain the appropriate level of skill in the art, which was confirmed at his deposition.   (*See generally* Ex. 1; Peters Decl., Ex. A, at 130:16-131:11.)   Contrast Mr. Whelan's approach with that of Dr. Blair, who defined the relevant person of ordinary skill in the art in his Invalidity Report as follows: "one of ordinary skill in the art of designing manual treadmills would have a bachelor of science degree in mechanical engineering or at least two years of experience in the treadmill industry, including experience and knowledge of the design, construction, testing, and operation of manual treadmills."   (Peters Decl., Ex. B, at 7-8.)   After considering Dr. Blair's Invalidity Report, Mr.

16

Whelan still did not discuss or comment on a person of ordinary skill in the art in his Rebuttal Report. (*See generally* Ex. 2; Peters Decl., Ex. A, at 130:16-131:11.)

Mr. Whelan has completely failed to address a fundamental piece of any validity/invalidity (and infringement) analysis. Even when faced with this glaring deficiency at his deposition, Mr. Whelan refused to adopt Dr. Blair's definition of a person of ordinary skill for the purposes of his reports and opinions. (Peters Decl., Ex. A, at 131:4-132:20.) And, he could not even say whether one of the ***named inventors*** of the Asserted Patents is a person of ordinary skill in the art. (*Id.* at 130:16-133:9.) In fact, Mr. Whelan testified that he does not even know who the alleged co-inventor, Dan Bostan, is or any facts about him. (*Id*. at 90:14-15; 133:6-9.)

Under the circumstances, Mr. Whelan's opinions do not provide the trier of fact with any ability to determine the appropriate lens through which to evaluate the evidence regarding invalidity and infringement. It may well be that Mr. Whelan, a licensed patent agent, somehow understands certain claimed aspects of the Asserted Patents that were admittedly never disclosed in the '265 Provisional Application. For the jury, it is immaterial whether Mr. Whelan himself understands the disclosure of the '265 Provisional Application. The litmus test is whether the relevant hypothetical person of ordinary skill in the art shares that understanding. That Mr. Whelan was unwilling to do a basic task to determine the appropriate person of ordinary skill in the art renders all of his opinions regarding invalidity speculative and unhelpful. *See Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1361 (Fed. Cir. 2013) (finding a district court properly disregarded an expert's opinion on claim construction where he failed to support his assertions "as understood by a person of ordinary skill in art"). These opinions should be excluded.

## 2.    Mr. Whelan ignores the written description requirement

Mr. Whelan does no analysis and fails to provide any discussion or assessment of how the written description requirement is satisfied. *See New Railhead*, 298 F.3d at 1295. In fact, Mr. Whelan's review of the four corners of the '265 Provisional Application illustrates that there is insufficient written description to support a priority claim. Mr. Whelan conceded in his Opening Report that the '265 Provisional Application and the Asserted Patents disclose different "means" for purportedly keeping the lower belt portion taut.    (Ex. 1, at 23-24.)    During deposition, Mr. Whelan confirmed his position, admitting that the '265 Provisional Application does *not* disclose certain claim elements in the Asserted Patents.    This, like the failure to identify the relevant person of ordinary skill in the art, is fatal to Mr. Whelan's opinions.

| Claim Limitation | Patent: Claim(s) | Mr. Whelan's Sworn Deposition Testimony | Citation |
|---|---|---|---|
| said parallel **slats attached to each other in a resilient fashion** | '619:1 '016:1-17 | **Q.  Where, if anywhere, does the 2009 provisional patent application disclose that the parallel slats are attached to each other in a resilient fashion?**  A.  That's structure is not disclosed in the original patent application. | (Peters Decl., Ex. A, 161:13-18.) |
| **timing belt** having respective **timing belt pulleys** attached to said front and rear pulley rollers for said closed loop treadmill belt | '619:1 | **Q.  Where, if anywhere, in the 2009 provisional patent application is a timing belt disclosed?**  A.  A timing belt structure is not disclosed in the provisional patent application.  **Q.  How about a timing belt pulley.  Is that structure disclosed in the 2009 provisional patent application?**  A.  A timing belt -- a timing belt pulley structure not disclosed in the provisional patent application. | (Peters Decl., Ex. A, 161:19-162:3.) |
| wherein **timing belt idlers** are used to configure said timing belt geometrically to | '619:1 | **Q.  What about a timing belt idler, is that structure disclosed in the 2009 provisional patent application?**  A.  That structure is not disclosed in the original patent application. | (Peters Decl., Ex. A, 162:4-8.) |

18

| Claim Limitation | Patent: Claim(s) | Mr. Whelan's Sworn Deposition Testimony | Citation |
|---|---|---|---|
| fit within constraints of side contours of said treadmill | | | |
| **said timing belt will not permit drooping down of said lower taut portion of said closed loop treadmill belt because all respective motion is synchronous** | '619:1 | Q.  Does the Astilean 2009 provisional patent application use the word "synchronous"?  A.  No, it does not. | (Peters Decl., Ex. A, 154:10-12.) |
| wherein each said slat … conform[s] to a concave row of **upper support peripheral ball bearings** located at each peripheral side of said upper portion of said motor-less, leg-powered curved treadmill | '016:1-17 | Q.  Does the 2009 provisional patent application mention ball bearings at all?  A.  I don't believe so. | (Peters Decl., Ex. A, 154:23-25.) |
| **means for slackening** | '016:1-17 | Q.  Where is Figure 2 from the Astilean patents disclosed in the Astilean 2009 provisional?  A.  Figure 2 is not disclosed in the 2009 provisional.  Of course, we're worried about the claim, not worried about what's disclosed in the description.  Q.  Where is Figure 3 of the Astilean patents disclosed in the 2009 Astilean provisional?  A.  Figure 3 is not disclosed in the 2009 provisional.  However, the main function of keeping | (Peters Decl., Ex. A, 151:13-152:24.) |

19

| Claim Limitation | Patent: Claim(s) | Mr. Whelan's Sworn Deposition Testimony | Citation |
|---|---|---|---|
| | | Q. Figure 4 of the Astilean patents. Where is this particular figure disclosed in the Astilean 2009 provisional?<br><br>A. Figure 4 discloses a upper concave belt with the lower belt portion taut, which is disclosed in the provisional patent application. Figure 4 also has rollers which are used to support the lower -- the lower belt portion. That -- the actual rollers themselves, that structure is not disclosed. And of | |

### 3. Mr. Whelan's enablement analysis is based on an unreliable methodology untethered to the requirements for evaluating priority

Mr. Whelan's near-exclusive focus on enablement is a distraction from the key issues in this case and is premised on an incorrect interpretation of the facts and the law. Even if Mr. Whelan is correct regarding enablement, which he is not, his conclusions are insufficient to establish any priority claim to the '265 Provisional Application as discussed above. A claim of priority to an earlier-filed provisional patent application must determine that the "disclosure of the *earlier application* provides support for the claims of the later application, as required by 35 U.S.C. § 112.'" *PowerOasis*, 522 F.3d at 1306 (emphasis added). Section 112 requires that the *earlier-filed provisional patent application*: (i) contain a "written description" of the invention; *and* (ii) enable the invention, which means that one reasonably skilled in the art could make or use the invention from disclosures in the patent coupled with information known in the art without undue experimentation. *Callicrate*, 427 F.3d at 1373. Mr. Whelan needed to address *both* written description and enablement. He failed to offer any opinions on written description as discussed above. His enablement analysis is equally lacking as it is untethered to Federal Circuit law.

The only support for Mr. Whelan's enablement conclusion lies in his construction of test models that are purportedly "consistent with the description" in the '265 Provisional Application and Asserted Patents. (Ex. 1 at 10-24.) He does not say how long said "demonstrative testing"

took him or mention undue experimentation. (*Id.*) Mr. Whelan also does not identify the information he restricted himself to in order to show that the Provisional's disclosure was purportedly enabling. (*See id.* at 10-13.) Without additional support, Mr. Whelan, in his Rebuttal Report, states that the elements disclosed in the Asserted Patents "performed similar as the method disclosed" in the '265 Provisional Application. (Ex. 2 at 11-12.) But this analysis is unreliable because it does not address how or why: (1) a person of ordinary skill in the art; (2) would know how to make and use; (3) the full scope of the claimed invention; (4) without undue experimentation. *See In re Wright*, 999 F.2d at 1561. Indeed, Mr. Whelan does not mention ***any factor*** that would guide his analysis in making this determination. *See Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, No. C 11-04100 WHA, 2012 WL 2054994, at *4 (N.D. Cal. Jun. 5, 2012) (noting enablement requires an assessment from the perspective of a person of ordinary skill in the art and listing the *Wands* factors to analyze enablement). Finally, Mr. Whelan fails to address the complete dearth of disclosure made in the '265 Provisional Application, and the fact that the supporting figure of the Wooden Prototype is a grainy black and white photograph that does not disclose an interior view, where the "means for slackening" was allegedly achieved. *See In re Hoffmann*, 558 Fed. App'x at 987 (affirming rejection of a patent where the figure disclosed was erroneous and would force a person of ordinary skill to make corrections to the figures before experimenting).

The focus when assessing enablement is on what is disclosed in the priority document, not what is taught elsewhere. *See In re Ziegler*, 992 F.2d 1197, 1201 (Fed.Cir.1993) ("The how to use prong of section 112 incorporates as a matter of law the requirement of 35 U.S.C. § 101 that ***the specification disclose as a matter of fact*** a practical utility for the invention.") (emphasis added). In his Opening Report, Mr. Whelan admits to reviewing 275 color photographs, 7 color

21

drawings, and 49 photocopied drawings and photographs of the leg-powered treadmill that Mr. Astilean purportedly invented, (Ex. 1 at 3), materials that are clearly outside of the '265 Provisional Application.   Mr. Whelan also admitted that the specific tension and leaf springs that Mr. Whelan used to create his models were not found in the '265 Provisional Application. (Peters Decl., Ex. A, at 143:14-144:3.) Because Mr. Whelan was intent on addressing the purported advantages of the problem allegedly solved by the invention as opposed to what was actually disclosed in the '265 Provisional Application, he did not even look to the Wooden Prototype itself to see if it in fact had any of the claimed elements.   This is surprising since Mr. Whelan admitted that being able to inspect a physical specimen of a curved manual treadmill would have aided his analysis.   (*See* Peters Decl., Ex. A, at 77:8-78:25.)   Plaintiffs cannot credibly challenge that Mr. Whelan's models were based on knowledge acquired outside of the '265 Provisional Application, which is improper.   *See Adang v. Fischoff*, 286 F.3d 1346, 1358 (Fed. Cir. 2002).

Mr. Whelan waves his hands further, claiming that Mr. Astilean possessed evidence of his claimed inventions simply because the Wooden Prototype might have had certain alleged functionality or addressed the same problem.   This is not the standard.[8]   *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("It is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose.").   The crux of Mr. Whelan's opinions seems to be that because the Asserted Patents "solve the same problem" as addressed in the '265 Provisional Application, there is priority for the Asserted Patents, and therefore, no anticipation.   (*See* Ex. 2 at 14-17.)

---

[8] Mr. Whelan admitted at his deposition that he had not conducted either an invalidity or priority analysis before this case.   (Peters Decl., Ex. A, at 73:19-74:7.)

This line of reasoning ignores the express requirement that the earlier application must disclose the same structure, not merely "solve the same problem" in order for priority to be proper. *See Tronzo*, 156 F.3d at 1159 (holding a claim invalid for failure to satisfy the written description requirement when the specification did not disclose all cup shapes literally or "inherently"). Because his analysis ignores the relevant legal standard, his opinions should be excluded as unreliable and unhelpful.[9]

Mr. Whelan's opinions addressing enablement are insufficient and cannot survive scrutiny. Mr. Whelan's opinions in his Opening Report should be struck in their entirety along with the same opinions that he offers again in this Rebuttal Report. (*See* Ex. 2 at 11-12, 14-15.)

### 4.    Mr. Whelan fails to separately assess anticipation

Putting aside the misapplication of the priority determination, Mr. Whelan made no other attempt to address whether the Asserted Patents would be anticipated if they are not entitled to claim priority to the '265 Provisional Application. Indeed, in deposition, Mr. Whelan confirmed he is not offering any opinions on this issue. (Peters Decl., Ex. A, at 179:8-16.) It is too late now to allow Mr. Whelan to backfill his reports on a matter that has been part of this case since the beginning.

### 5.    Mr. Whelan's opinions are unhelpful because they are contrary to the Court's Claim Construction Order

Mr. Whelan's conclusions regarding the '265 Provisional Application, (Ex. 2 at 11-15), are also based on erroneous assumptions of fact that were already rejected by this Court and can be similarly rejected here. The Court previously declined to adopt Plaintiffs' argument on claim

---

[9] Mr. Whelan relies heavily on the Manual of Patent Examining Procedure ("MPEP") in rendering his opinions. The MPEP is a guide used by patent examiners to determine patentability, not validity, and is not binding on this Court. *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002); *see also PowerOasis*, 522 F.3d at 1305 (noting that the United States Patent and Trademark Office does not make determinations of proper priority as a matter of course in prosecution). Because Mr. Whelan's opinions ignore the case law interpreting the patent statutes and establishing the requirements under the same, they should be excluded. *See Enzo Biochem*, 323 F.3d at 964.

construction that the '265 Provisional Application and the Wooden Prototype disclose the specific structure that purportedly accomplished the slackening function in the Asserted Patents. (*See* Dkt. No. 189 at 20; *see also* Claim Construction Hearing Tr., Peters Decl., Ex. D, at 15:8-18.)  Further, this Court construed the phrase "means for slackening" in the '016 patent to mean the specific "means" disclosed in the Asserted Patents – Figures 2, 3, and 4.  (*See* Dkt. No. 189 at 21.)

Mr. Whelan's conclusions regarding the appropriate construction of the phrase "means for slackening" directly and his underlying assumptions regarding what the '265 Provisional Application discloses directly contradict this Court's construction.  As shown above, Mr. Whelan later testified that key elements were missing from the '265 Provisional Application, demonstrating the defects in his theory.  (*See also* Peters Decl., Ex. D, at 27:9-30:6, 33:6-34:20.) If Mr. Whelan were allowed to assert the rejected premise that the '265 Provisional Application now supports the Asserted Patent's "means,'" the parties are back rearguing claim construction at further hearings.  *See Applera Corp. v. MJ Res., Inc.*, 297 F. Supp. 2d 453, 455 (D. Conn. 2004) (regarding revisitation of claim construction, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again") (internal quotation omitted).  Such reargument has already been rejected once on the Plaintiffs' Motion for Reconsideration.  (*See* the Court's text-only order of February 21, 2018 denying Plaintiffs' Motion.)  The parties and this Court should not have to expend additional resources revisiting these contentions *ad infinitum*.

### B.    Mr. Whelan's Opinions Regarding Derivation Are Not Based On Sufficient Facts

Mr. Whelan's opinions regarding 35 U.S.C. § 102(f) and improper inventorship, (Ex. 2 at 13), are not "based upon sufficient facts or data" "reliably applied the principles and methods to

the facts of the case." Fed. R. Evid. 702.  Pre-AIA[10] § 102(f) (which applies to the Asserted Patents in this case), provides that a person shall not be entitled to a patent if "he did not himself invent the subject matter sought to be patented."  *See also In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018)  (noting that, with respect to proper inventorship, "[a]n idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan") (internal quotation omitted).  Not only does this opinion rest on the same faulty priority understanding discussed above, but Mr. Whelan failed to consider all the relevant facts.

Woodway has evidence, including testimony and documentation, that Woodway employee, Mr. Oblamski, is at least a coinventor of the Asserted Patents.  (*See* Peters Decl., Ex. B, at 31-35 and Exhibit B.)  However, Mr. Whelan, in the limited hours he spent in connection with his Rebuttal Report did not consider the entirety of this evidence before forming his opinion.  (Peters Decl., Ex. A, at 122:8-13.)  For example, Mr. Whelan did not review any deposition transcripts despite noting that more information would have been beneficial in making his analysis.  (*Id.* at 90:16-91:14.)  Additionally, the only nonpublic documents Mr. Whelan reviewed were those hand-selected by Plaintiffs' counsel, numbering approximately 10 documents, which do not include all of the documents Dr. Blair considered in reaching his conclusion that Mr. Oblamski was at least a coinventor.  (*Compare* Ex. 2 at 3 *with* Peters Decl., Ex. A, at Exhibit B at 3-4.)  Furthermore, Mr. Whelan did not interview either named inventor, Mr. Astilean or Mr. Bostan.  (Peters Decl., Ex. A, at 89:5-9, 90:14-15.)

Relying on such incomplete information and ignoring the deposition transcripts completely in order to arrive at a convenient conclusion cannot satisfy the standards set by

---

[10] The America Invents Act ("AIA") was passed in 2011 and made a number of changes to the patent laws.  Patents with an effective filing date falling on or after March 16, 2013 are governed by these changes.  *See, e.g.*, *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2137 (2016).

*Daubert*.  *See Cates v. Whirlpool Corp.*, No. 15-cv-5980, 2017 WL 1862640, at *15 (N.D. Ill. May 9, 2017) (noting an expert cannot simply ignore evidence contrary to his opinion); *see also Reed Const. Data Inc. v. McGraw-Hill Cos., Inc.*, 49 F. Supp. 3d 385, 400 (S.D.N.Y. 2014) (noting an expert may not ignore data points in order to make a conclusion stronger).  Mr. Whelan's analyses and conclusions regarding §102(f) and what the file material does or does not suggest should be excluded.  (Ex.  2 at 11-17.)

### C.   Mr. Whelan's Opinions Are Not Relevant to Any Other Issues In This Case

Mr. Whelan's opinions from his Opening and Rebuttal Reports are irrelevant and will not assist the jury in determining whether the Asserted Patents are invalid.  In addition, Mr. Whelan offers no opinions related to Plaintiffs' affirmative causes of action – patent infringement, breach of contract, unjust enrichment, and constructive trust – which is apparent from even a cursory review of his Reports.  (*See* Exs. 1-2.)  With respect to patent infringement, Mr. Whelan was unequivocal in his deposition that he is not providing any opinion on this issue.  (Peters Decl., Ex. A, at 101:5-102:16.)  Similarly, Mr. Whelan offers no opinions regarding the prior art. In fact, Mr. Whelan did not even do any prior art searching or review the references that Dr. Blair offered opinions on in his July 27, 2015 Report.[11]  (*Id.* at 60:10-12; 85:25-86:7.)  Because Mr. Whelan failed to opine on any of these issues earlier, Plaintiffs should not be allowed to offer expert testimony on these issues now.

### V.   **CONCLUSION**

---

[11]  Dr. Blair identified five prior art patents that may be relevant to the inventions claimed by the Asserted Patents: U.S. Patent Nos. 1,211,765 ("Schmidt"), 3,637,206 ("Chickering"), 3,624,279 ("Cutter"), 5,709,632 ("Socwell"), and 6,053,848 ("Eschenbach").  (Peters Decl., Ex. B, at 17-26.)  Mr. Whelan did not review or address any of these prior art patents in his Rebuttal Report.  (*See* Ex. 2 at 3.)

For the reasons discussed above, Mr. Whelan's expert reports should be stricken, and Plaintiffs should be precluded from relying on his opinion in any dispositive motion or from offering Mr. Whelan's testimony at trial.[12]

---

[12] Marked copies demonstrating the portions of the Whelan Opening and Rebuttal Reports that should be stricken are attached as Exhibits 3 and 4, respectively.

Dated:  July 11, 2018

Respectfully submitted,

/s/ Kadie M. Jelenchick
Jeffrey N. Costakos, admitted *pro hac vice*
Kadie M. Jelenchick, admitted *pro hac vice*
Matthew W. Peters, admitted *pro hac vice*
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Tel: 414.271.2400
Fax: 414.297.4900
jcostakos@foley.com
kjelenchick@foley.com
mpeters@foley.com

*Counsel for Defendant and Counterclaim-
Plaintiff Woodway USA, Inc.*

28

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew W. Peters , an attorney with Foley & Lardner LLP, hereby certify that on July

11, 2018, I served an copy of the foregoing document via electronic mail upon all counsel of

record.

<u>/s/ Matthew W. Peters</u>
Matthew W. Peters
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Tel: 414.271.2400
Fax: 414.297.4900
mpeters@foley.com